## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**100REPORTERS**
1110 Vermont Avenue, N.W.
Suite 500
Washington, D.C. 20005

and

**DOUGLAS GILLISON**
2112 8th Street, N.W.
Apt. 731
Washington, D.C. 20001

        Plaintiffs,

    v.

**U.S. DEPARTMENT OF STATE**
2201 C Street, N.W.
Washington, D.C. 20520

        Defendant.

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

100Reporters ("100Reporters") and Douglas Gillison ("Gillison") (collectively,

"Plaintiffs"), by and through their undersigned counsel, hereby allege as follows:

1.      This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"

or the "Act"), for declaratory, injunctive, and other appropriate relief brought by 100Reporters, a

nonprofit news organization, and journalist Douglas Gillison.

2.      By this action, Plaintiffs seek to compel the Department of State (the "State

Department" or "Defendant") to comply with its obligations under FOIA to release records that

Plaintiffs requested in connection with their reporting on the government's nomination and

vetting of foreign individuals and entities for the receipt of training or assistance from the United States under statutes known collectively as the "Leahy Laws." Plaintiffs are statutorily entitled to disclosure of the requested records, which Defendant has withheld in violation of the Act.

## PARTIES

3.      100Reporters is a nonprofit investigative news organization located at 1110 Vermont Ave N.W., Suite 500, Washington, D.C. 20005.

4.      100Reporters' mission is to report on corruption and to promote transparency and good government. 100Reporters publishes stories on its website, 100r.org, and in other news outlets, such as *The New York Times*, *The Washington Post*, and PRI's *The World*. Since its founding in 2011, 100Reporters' stories have reached more than 29 million readers.

5.      Douglas Gillison is a journalist and current a reporter for Agence France-Presse. From November 2013 to June 2016, Gillison was a staff reporter for 100Reporters. At 100Reporters, Gillison reported on the United States' assistance and training of foreign individuals, militaries, and law enforcement units, as well as agency compliance with the Leahy Laws. *See, e.g.*, Douglas Gillison, Nick Turse, & Moiz Syed, *Training the Planet: America's Vast Global Network to Instruct Foreign Security Forces Gets Scant Oversight*, 100Reporters (July. 13, 2016), https://perma.cc/2ETQ-XR4T; Douglas Gillison, *Moral Hazard: How the United States Trained Cambodian Human Rights Abusers, Breaking U.S. Law*, 100Reporters (Mar. 18, 2016), https://perma.cc/8LNC-PWF6; Douglas Gillison, *Dinant Rights Consultant, from the Crucible of Suharto-era Violence*, 100Reporters (July 8, 2014), https://perma.cc/DPL9-KHS4.

6.      Defendant United States Department of State is an agency of the federal government within the meaning of 5 U.S.C. § 551 and 5 U.S.C. § 552(f) that has possession,

custody, and/or control of the records that Plaintiffs seek.  The State Department's headquarters

is located at 2201 C Street, NW, Washington, D.C. 20520.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action and personal

jurisdiction over Defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8.     Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## FACTS

### Background

9.     This case involves two FOIA requests made by Plaintiffs to the State Department.

As of the filing of this Complaint, Plaintiffs have received no determination as to either of their

two FOIA requests to the State Department.  Nor have Plaintiffs received any records in

response to either of the two FOIA requests at issue in this case.

### The Leahy Laws

10.     Both of Plaintiffs' FOIA requests to the State Department sought records related

to the process of nominating and vetting foreign individuals or entities for United States

assistance or training under statutes that prohibit Defendant from providing training and other

assistance to foreign security services that have committed gross violations of human rights.

Collectively, these statutes are known as the "Leahy Laws."

11.     The Leahy Laws, originally sponsored by Senator Patrick Leahy, consist of two

provisions, one applicable to the State Department (the "State Leahy Law") and one to the

Department of Defense (the "DoD Leahy Law").

12.     The State Leahy Law is codified in the Foreign Assistance Act of 1961.  It

prohibits any unit of the security forces of a foreign country from receiving American assistance

if the Secretary of State has "credible information" that the unit has committed a gross violation

of human rights.  22 U.S.C. § 2378d.  Under the State Leahy Law, this prohibition on assistance

does not apply, however, if the Secretary of State determines and reports to specified

congressional committees that the government of the foreign country "is taking effective steps to

bring the responsible members of the security forces unit to justice."  *Id.*  If funds are withheld

from any foreign security forces unit pursuant to the State Leahy Law, the Secretary of State

must "promptly inform the foreign government of the basis for such action" and "assist the

foreign government in taking effective measures to bring the responsible members of the

security forces to justice."  *Id.*

13.     The State Leahy Law requires the Secretary of State to establish and periodically

update procedures to:

> (1) ensure that for each country the Department of State has a current list of all security force units receiving United States training, equipment, or other types of assistance;

> (2) facilitate receipt by the Department of State and United States embassies of information from individuals and organizations outside the United States Government about gross violations of human rights by security force units;

> (3) routinely request and obtain such information from the Department of Defense, the Central Intelligence Agency, and other United States Government sources;

> (4) ensure that such information is evaluated and preserved;

> (5) ensure that when an individual is designated to receive United States training, equipment, or other types of assistance the individual's unit is vetted as well as the individual;

> (6) seek to identify the unit involved when credible information of a gross violation exists but the identity of the unit is lacking; and

> (7) make publicly available, to the maximum extent practicable, the identity of those units for which no assistance shall be furnished pursuant to subsection (a) [of 22 U.S.C. § 2378d].

*Id.*

4

14.     From 1999 to 2015, Congress included prohibitions on the Department of Defense's use of funds for assistance to units of foreign security forces that have committed a gross violation of human rights in its annual appropriations act.  In 2015, Congress enacted the DoD Leahy Law.  *See* 10 U.S.C. § 362.  The DoD Leahy Law prohibits DoD funds from being "used for any training, equipment, or other assistance for a unit of a foreign security force if the Secretary of Defense has credible information that the unit has committed a gross violation of human rights."  *Id.* § 362(a)(1).  The DoD Leahy Law requires the Secretary of Defense, in consultation with the Secretary of State, to give "full consideration . . . to any credible information available to the Department of State relating to human rights violations" by a unit of a foreign security force prior to a decision to provide any training, equipment, or other assistance.  *Id.* § 362(a)(2).  The DoD Leahy Law's prohibition on funding does not apply, however, if the Secretary of Defense, in consultation with the Secretary of State, "determines that the government of such country has taken all necessary corrective steps, or if the equipment or other assistance is necessary to assist in disaster relief operations or other humanitarian or national security emergencies."  *Id.* § 362(b).  The DoD Leahy Law requires the Secretary of Defense to establish and periodically update "procedures to ensure that any information in the possession of the [DoD] about gross violations of human rights by units of foreign security forces is shared on a timely basis with the Department of State."  *Id.* § 362(b).

### Leahy Vetting

15.     The State Department has developed procedures for vetting individuals and foreign security force units in order to comply with the Leahy Laws (hereinafter, "Leahy Vetting").  Representatives of United States departments and agencies that are sponsoring United States assistance or training submit vetting requests to United States embassy or consulate staff. United States personnel then screen prospective recipients of assistance or training by searching

relevant files, databases, and other sources of information for credible information about gross violations of human rights.

16.    United States personnel at United States embassies and consulates perform this initial screening of prospective recipients of United States training or assistance.  If a candidate passes that initial screening process, in most cases, the individual's or entity's information is then sent to State Department headquarters for further vetting by the State Department Bureau of Democracy, Human Rights, and Labor ("DRL"), as well as the relevant geographic bureau, where a final determination to reject, suspend, or approve assistance is made.  The decision is then communicated to relevant United States embassy or consulate personnel.

17.    As part of its Leahy Vetting, the State Department uses a web-based, computerized system known as the International Vetting and Security Tracking ("INVEST") system.  The State Department uses INVEST to process, document, and track vetting requests and results at both United States embassies and consulates and at State Department headquarters.

18.    The State Department implemented INVEST worldwide beginning in 2010.

<u>Documented Violations of the Leahy Laws</u>

19.    Public news reports have revealed instances in which United States assistance or training was given to individuals or units of the security forces of a foreign country despite credible information that the individual or unit committed a gross violation of human rights, contrary to the Leahy Laws' requirements.  For example, using United States diplomatic records published by WikiLeaks, Plaintiffs have compiled a database of nearly 60,000 individuals from 129 countries selected for United States training or assistance.  *See* Gillison, *Moral Hazard*, *supra.*  Using this information, Plaintiffs reported that Colonel Seng Phok of the Royal Gendarmerie of Cambodia, Rear Admiral Puth Dara of the Cambodian Navy, and Sok Khemarin, director of the Cambodian National Police criminal department, had all been granted

approval by the United States Embassy Phnom Penh, Cambodia, to attend United States

trainings, despite credible, publicly available information that the three men had committed gross

violations of human rights, including murder. *Id.*  Similarly, BuzzFeed News has reported that

the United States has continued to train and provide equipment to police units in the Philippines

despite widespread evidence of extrajudicial killings by such units. *See* Megha Rajagopalan,

*How US Dollars Are Helping The Philippines' Bloody Drug War*, BuzzFeed (Nov. 28, 2016),

https://perma.cc/4BEC-4DQ4.

      20.    Numerous reports of the State Department Office of Inspector General ("OIG")

have also revealed flaws in Leahy Vetting.  For example, a 2012 report on OIG's Inspection of

the United States embassy in San José, Costa Rica, found that the embassy "is not complying

with the Leahy program to preclude U.S. assistance to persons implicated in human rights

violations" and that "sections of the embassy arrange for training of Costa Ricans subject to

Leahy review without vetting trainee names with other elements of the embassy."  United States

Dep't of State and Broadcasting Bd. of Governors Office of Inspector General, *Inspection of*

*Embassy San José, Costa Rica*, Report No. ISP-I-12-23A at 10 (May 2012),

https://perma.cc/Q2ZZ-VDNR.  Another 2012 report on OIG's inspection of the United States

embassy in Nairobi, Kenya, revealed that, when conducting Leahy Vetting, the embassy "only

checks names against the 2008 Kenya National Commission on Human Rights report on ethnic

violence following the 2007 election"—a method that the report found "inadequate"—and that

"[t]here is no process for collecting and updating information on human rights abuses."  United

States Dep't of State and Broadcasting Bd. of Governors Office of Inspector General, *Inspection*

*of Embassy Nairobi, Kenya*, Report No. ISP-I-12-38A at 9 (Aug. 2012), https://perma.cc/6P3A-

VL8W.  The report also found that "there is no reporting mechanism to verify that individuals

who are vetted and cleared are the same persons who receive training" and noted that, two years

prior, "some Kenyan army trainees were not vetted because they were substitutes."

21.     In addition, members of Congress have questioned the State Department's

implementation of the Leahy Laws' requirements.  For example, on February 17, 2016, eleven

members of Congress sent a letter to then-Secretary of State John Kerry to request information

about the application of the Leahy Laws in Israel and Egypt, noting "a disturbing number of

reports of possible gross violations of human rights by security forces in Israel and Egypt—

incidents that may have involved recipients, or potential recipients, of U.S. military assistance."

Letter from Henry C. Johnson, Jr., United States House of Representatives, et al., to John F.

Kerry, Secretary of State (Feb. 17, 2016), https://perma.cc/LK3E-ECVG.

22.     In order to provide additional reporting on the government's implementation of

the Leahy Laws, in 2017 Plaintiffs filed two FOIA requests with the State Department

concerning the Leahy Laws and Leahy Vetting.

### Plaintiffs' FOIA Requests

23.     This case involves two FOIA requests made by Plaintiffs regarding the Leahy

Laws and Leahy Vetting.  Plaintiffs sought these records so they may report on the government's

implementation of these laws.  Plaintiffs seek to inform the public about Leahy Vetting

generally, specific examples of individuals or units that have undergone Leahy Vetting, and

possible violations of the Leahy Laws.

### First Request

24.     On December 15, 2017, Gillison and 100Reporters submitted a FOIA request to

the State Department via fax (the "First Request").  A true and correct copy of the First Request

is attached hereto as Exhibit A and is incorporated by reference herein.

25.     The First Request sought the following:

• Copies of all guides, manuals, instructions or directions pertaining to the vetting of foreign military and security personnel and/or units under statutes commonly known as the Leahy Laws provided by the Bureau of Democracy, Human Rights and Labor at the State Department to State Department staff and/or to U.S. embassies, consulates, missions, or other foreign posts from January 1, 2014 to the date on which processing of this request commences; and

• The "Report on Government Police Training and Equipping Programs" submitted to Congress pursuant to §1235(c) of the Ike Skelton National Defense Authorization Act for Fiscal Year 2011 and copies of all "Reports on Government Police Training and Equipping Programs" submitted to Congress in subsequent fiscal years.

26.     The First Request sought both a fee benefit as a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii).

27.     On December 27, 2017, the State Department acknowledged receipt of the First Request, assigning it tracking number F-2017-17860.  A true and correct copy of the State Department's acknowledgement letter is attached hereto as Exhibit B.  The letter stated that Plaintiffs' request for a fee benefit as a representative of the news media had been granted.

28.     As discussed in more detail below, *see* ¶¶ 38–40, on July 19, 2018, Plaintiffs administratively appealed the State Department's failure to respond to the First Request.  That administrative appeal was denied.

29.     As of the date of this lawsuit, Plaintiffs have not received a final response to the First Request.

Second Request

30.     On December 15, 2017, Gillison and 100Reporters submitted a second FOIA request to the State Department via fax (the "Second Request").  A true and correct copy of the Second Request is attached hereto as Exhibit C and is incorporated by reference herein.

31.     The Second Request sought the following records from January 1, 2014 to the date on which processing of the request commenced:

> • All records consisting of, containing, or reflecting the names and any other identifying information of foreign individuals and/or units vetted by State Department personnel for U.S. training or assistance;

> • All entries in the State Department's International Vetting and Security Tracking System, also known as INVEST, in any other similarly dedicated throughput/workflow management and knowledge management systems used to process, document, track, or otherwise record the vetting foreign individuals and/or units for U.S. training or assistance, and all records these systems may contain;

> • Message traffic, cables and emails, or record-keeping copies, in which State Department personnel or other U.S. government personnel nominate specific foreign individuals and/or units for U.S. training or other assistance;

> • Message traffic, cables and emails, or record-keeping copies, in which State Department personnel consider or discuss specific foreign individuals and/or units who have been nominated for U.S. training or other assistance;

> • Message traffic, cables and emails, or record-keeping copies, in which States Department personnel communicate a final determination of a foreign individual's and/or unit's eligibility for U.S. training or other assistance under the Leahy Laws;

• All documents in which the process of vetting specific units or individuals for their eligibility to receive United States training or assistance under the Leahy Laws is discussed; and

• Decision memoranda in which the process of vetting specific units or individuals for their eligibility to receive United States training or assistance under the Leahy Laws is discussed and/or decisions to allow or deny assistance are discussed or recorded.

32.    The Second Request sought both a fee benefit as a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii).

33.    On or about February 27, 2018, Dr. Louis Segesvary, a FOIA Litigation and Appeals Review at the State Department, contacted counsel for Plaintiffs by telephone.  Dr. Segesvary asked that Plaintiffs narrow the scope of the Second Request.

34.    On March 19, 2018, counsel for Plaintiffs sent an email to Dr. Segesvary stating that Plaintiffs agreed to narrow the scope of the Second Request to records from the INVEST system from January 1, 2017 through the present for the following countries:  Iraq, Afghanistan, Egypt, Mexico, Colombia, Philippines, Cambodia, and Bangladesh.  A true and correct copy of the March 19, 2018 email from Plaintiffs' counsel to Dr. Segesvary is attached as Exhibit D and incorporated by reference herein.  That same day, Dr. Segesvary replied by email and agreed to this narrow scope of the Second Request and stated, "[w]e will proceed accordingly."  A true and correct copy of the March 19, 2018 email from Dr. Segesvary is attached as Exhibit E.

35.    On March 19, 2018, the State Department sent an acknowledgement letter acknowledging receipt of the Second Request, assigning it tracking number 2017-F-17811.  A true and correct copy of the acknowledgment letter is attached hereto as Exhibit F.  The letter

stated that Plaintiffs' request for a fee benefit as a representative of the news media had been granted.

36.     As discussed in more detail below, on July 19, 2018, Plaintiffs administratively appealed the State Department's failure to respond to the Second Request.  That administrative appeal was denied.

37.     As of the date of this lawsuit, Plaintiffs have not received a final response to the Second Request.

Plaintiffs' Administrative Appeal of the First and Second Requests

38.     On July 19, 2018, Plaintiffs filed an administrative appeal challenging the State Department's failure to respond, within the time-period specified by FOIA, to the First and Second Requests (the "Administrative Appeal").  A true and correct copy of the Administrative Appeal is attached hereto as Exhibit G and is incorporated by reference herein.

39.     At the time that Plaintiffs filed the Administrative Appeal, the First and Second Requests had been pending, with no determination made and no responsive records produced, for more than twenty business days.  Specifically:

- The First Request had been pending for 204 days; and

- The Second Request had been pending for 122 days.

40.     The Administrative Appeal argued that the State Department had failed to make a determination with regard to the First and Second Requests, as required by 5 U.S.C. § 552(a)(6)(A)(i).

41.     By letter dated August 23, 2018, a true and correct copy of which is attached hereto as Exhibit H, the State Department denied the Administrative Appeal (the "Denial Letter").  The Denial Letter stated:  "Your FOIA requests are not subject to administrative appeal at this time, since no specific material has been denied in response to the requests."

<u>Current Status of the First and Second Requests</u>

42.     As of the filing of this Complaint, Plaintiffs have received no records in response to the First or Second Requests.

43.     On March 1, 2019, counsel for Plaintiffs emailed the State Department's FOIA Requester Service Center and asked to be provided with an estimated date of completion for the First and Second Requests.  On April 16, 2019, the FOIA Requester Service Center responded to Plaintiffs' counsel's email.  A true and correct copy of the FOIA Requester Service Center's April 16, 2019 email is attached as Exhibit I.  The FOIA Requester Service Center's April 16, 2019 email did not provide an estimated date of completion for the First and Second Requests. Rather, it stated, "The FOIA Requester Service Center (FRSC) will have to conduct some research on your case and consult with other colleagues. Our office will follow-up with you as soon as possible to provide an estimated date of completion."

44.     As of the filing of this complaint:

• The First Request had been pending for 537 days;

• The Second Request had been pending for 455 days.

**CAUSES OF ACTION**

**COUNT I**

**<u>VIOLATION OF FOIA FOR FAILURE TO COMPLY WITH STATUTORY DEADLINES</u>**

45.     Plaintiffs repeat, reallege, and incorporate the allegations set forth in the foregoing Paragraphs 1 through 44 as though fully set forth herein.

46.     Defendant is an agency subject to FOIA.  5 U.S.C. §§ 552(f), 551.

47.     The First and Second Requests properly seek records within the possession, custody, and/or control of Defendant under FOIA.

48.     Defendant failed to make a timely determination regarding Plaintiffs' First and Second Requests, violating the statutory deadline imposed by FOIA.  5 U.S.C. § 556(a)(6)(A).

49.     Plaintiffs have or are deemed to have exhausted applicable administrative remedies with respect to their First and Second Requests.  5 U.S.C. § 552(a)(6)(C)(i).

## COUNT II

## VIOLATION OF FOIA FOR UNLAWFUL WITHHOLDING OF AGENCY RECORDS

50.     Plaintiffs repeat, reallege, and incorporate the allegations set forth in the foregoing Paragraphs 1 through 44 as though fully set forth herein.

51.     Defendant is an agency subject to FOIA.  5 U.S.C. §§ 552(f), 551.

52.     The First and Second Requests properly seek records within the possession, custody, and/or control of the Defendant under FOIA.

53.     Defendant failed to provide access to or copies of records responsive to Plaintiffs' First and Second Requests in violation of FOIA.  5 U.S.C. § 552(a)(3)(A).

54.     Plaintiffs have or are deemed to have exhausted applicable administrative remedies with respect to their First and Second Requests.  5 U.S.C. § 552(a)(6)(C)(i).

## COUNT III

## VIOLATION OF FOIA FOR FAILURE TO GRANT FEE WAIVER

55.     Plaintiffs repeat, reallege, and incorporates the allegations set forth in the foregoing Paragraphs 1 through 44 as though fully set forth herein.

56.     Defendant is an agency subject to FOIA.  5 U.S.C. §§ 552(f), 551.

57.     The First and Second Requests properly seek records within the possession, custody, and/or control of Defendant State Department under FOIA.

58.     The First and Second Requests set forth facts establishing that they are entitled to a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

59.    Defendant has not granted Plaintiffs a fee waiver in connection with the First and Second Requests.

60.    Plaintiffs have or are deemed to have exhausted applicable administrative remedies with respect to the First and Second Requests.  5 U.S.C. § 552(a)(6)(C)(i).

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this Court:

(1) order Defendant to conduct a search reasonably calculated to identify all records responsive to the First and Second Requests and to immediately disclose, in their entirety, all records responsive to those requests that are not specifically exempt from disclosure under FOIA;

(2) issue a declaration that Plaintiffs are entitled to disclosure of the requested records;

(3) issue a declaration that Plaintiffs are entitled to a fee waiver;

(4) award Plaintiffs reasonable attorney fees and costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) grant such other relief as the Court may deem just and proper.

Dated: June 17, 2019

Respectfully submitted,

/s/ Katie Townsend
Katie Townsend
D.C. Bar No. 1026115
Email: ktownsend@rcfp.org
Gunita Singh
D.C. Bar No. 1601923
Email: gsingh@rcfp.org
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9303
Facsimile: 202.795.9310

*Counsel for Plaintiffs*