UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| 100REPORTERS, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1753 (RDM) |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

*Table of Authorities*.................................................................................................. ii

BACKGROUND ...........................................................................................................2

STANDARD..................................................................................................................2

ARGUMENT ................................................................................................................3

    I.     STATE CONDUCTED AN ADEQUATE SEARCH FOR RECORDS
         RESPONSIVE TO PLAINTIFF'S REQUEST ....................................................3

    II.    STATE PROPERLY INVOKED FOIA EXEMPTIONS 5, 6, 7 (C), 7(E) AND
         7(F)…………….…………………………………………………………….6

         A.  FOIA Exemption 5………………………………………………………6
            1.   State properly withheld information pursuant to the deliberative
                process privilege ……………………………………………………7

         B.  FOIA Exemption 6………………………………………………………...11

         C.  FOIA Exemption 7………………………………………….…..…………13
            1.   The Department correctly applied FOIA Exemptions 6 and 7(C)
                to withhold the names of foreign law enforcement officers……………..…14

            2.   The Department correctly applied FOIA Exemption 7(E) to withhold
                techniques and procedures associated with the Leahy vetting process…..18

            3.   The Department correctly withheld information pursuant to
                FOIA Exemption 7(F)…………………………………………………20

            4.   The Department assertion of FOIA Exemption 7(F) is not
                moot……….................................................................................21

    III.   STATE PROPERLY CONCLUDED THAT THERE ARE NO REASONABLY
         SEGREGABLE PORTIONS OF THE RESPONSIVE RECORDS...…………..23

CONCLUSION……………………………………………………………………..24

# TABLE OF AUTHORITIES

## Cases

*Access Reports v. Dep't of Justice*,
  926 F.2d 1192 (D.C. Cir. 1991) ...................................................................................7

*Accountability Project v. Dep't of State*,
  699 F. Supp. 2d 97 (D.D.C. 2010) .............................................................................11

*Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*,
  325 F. Supp. 3d 162 (D.D.C. 2018) ...........................................................................10

*Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Review*,
  830 F.3d 667 (D.C. Cir. 2016) ...................................................................................15

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ......................................................................................................2

*Armstrong v. Exec. Off. of the President*,
  97 F.3d 575 (D.C. Cir. 1996) .....................................................................................23

*Associated Press v. Dep't of Defense*,
  549 F.3d 62 (2d Cir. 2008) .........................................................................................13

*Associated Press v. Dep't of Defense*,
  554 F.3d 274 (2d Cir. 2009) .......................................................................................17

*Azmy v. Dep't of Defense*,
  562 F. Supp. 2d 590 (S.D.N.Y. 2008) ........................................................................22

*Badhwar v. U.S. Dep't of the Air Force*,
  829 F.2d 182 (D.C. Cir. 1987) ...................................................................................12

*Baker & Hostetler LLP v. Dep't of Commerce*,
  473 F.3d 312 (D.C. Cir. 2006) .....................................................................................4

*Bartko v. Dep't of Justice*,
  167 F. Supp. 3d 55 (D.D.C. 2016) .............................................................................22

*Beck v. DOJ*,
  997 F.2d 1489 (D.C. Cir. 1993) ...........................................................................12, 13

*Blackwell* v. *FBI*,
  646 F.3d 37 (D.C. Cir. 2011) .....................................................................................19

*Bloomberg, L.P. v. SEC*,
  357 F. Supp. 2d 156 (D.D.C. 2004) .............................................................................7

*Brayton v. Off. of U.S. Trade Rep.*,
  641 F.3d 521 (D.C. Cir. 2011) .....................................................................................3

*Campbell v. Dep't of Justice*,
  164 F.3d 20 (D.C. Cir. 1998) .....................................................................................14

*Canning v. Dep't of Justice*,
  567 F. Supp. 2d 104 (D.D.C. 2008) ...........................................................................23

*Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*,
  40 F.R.D. 318 (D.D.C. 1966) .......................................................................................7

*Carter v. Dep't of Commerce*,
  830 F.2d 388 (D.C. Cir. 1987) ...................................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................2

*Chambers v. Dep't of Interior*,
  568 F.3d 998 (D.C. Cir. 2009) ................................................................4, 5

*Chang v. Dep't of Navy*,
  314 F. Supp. 2d 35 (D.D.C. 2004) ..........................................................12

*Clemente v. FBI*,
  867 F.3d 111 (D.C. Cir. 2017) .................................................................3, 5

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ................................................................8, 9

*Ctr. for Biological Diversity v. EPA*,
  369 F. Supp. 3d 128 (D.D.C. 2019) ........................................................10

*Ctr. for Nat'l Policy Review on Race & Urban Issues v. Weinberger*,
  502 F.2d 370 (D.C. Cir. 1974) ..................................................................14

*Defenders of Wildlife v. U.S. Border Patrol*,
  623 F. Supp. 2d 83 (D.D.C. 2009) .............................................................3

*Dep't of Air Force v. Rose*,
  425 U.S. 352 (1976) ......................................................................................15

*Dep't of Def. v. Fed. Labor Relations Auth., ("FLRA")*,
  510 U.S. 487 (1994) ............................................................... 6, 12, 15, 17

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ............................................................................................7

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) ..............................................................................14, 15

*Dep't of Justice v. Tax Analysts*,
  492 U.S. 136 (1989) ........................................................................................6

*Dep't of State v. Wash. Post Co.*,
  456 U.S. 595 (1982) ......................................................................................11

*Fed. Employees v. Horner*,
  879 F.2d 873 (D.C. Cir. 1989) ..................................................................13

*Ford v. West*, Civ. A.,
  No. 97-1342, 1998 WL 317561 (10th Cir. June 12, 1998) ....................22

*FTC v. Grolier Inc.*,
  462 U.S. 19 (1983) ..........................................................................................6

*Garcia v. Dep't of Justice*,
  181 F. Supp. 2d 356 (S.D.N.Y. 2002) ......................................................22

*Garza v. U.S. Marshals Service*, Civ. A.,
  Nos. 16-0976, 2018 WL 4680205 (D.D.C. Sept. 28, 2017) ...................20

*Gold Anti-Trust Action Comm. v. Bd. of Governors*,
  762 F. Supp. 2d 123 (D.D.C. 2011) ............................................................8

*Graff v. FBI,*
  822 F. Supp. 2d 23 (D.D.C. 2011) ..................................................................16

*Ground Saucer Watch, Inc. v. CIA,*
  692 F.2d 770 (D.C. Cir. 1981) .......................................................................3

*Heggestad v. Dep't of Justice,*
  182 F. Supp. 2d 1 (D.D.C. 2000) ....................................................................8

*In re Sealed Case,*
  121 F.3d 729 (D.C. Cir. 1997) .......................................................................8

*Jefferson v. Dep't of Justice,*
  284 F.3d 172 (D.C. Cir. 2002) .....................................................................13

*Jordan v. Dep't of Justice,*
  591 F.2d 753 (D.C. Cir. 1978) .......................................................................8

*Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau,*
  60 F. Supp. 3d 1 (D.D.C. 2014) ....................................................................10

*Judicial Watch, Inc. v. U.S. Dep't of Commerce,*
  337 F. Supp. 2d 146 (D.D.C. 2004) ...............................................................20

*Lepelletier v. FDIC,*
  164 F.3d 37 (D.C. Cir. 1999) .......................................................... 11, 12, 17

*Levinthal v. FEC,*
  219 F. Supp. 3d 1 (D.D.C. 2016) ..................................................................14

*Martin v. Off. of Special Counsel,*
  819 F.2d 1181 (D.C. Cir. 1987) .....................................................................6

*Mayer Brown LLP v. IRS,*
  562 F.3d 1190 (D.C. Cir. 2009) ....................................................................19

*McCutchen v. Dep't of Health & Human Servs.,*
  30 F.3d 183 (D.C. Cir. 1994) .........................................................................6

*McGehee v. CIA,*
  697 F.2d 1095 (D.C. Cir. 1983) .....................................................................3

*McKinley v. FDIC,*
  744 F. Supp. 2d 128 (D.D.C. 2010) ................................................................7

*Mead Data Central, Inc. v. U.S. Dep't of Air Force,*
  566 F.2d 242 (D.C. Cir. 1977) .....................................................................23

*Media Research Ctr. v. Dep't of Justice,*
  818 F. Supp. 2d 131 (D.D.C. 2011) ................................................................3

*Michael v. U.S. Dep't of Justice,*
  Civ. A. No. 17-0197, 2018 WL 4637358 (D.D.C. Sept. 27, 2018) .........................20

*Miller v. U.S. Dep't of Justice,*
  562 F. Supp. 2d 82 (D.D.C. 2008) ............................................................21, 22

*NARA v. Favish,*
  541 U.S. 157, 172 (2004) ...........................................................................13

*NLRB v. Sears, Roebuck & Co.,*
  421 U.S. 132 (1975) .................................................................................6, 7

*Oglesby v. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990)...........................................................................3
*Petroleum Info. Corp. v. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992)......................................................................8, 9
*Petrucelli v . Dep't of Justice*,
  153 F. Supp. 3d 355 (D.D.C. 2016) ................................................................22
*Pub. Citizen Health Rsch. Grp. v. FDA*,
  185 F.3d 898 (D.C. Cir. 1999)...........................................................................6
*Pub. Citizen, Inc. v. U.S. Dep't of Educ.*,
  388 F. Supp. 3d 29 (D.D.C. 2019) ..................................................................10
*Public Employees for Environment Responsibility*,
  740 F.3d 195 (D.C. Cir. 2014).........................................................................20
*Raulerson v. Ashcroft*,
  271 F. Supp. 2d 17 (D.D.C. 2002) ..................................................................21
*Reed v. NLRB*,
  927 F.2d 1249 (D.C. Cir. 1991).......................................................................15
*Roth v. Dep't of Justice*,
  642 F.3d 1161 (D.C. Cir. 2011).......................................................................15
*Rural Hous. Alliance v. USDA*,
  498 F.2d 73 (D.C. Cir. 1974)...........................................................................14
*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991).....................................................................3, 4
*Salas v. Office of the Inspector Gen.*,
  577 F. Supp. 2d 105 (D.D.C. 2008) ................................................................13
*Sea Shepherd Conservation Soc'y v. IRS*,
  208 F. Supp. 3d 58 (D.D.C. 2016) ..................................................................13
*Sierra Club v. U.S. Dep't of Interior*,
  384 F. Supp. 2d 1 (D.D.C. 2004) ....................................................................11
*Southam News v. U.S. Immigr. & Naturalization Serv.*,
  674 F. Supp. 881 (D.D.C. 1987) .....................................................................17
*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007)...................................................................19, 23
*Tao v. Freeh*,
  27 F.3d 635 (D.C. Cir. 1994).............................................................................2
*U.S. Dep't of State v. Ray*,
  502 U.S. 164 (1991).........................................................................................17
*Wade v. Internal Revenue Serv.*,
  771 F. Supp. 2d 20 (D.D.C. 2011) ..................................................................12
*Weisberg v. Dep't of Justice*,
  745 F.2d 1476 (D.C. Cir. 1984).........................................................................3

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ......................................................................................6

**Statutes**

5 U.S.C. § 552(b) ..............................................................................................................6, 23
5 U.S.C. § 552(b)(5) ...............................................................................................................6
5 U.S.C. § 552(b)(6) .............................................................................................................11
5 U.S.C. § 552(b)(7) .............................................................................................................13
5 U.S.C. § 552(b)(7)(C) ........................................................................................................15
5 U.S.C. § 552(b)(7)(E) ........................................................................................................18
5 U.S.C. § 552(b)(7)(F) ........................................................................................................20
22 U.S.C. § 2378d ..................................................................................................................1
22 U.S.C. § 2378d(a) ..............................................................................................................1
22 U.S.C. § 2378d(b) ..............................................................................................................1
22 U.S.C. § 2378d(c) ..............................................................................................................1

**Rules**

Fed. R. Civ. P. 56(a) ...............................................................................................................2

Plaintiffs submitted to the Department of State (the "Department" or "State") two separate Freedom of Information Act ("FOIA") requests dated December 15, 2017, seeking records pertaining to the nomination and/or vetting of foreign military and security personnel for U.S. training or assistance pursuant to the "Leahy Laws."  *See* 22 U.S.C. § 2378d.[1]  The term "Leahy Laws" refers to two statutory provisions prohibiting the U.S. Government from furnishing assistance to units of foreign security forces where there is credible information implicating that unit in the commission of a gross violation of human rights; one provision applies to the Department of State (the "State Leahy Law") and the other applies to the Department of Defense (the "DoD Leahy Law").[2]  The State Leahy Law includes an exception permitting assistance to a unit if the Secretary of State determines and reports to Congress that the government of the implicated foreign security forces unit is taking effective steps to bring the responsible members to justice; this process is known as "remediation."  *See* 22 U.S.C. § 2378d(b).  The State Leahy Law also imposes on the Secretary of State a duty to inform the foreign government in the event funds are withheld from any of its units pursuant to the State Leahy Law, and to the maximum extent practicable, to assist the foreign government in taking "effective measures to bring the responsible members of the security forces to justice."  22 U.S.C. § 2378d(c).

In the instant case, the Department undertook a good faith effort to search for all responsive records associated with Plaintiffs' FOIA requests related to the Leahy Laws.  The Department

---

[1]    22 U.S.C. § 2378d(a) states that "[n]o assistance shall be furnished under this Act or the Arms Export Control Act to any unit of the security forces of a foreign country if the Secretary of State has credible information that such unit has committed a gross violation of human rights."

[2]    The State Leahy Law was made permanent under section 620M of the Foreign Assistance Act of 1961, 22 U.S.C. § 2378d, and the DoD Leahy Law is codified in section 362 of Title 10.

released all reasonably segregable records and withheld only information that is properly exempt from release under FOIA Exemptions 5, 6, 7(C), 7(E) and 7(F).  As explained herein, in the attached Statement of Facts, in the declarations of Eric F. Stein[3] ("Stein 2nd Decl.") and of Charles O. Blaha[4] ("Blaha Decl."), and in the accompanying exhibits and *Vaughn* Index, no questions of material fact remain, and the Department is entitled to judgment as a matter of law.

## BACKGROUND

The factual and procedural background is fully set forth in Defendant's Statement of Material Facts and the Stein and Blaha declarations, which Defendant incorporates by reference herein.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

---

[3]      Mr. Eric Stein is the Director of the Office of Information Programs and Services at State.  Mr. Stein's duties include, *inter alia,* overseeing the Department's response to requests made pursuant to FOIA and other records access provisions.  Stein 2nd Decl. ¶ 1.

[4]      Mr. Charles Blaha is the Director of the Office of Security and Human Rights within the Department's Bureau of Democracy, Human Rights, and Labor.  Mr. Blaha's duties include overseeing the Department's implementation of the Leahy Laws.  Blaha Decl. ¶ 1.

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v.
Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. Dep't
of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are
decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*,
623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  A government agency may obtain summary judgment in
a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations.  *See McGehee
v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).  Courts give agency declarations "a presumption of
good faith, which cannot be rebutted by 'purely speculative claims about the existence and
discoverability of other documents.'"  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C.
Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## ARGUMENT

I.   **STATE CONDUCTED AN ADEQUATE SEARCH FOR RECORDS RESPONSIVE
     TO PLAINTIFFS' REQUESTS.**

The Department conducted an adequate search for records responsive to Plaintiffs'
requests.[5]  An agency is entitled to summary judgment in a FOIA case with respect to the adequacy
of its search if it shows "'that it made a good faith effort to conduct a search for the requested
records, using methods which can be reasonably expected to produce the information requested.'"
*Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d
57, 68 (D.C. Cir. 1990)).  "[T]he issue to be resolved is not whether there might exist any other
documents possibly responsive to the request, but rather whether the *search* for those documents
was *adequate*."  *Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation
omitted).  And "[a]n agency may establish the adequacy of its search by submitting reasonably

---

[5]     Plaintiffs have not indicated that they intend to challenge the adequacy of the
Department's search.  *See* ECF No. 20.

detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. Dep't of Commerce,* 473 F.3d 312, 318 (D.C. Cir. 2006). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (internal quotation marks and citation omitted); *see also Chambers v. Dep't of Interior,* 568 F.3d 998, 1003 (D.C. Cir. 2009) (recognizing substantial weight traditionally accorded to agency affidavits in FOIA adequacy-of-search cases). Applying these principles, the Department is entitled to summary judgment with respect to the adequacy of its searches.

Plaintiffs submitted to the Department two separate FOIA requests dated December 15, 2017. The first request sought records "pertaining to the nomination and/or vetting of foreign military and security personnel and/or units for U.S. training or assistance pursuant" to the Leahy Laws; this request was assigned tracking number F-2017-17811. Stein 2nd Decl. ¶¶ 5, 9, Ex. B. The second request sought "[c]opies of all guides, manuals, instructions or directions pertaining to the vetting of foreign military and security personnel and/or units" pursuant to the Leahy Laws and copies of the "Reports on Government Police Training and Equipping Programs" submitted to Congress; this request was assigned tracking number F-2017-17860. *Id.* ¶¶ 21, 22, Ex. E.

The Department's Office of Information Programs and Services determined that the Bureau of Democracy, Human Rights, and Labor was most likely to have documents responsive to Plaintiffs' request F-2017-17811. Stein 2nd Decl. ¶ 40. A Leahy Advisor in the Office of Security and Human Rights[6] conducted a search of the Department's International Vetting and Security Tracking ("INVEST") database. *Id.* ¶ 43. The INVEST database was searched using the search

---

[6] The Office of Security and Human Rights is the component within Democracy, Human Rights, and Labor responsible for managing and conducting the Department's Leahy vetting procedures.

terms: "Iraq;" "Afghanistan;" "Egypt;" "Mexico;" "Columbia;" "Philippines;" "Cambodia;" or "Bangladesh." *Id.* The date range searched was January 1, 2017, to August 16, 2019, the date when the search was conducted. *Id.*

With respect to Plaintiffs' request F-2017-17860, the Office of Information Programs and Services determined that the Bureau of Democracy, Human Rights, and Labor; the Bureau of Counterterrorism; and the Bureau of International Narcotics and Law Enforcement Affairs were most likely to have responsive records. Stein 2nd Decl. ¶ 40. The Bureau of Democracy, Human Rights, and Labor searched its shared electronic drive using the following search terms: "Manuals;" "Guides;" "Instructions;" or "Directions" with a date range of January 1, 2010, to August 12, 2019. *Id.* ¶ 44. Various officials within the Bureau of International Narcotics and Law Enforcement Affairs searched their individual email records and personal electronic drives, as well as the Bureau's shared electronic drive, using a combination of the following search terms: "Leahy guide;" "Leahy Manual;" "Leahy Instructions;" "Leahy directions;" or "Report on Government Police Training and Equipping Programs" with a date range of January 1, 2011, to August 7, 2019. *Id.* at ¶¶ 46-49. A Deputy Director within the Bureau of Counterterrorism searched her individual email records and personal electronic drives, and separately conducted a search of the Bureau's shared electronic drive using the following search terms: Leahy; "Leahy guide;" "Leahy manual;" "guidance on vetting;" Skelton; "Report on Government Police Training and Equipping Program;" "Danen;" or "Report on Police Training;" with a date range of September 2015 to August 12, 2019. *Id.* ¶ 51.

The Department's efforts as described above constitute "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested.'" *Clemente,* 867 F.3d at 117. Because the Department conducted a search

5

reasonably calculated to locate all responsive documents, it is therefore entitled to summary judgment with respect to the adequacy of its search.

## II.    STATE PROPERLY INVOKED FOIA EXEMPTIONS 5, 6, 7(C), 7(E) AND 7(F)

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Dep't of Def. v. Fed. Labor Relations Auth. ("FLRA")*, 510 U.S. 487, 494 (1994). FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. *See* 5 U.S.C. § 552(b); *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). To protect materials from disclosure, the agency must show that they come within one of FOIA's exemptions. *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

As explained below, and as detailed in the accompanying declarations, the Department properly relied on FOIA Exemptions 5, 6, 7(C), 7(E) and 7(F) to withhold records, or portions of records, responsive to Plaintiffs' requests.

### A.    FOIA Exemption 5

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency . . . ." 5 U.S.C. § 552(b)(5). Courts have construed this language to "exempt those documents . . . normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975); *see also FTC v. Grolier Inc.*, 462 U.S. 19, 26 (1983); *Martin v. Off. of Special Counsel,* 819 F.2d 1181, 1184 (D.C. Cir. 1987).

The Department applied FOIA Exemption 5 to withhold material responsive to Plaintiffs' requests pursuant to the attorney client and deliberative process privileges.  However, Plaintiffs have informed the Court that they do not intend to challenge the Department's withholding of information pursuant to the attorney client privilege.  *See* ECF No. 20 at 4.  The Department has therefore limited its discussion within this section to those withholdings it made pursuant to the deliberative process privilege.

### 1.  State Properly Withheld Information Pursuant to the Deliberative Process Privilege.

Documents exempt from disclosure under Exemption 5 pursuant to the deliberative process privilege include those "'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)); *see also McKinley v. FDIC,* 744 F. Supp. 2d 128, 137-38 (D.D.C. 2010).  As the Supreme Court has explained:

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal quotation marks and citations omitted).  Examples of documents covered by the deliberative process privilege include recommendations, draft documents, proposals, suggestions, advisory opinions, and other documents, such as email messages, that provide the views of the author, rather than the official policy of the agency, or which reflect the give and take of the policy-making process.  *See Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 168 (D.D.C. 2004).

To invoke the deliberative process privilege, an agency must show that the exempt document or information is both pre-decisional and deliberative.  *Access Reports v. Dep't of*

*Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). For a document to be pre-decisional, it must be antecedent to the adoption of an agency policy. *See Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made . . . ."). To show that a document is pre-decisional, however, the agency need not identify a specific final agency decision; it is sufficient to establish "'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'" *Heggestad v. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States*, 617 F.2d at 868); *see also Gold Anti-Trust Action Comm. v. Bd. of Governors*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) ("[E]ven if an internal discussion does not lead to adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process."(citing *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992))).

The documents and information withheld by the Department under Exemption 5 pursuant to the deliberative process privilege can be roughly divided into three categories: (1) uncleared and non-final draft records and related communications; (2) inter- and intra-agency deliberations; and (3) prepared talking points.

First, the Department withheld either in full or in part several documents, memoranda, and other materials that are in an uncleared, draft form, as well as email communications reflecting the contents of those draft materials, including several drafts of the Department's Leahy Vetting Guide. *See Vaughn* Index Docs. 1-5, 7-10, 12-16, 23, 45, and 48-49. These specific records predate any final version of the documents being drafted and reflect the drafters' preliminary

8

thoughts regarding the type of information that should be contained in the final versions.  Stein 2nd Decl. ¶ 55.  Some of these documents contain edits in redline and/or comment bubbles, *see Vaughn* Index Docs. 2-5, 7-10, 16, 45, while others are clearly marked as drafts or are undated and/or uncleared, *see Vaughn* Index Docs. 1, 12-15, 23.

The withheld draft documents and information are both pre-decisional and deliberative. Stein 2nd Decl. ¶ 58.  The instant drafts contain comments and opinions revealing the internal development and implementation of the Department's policies and procedures surrounding the Leahy vetting process.  *Id.*  These drafts "predate any final version of the documents being drafted and reflect the drafters' preliminary thoughts about what information should be contained in those final versions."  *Id.* ¶ 55.  They directly implicate the Department's internal deliberative processes and are exempted from disclosure by FOIA Exemption 5.  *Coastal States,* 617 F.2d at 866 ("[The deliberative process privilege] covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.")

Second, the Department also withheld information relating to inter and intra-agency deliberations about ongoing Leahy vetting being conducted as to specific individuals and units. Stein 2nd Decl. at ¶ 56; *see Vaughn* Index Docs. 6, 11, 13, 15-16, 19, 23-24, 28-43, and 50.  Certain of the withheld documents include discussions about derogatory information as to specific individuals or units and whether those individuals or units should be cleared to receive assistance or rejected pursuant to the Leahy vetting process.  Stein 2nd Decl. ¶ 56.  Others contain deliberations about various factors the Department can or should consider when conducting Leahy vetting.  *Id.*

These documents and information fall squarely within the protections afforded by the deliberative process privilege; they are both pre-decisional (because they predate any final decision as to the matter(s) they discuss) and deliberative (because they reflect the nature and content of inter- and intra-agency deliberations related to the application and scope of the Leahy vetting process). Courts routinely uphold the withholding of such give-and-take deliberations, not only in memoranda and formal policy recommendations, but also in email communications. *See, e.g.*, *Ctr. for Biological Diversity v. EPA*, 369 F. Supp. 3d 128, 135 (D.D.C. 2019) (holding that material in email chains constituted deliberative communications exempt from disclosure); *Pub. Citizen, Inc. v. U.S. Dep't of Educ.*, 388 F. Supp. 3d 29, 42 (D.D.C. 2019) (same); *Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1, 9 (D.D.C. 2014) (same). Given the heightened sensitivity of the discussions surrounding the vetting as to specific individuals and units, it is of paramount importance that officials be able to engage in open and frank discussions on those topics without the fear that their preliminary analysis and recommendations will become public. *See* Stein 2nd Decl. ¶¶ 56, 58.

Third, the Department withheld one full document and portions of a second document containing talking points prepared for Department officials in conveying policy decisions to foreign government officials and the press. Stein 2nd Decl ¶ 57; *see Vaughn* Index Docs. 14 and 50. This information is pre-decisional and deliberative because it predates any statement actually given to the foreign governments or media outlets and is deliberative because it reveals preliminary suggestions about how to communicate details of the Department's policy decisions to external entities. *Id.* ¶ 57. Such talking points are covered by the deliberative process privilege of FOIA Exemption 5. *See Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*, 325 F. Supp. 3d 162, 171-72 (D.D.C. 2018) ("[T]he overwhelming consensus among judges in this District is that the

10

privilege protects agency deliberations about public statements, including the use of talking points."); *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 19 (D.D.C. 2004) ("These draft talking points are an internal proposal . . . predecisional to the actual communication of such information and issues.").

Based on the nature of these internal documents, and the pre-decisional and deliberative discussions contained therein, the Department correctly applied the deliberative process privilege in asserting its Exemption 5 withholdings.

### B.    FOIA Exemption 6

The withholdings made by the Department solely pursuant to FOIA Exemption 6, protected either the personal phone numbers and email addresses of Department officials,[7] or details about autopsies performed on certain deceased individuals.[8]  *See Vaughn* Index, Docs. 10, 19, 28, 29 and 45.

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes, *inter alia,* "[g]overnment records on an individual which can be identified as applying to that individual."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *see also Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Govt. Accountability*

---

[7]    Plaintiffs' counsel indicated that it does not intend to challenge the redaction of email addresses made pursuant to FOIA Exemption 6.  ECF No. 20 at 3.

[8]    The Department also withheld certain personal identifying information pursuant to FOIA Exemptions 6, 7(C), and 7(F).  Those withholdings are discussed below.  *See infra* Parts II.C.1, II.C.3.

*Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).  In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004).  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *FLRA*, 510 U.S. at 497) (alterations in original); *Beck v. DOJ*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).

Department officials have a significant privacy interest in not having their personal phone numbers disclosed, and the release of those phone numbers would serve no public interest whatsoever.  Stein 2nd Decl. ¶ 63.  Disclosure of those phone numbers would therefore constitute an unwarranted invasion of the privacy interests protected by Exemption 6.  *See Wade v. Internal Revenue Serv.*, 771 F. Supp. 2d 20, 25 (D.D.C. 2011) ("[T]he disclosure of [government employees'] home phone numbers . . . would be an unwarranted invasion of privacy protected by Exemption 6." (citing *FLRA*, 510 U.S. at 495)).

With respect to Document 45, the release of autopsy information would reveal sensitive and personal details about the circumstances surrounding the cited individuals' deaths and would therefore constitute an unwarranted invasion of the personal privacy interests held by the deceased individuals' surviving family members.  Stein 2nd Decl. ¶ 64; *see also Badhwar v. U.S. Dep't of the Air Force*, 829 F.2d 182, 186 (D.C. Cir. 1987) (holding that autopsy reports could "be of a kind that would shock the sensibilities of surviving kin" and could therefore implicate Exemption 6 protections).  The public interest in such information is minimal, as releasing these autopsy

details would shed no light on the Department's performance of its statutory duties.  Stein 2nd Decl. ¶ 65.  The burden is on Plaintiffs to establish that disclosure would sufficiently serve the public interest so as to overcome the individuals' privacy interests.  *See, e.g.*, *Carter v. Dep't of Commerce*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *accord Associated Press v. Dep't of Defense*, 549 F.3d 62, 66 (2d Cir. 2008); *Salas v. Office of the Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." (citing *NARA v. Favish*, 541 U.S 157, 172 (2004)).  Here, there is no countervailing public interest that would be served by the disclosure of this personal information.  Stein 2nd Decl. ¶ 65.

In sum, because there is no countervailing public interest that can overcome the privacy interest of these individuals, the Department properly withheld personal phone numbers of Department officials, and details about autopsies performed on certain deceased individuals pursuant to FOIA Exemption 6.  *See Beck,* 997 F.2d at 1494 (when there is no public interest at all, the court "'need not linger over the balance; something outweighs nothing every time'") (quoting *Nat'l Ass'n of Retired. Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

## C.   FOIA Exemption 7

To establish the applicability of any subparts of FOIA Exemption 7, the government must first show that the records at issue were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).  The D.C. Circuit "has long emphasized that the focus is on how and under what circumstances the requested files were compiled, . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'"  *Sea Shepherd Conservation Soc'y v. IRS,* 208 F. Supp. 3d 58, 79 (D.D.C. 2016) (quoting *Jefferson v. Dep't of Justice*, 284 F.3d 172, 177 (D.C. Cir. 2002)) (additional citations omitted).  A record is "compiled

for law enforcement purposes" within the meaning of Exemption 7 "so long as there is (1) a rational 'nexus' between the record and the agency's law enforcement duties, and (2) a connection between the subject of the record and a possible security risk or violation of federal law." *Levinthal v. FEC*, 219 F. Supp. 3d 1, 6 (D.D.C. 2016) (citing *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)).  The term "law enforcement purposes" includes both civil and criminal statutes, as well as those statutes authorizing administrative proceedings.  *Rural Hous. Alliance v. USDA*, 498 F.2d 73, 81 n. 46 (D.C. Cir. 1974) ("[C]haracter of the statute violated would rarely make a material distinction, because the law enforcement purposes . . . include both civil and criminal purposes."); *Ctr. for Nat'l Policy Review on Race & Urban Issues v. Weinberger*, 502 F.2d 370, 373 (D.C. Cir. 1974) (administrative determination has the "salient characteristics of 'law enforcement' contemplated" by Exemption 7 threshold requirement).  The records implicated by State's Exemption 7 withholdings all originated out of the Department's enforcement of the Leahy Laws and the release of that information could reasonably be expected to disclose sensitive law enforcement information.  Stein 2nd Decl. ¶ 68.

1.      **The Department Correctly Applied FOIA Exemptions 6 and 7(C) to Withhold the Names of Foreign Law Enforcement Officers.**

The Department withheld pursuant to FOIA Exemptions 6 and 7(C) the names of foreign law enforcement officers who were being vetted, or had been vetted, pursuant to the Leahy Laws. Stein 2nd Decl. ¶ 72; *see also Vaughn* Index Docs. 6, 11, 17, 18, 26, 31-49.

The Supreme Court has adopted a broad construction of the privacy interests protected by Exemption 6, emphasizing that "privacy encompass[es] the individual's control of information concerning his or her person."  *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489

U.S. 749, 764 n.16 (1989) (citation omitted).  As already noted above,[9] Exemption 6 requires an agency to balance the individual's right to privacy against the public's interest in disclosure.  *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).  An agency must determine whether disclosure of information threatens a protectable privacy interest and if so, the agency must weigh that privacy interest against the public interest in disclosure, if any.  *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  The "only relevant public interest … to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to the public understanding of the operations or activities of the government."  *FLRA*, 510 U.S. at 495.

Likewise FOIA Exemption 7(C) protects "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  "Exemption 7(C) . . . is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'"  *Roth v. Dep't of Justice,* 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *Reporters Comm.*, 489 U.S. at 756).  Where the information in question was compiled for law enforcement purposes, courts "have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Id.*  However, under both Exemptions 6 and 7(C), the agency must engage in a balancing test to determine whether the public interest in disclosure is outweighed by a significant privacy interest in non-disclosure.  *See Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Review,* 830 F.3d 667, 673-74 (D.C. Cir. 2016).

---

[9]        *See supra* Part II.B.

Here, the foreign law enforcement officers have a significant privacy interest in the non-disclosure of their names and other identifying information.[10]  As explained by the Department, the release of these individuals' names within the context of Leahy vetting would associate them publicly with inquiries into possible gross violations of human rights, even in instances where the Department's review uncovers no credible information tying the individual officers to any such incidents.  Stein 2nd Decl. ¶ 72.  The Department neither informs these individuals that they are undergoing Leahy vetting nor requires the foreign government to disclose the vetting process to individuals undergoing such vetting.  Blaha Decl. ¶ 12.   The Department therefore reasonably expects that at least some of these individuals may not be aware that they are being vetted.  *Id.* ¶ 13.  The release of these individuals' names could expose them to harassment, embarrassment, and retaliation by implicitly tying them to the commission of gross violations of human rights, "in much the same way that associating an individual with an ongoing criminal investigation would invade their personal privacy even if, and perhaps especially if, the individual is ultimately cleared of any wrongdoing."  Stein 2nd Decl. ¶ 72.  Furthermore, disclosure of the vetted foreign officers' names and other identifying information could in certain circumstances expose them to harassment by making public their affiliation with the United States Government.[11]  Blaha Decl ¶ 14.   Thus, the release of these foreign law enforcement officers' names and identifying information "would be a significant invasion of their privacy because it would subject [these individuals] to possible

---

[10]    Courts have found that privacy interests extend to foreign nationals.  *See Graff v. FBI*, 822 F. Supp. 2d 23, 34 (D.D.C. 2011).

[11]    The Department also notes that release of these names "could discourage host governments from submitting necessary vetting information in the future, which could detract from State's ability to implement the Leahy laws and could harm both State's and DoD's ability to conduct security assistance programming vital to U.S. national security interests."  Blaha Decl. at ¶ 14.

embarrassment and retaliatory action." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (1991); *see also Associated Press v. Dep't of Defense,* 554 F.3d 274, 286-88 (2d Cir. 2009) (Guantanamo detainees, "both those who have suffered abuse and those who are alleged to have perpetrated abuse," have a significant privacy interest in keeping their identities undisclosed); *Southam News v. U.S. Immigr. & Naturalization Serv.*, 674 F. Supp. 881, 887 (D.D.C. 1987) (disclosure of identities of individuals excludable from U.S. "would result in derogatory inferences about and possible embarrassment to those individuals").

The privacy interests of these individuals in the non-disclosure of their names must be weighed against the public interest in the release of such information. "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *FLRA*, 510 U.S. at 497) (alterations in original). The Department notes that the only information it withheld was identifying information related to these individuals and that all other non-exempt information related to the vetting process has been released. Stein 2nd Decl. ¶ 72. Thus, the Department provided Plaintiffs with more than sufficient information to evaluate its Leahy vetting processes; releasing these individuals' names would not shed any additional light on the Department's management of the vetting process or its compliance with the Leahy Law. Stein 2nd Decl. ¶ 72; Blaha Decl. ¶ 15.

Accordingly, as there appears to be no significant public interest in the release of these foreign law enforcement officers' names, the Department correctly applied FOIA Exemptions 6 and 7(C) to withhold these individuals' names and other identifying information.

**2.      The Department Correctly Applied FOIA Exemption 7(E) to Withhold Techniques and Procedures Associated with the Leahy Vetting Process.**

The Department asserted FOIA Exemption 7(E) to withhold law enforcement techniques and procedures associated with the Leahy vetting process in fourteen of the documents responsive to Plaintiffs' requests.  *See Vaughn* Index Docs. 6-11, 19-23, 25, 27, and 50.  More specifically, the Department withheld information about (1) the sources from which it gathers potentially derogatory information and methods used for assessing and evaluating the credibility of the sources (Docs. 6 and 11); (2) the systems and workflow procedures the Department employs in conducting Leahy vetting (Docs. 7-10, and 5); (3) internal process for remediation (Docs. 19 and 27); (4) the circumstances in which Leahy vetting is or is not required and specific units that are or are not subject to Leahy vetting (Docs. 20, 21, and 23); (5) the officers at each Post who have access to the Department's INVEST database (Doc. 22); (6) the Department's internal procedures for determining which units rejected pursuant to the Leahy Laws would be named in a publicly-available list in accordance with the Leahy Laws' reporting requirements (Doc. 50); and (7) internal recommendations and advice from Department officials for better managing those processes.  Stein 2nd Decl. ¶ 75.

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

In this Circuit, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be

circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009); *see also id.* ("'[T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'" (quoting *Mayer Brown*, 562 F.3d at 1193).

The Department explains that disclosure of the information withheld pursuant to Exemption 7(E) would reveal techniques and divulge sensitive details regarding the management and application of the Leahy vetting and remediation processes and the Department's other obligations under the Leahy Laws, thus risking to undermine the effectiveness of those techniques and measures in the future. Stein 2nd Decl. ¶ 76. Although certain information about the Department's Leahy vetting procedures is publicly known,[12] there are processes and techniques which are not known to the general public. *Id.* ¶ 75; *see also* Blaha Decl. ¶ 7. The disclosure of such information could undermine the efficacy of the Department's vetting efforts and risk circumvention of the Leahy Laws. Stein 2nd Decl. ¶ 76. FOIA Exemption 7(E) protects the sensitive details of even publicly known techniques, *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1112 (D.C. Cir. 2007), and it protects "even commonly known procedures . . . if the

---

[12]     For example, the Department's website includes a posting of the Foreign Service Institute course that is used to teach Leahy vetting to its personnel available at: https://www.state.gov/key-topics-bureau-of-democracy-human-rights-and-labor/human-rights/leahy-law-fact-sheet/.

disclosure could reduce or nullify their effectiveness." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004).

Because release of the information described above would disclose law enforcement techniques and procedures associated with the Leahy vetting process and thereby risk circumvention of the Leahy Laws, the Department correctly withheld this information pursuant to FOIA Exemption 7(E).

### 3. The Department correctly withheld information Pursuant to FOIA Exemption 7(F)

The Department applied FOIA Exemption 7(F) in conjunction with FOIA Exemptions 6 and 7(C) to certain of the information contained within Documents 43 and 44. More specifically, FOIA Exemption 7(F) was applied to withhold identifying information from the following columns in those two spreadsheets: "FOLFER TYPE;" "UNIT NAME;" "UNIT ALIAS;" "UNIT LOCATION;" "UNIT DESC / ENGLISH," and "ASST NAME."

FOIA Exemption 7(F) allows the withholding of law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). When applying FOIA Exemption 7(F), the "[d]isclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." *Public Employees for Environment Responsibility,* 740 F.3d 195, 205-06 (D.C. Cir. 2014). Courts have upheld the use of this exemption when necessary, as it is here, "to protect the identities of informants, sources, and law enforcement personnel." *Michael v. U.S. Dep't of Justice,* Civ. A. No. 17-0197, 2018 WL 4637358, *12 (D.D.C. Sept. 27, 2018) (internal citations and quotations omitted). As noted above, the information withheld by the Department under Exemption 7(F) is also subject to protection under Exemptions 6 and 7(C). *Garza v. U.S. Marshals Service,* Civ. A. Nos. 16-0976, 2018 WL 4680205, *17 (D.D.C. Sept. 28, 2017) ("Information withheld pursuant

to Exemption 7(F) is also subject to withholding pursuant to Exemptions 6 and 7(C) . . . ."). However, unlike 7(C), there is no balancing test, Exemption 7(F) "is an absolute ban against [disclosure of] certain information," *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002). In reviewing matters under FOIA Exemption 7(F), the Court, within limits, "defers to the agency's assessment of danger." *Miller v. U.S. Dep't of Justice,* 562 F. Supp. 2d 82, 124 (D.D.C. 2008).

The Department applied FOIA Exemption 7(F), in conjunction with FOIA Exemptions 6 and 7(C), to withhold information from Document 44 that, if released, could be used to identify Iraqi nationals from a foreign security force unit who have been considered or approved to receive training or some sort of assistance from the United States Government. Stein 2nd Decl. ¶ 80. The public identification of those specific individuals within the context of the Department's Leahy vetting procedures would reveal their affiliation with the U.S. Government and place them at an increased risk of being targeted by ISIS or Iran-backed militias. *Id.*; Blaha Decl. ¶ 14. With respect to Document 43, the Department applied FOIA Exemption 7(F) to withhold spreadsheet cells 929 and 930 under the "UNIT ALIAS" column, the disclosure of which could also reasonably be expected to endanger the life of physical safety of these individuals. Stein 2nd Decl. ¶ 79. The Department is unable to explain the reason why such harm could reasonably be expected without revealing classified information.[13] *Id.*

### 4.    The Department's assertion of FOIA Exemption 7(F) is not moot.

On January 17, 2020, the Department released in part fourteen spreadsheets to Plaintiff. Stein Decl. ¶ 16. Subsequently, the Department realized that it had inadvertently released two of those spreadsheets without applying FOIA Exemptions 6, 7(C), and 7(F) to certain information.

---

[13]    Due to the nature of this information, any further explanation of Document 43 – should the Court request it – would need to be provided *in camera*.

*Id.* ¶ 17.  By email dated January 24, 2020, counsel for the Department notified Plaintiffs of the inadvertent release and asked Plaintiffs to delete or destroy these two spreadsheets, after which the Department would provide corrected versions of the spreadsheets.  *Id.*  Following extended discussions, Plaintiffs stated that no legal basis had been provided for the destruction or return of these spreadsheets and that Plaintiffs intended "in good faith, to take this information into consideration when determining how, if at all, to use the Iraq and Egypt spreadsheets released to them on January 17 in connection with their reporting."  *Id.* ¶ 18.  Plaintiffs have represented that they intend to argue that the Department's invocation of FOIA Exemptions 6, 7(C), and 7(F) over the affected information is now moot because that information was inadvertently released to Plaintiffs.  *See* ECF No. 20 at 5; *see also* ECF No. 13.

Contrary to Plaintiffs' assertion, the Department's inadvertent release of this information did not constitute a waiver of the Department's ability to invoke any of Exemptions 6, 7(C), or 7(F).  *See Ford v. West*, Civ. A. No. 97-1342, 1998 WL 317561, at *3 (10th Cir. June 12, 1998) (defendant's inadvertent release of names does not constitute waiver); *Bartko v. Dep't of Justice,* 167 F. Supp. 3d 55, 68 (D.D.C. 2016) (agency's inadvertent disclosure of individual names does not constitute waiver of privacy interest pursuant to Exemption 6 or 7(C) because "'privacy interest at stake belongs to the individual, not the government agency'" (quoting *Petrucelli v . Dep't of Justice,* 153 F. Supp. 3d 355, 360-62 (D.D.C. 2016)); *Azmy v. Dep't of Defense*, 562 F. Supp. 2d 590, 605 n.12 (S.D.N.Y. 2008) (accidental or inadvertent disclosure of classified information does not declassify it); *Garcia v. Dep't of Justice,* 181 F. Supp. 2d 356, 377 (S.D.N.Y. 2002) (inconsistent redactions of names of confidential sources does not waive government's ability to invoke Exemption 7(D)).

For the reasons set forth above, the Department correctly applied FOIA Exemption 7(F) to some of the information contained in Documents 43 and 44.

## III.   STATE PROPERLY CONCLUDED THAT THERE ARE NO REASONABLY SEGREGABLE PORTIONS OF THE RESPONSIVE RECORDS

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  *Sussman*, 494 F.3d at 1117.

The Department has met its burden of establishing that all reasonably segregable, non-exempt information has been disclosed.  With respect to the documents at issue, the Department explains that it conducted a line-by-line review and segregated and released all reasonably segregable non-exempt information. Stein Decl. ¶ 82.  Furthermore, prior to the instant briefing, the Department conducted a supplemental review of all of its withholdings made pursuant to FOIA Exemption 5.  *Id.* ¶¶ 33, 82.  As a result of this supplemental review, the Department determined that additional non-exempt information could be segregated and released to Plaintiffs.  *Id.* ¶¶ 34-37, 82. The fact that the Department provided supplemental releases of information where possible, including the release of additional information on November 16, 2020, December 8,

2020, December 17, 2020, and December 31, 2020, is further evidence of the Department's in-depth segregability review. *Id.* ¶¶ 33-37, 81. The Department's declarations and *Vaughn* Index demonstrate throughout, with reasonable specificity, that all documents reviewed were processed to achieve maximum disclosure consistent with the FOIA provisions and that the Department has complied with its duty to segregate exempt from non-exempt information.

## CONCLUSION

For all of the reasons set forth above and in the declarations of Eric F. Stein and Charles O. Blaha along with the accompanying *Vaughn* Index, the Department respectfully submits that its motion for summary judgment should be granted.

Dated: January 6, 2021

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By: */s/ Kathleene Molen*
KATHLEENE MOLEN
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 803-1572
Kathleene.Molen@usdoj.gov

*Counsel for Defendant*