**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| 100REPORTERS, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-01753-RDM |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| *Defendant*. | ) | |

## DECLARATION OF CHARLES O. BLAHA

Pursuant to 28 U.S.C. § 1746, I, Charles O. Blaha, declare and state as follows:

1.      I am the Director of the Office of Security and Human Rights ("SHR") within the Bureau of Democracy, Human Rights, and Labor ("DRL") of the United States Department of State (the "Department" or "State") and have served in this capacity since January 2016. Previously, I was a Foreign Service Officer from March 1991 until January 2016; in January 2016 I became a civil servant. As the Director of DRL/SHR, my duties include overseeing the Department's implementation of the Leahy Laws. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.

## I.  BACKGROUND ON THE LEAHY LAWS AND THE DEPARTMENT'S LEAHY VETTING PROCEDURES

2.      The term "Leahy Laws" refers to two statutory provisions prohibiting the U.S. Government—and more specifically State and the Department of Defense ("DoD")—from furnishing assistance, including training or equipment, to units of foreign security forces where there is credible information that the unit committed a gross violation of human rights

("GVHR").  One statutory provision applies to State (the "State Leahy Law") and the other

applies to DoD (the "DoD Leahy Law").

3.      The State Leahy Law was made permanent under section 620M of the Foreign

Assistance Act of 1961, 22 U.S.C. § 2378d.  In addition to a prohibition against providing

assistance to foreign security force units credibly implicated in the commission of a GVHR, §

2378d(a), the State Leahy Law includes an exception permitting assistance to a unit if the

Secretary of State determines and reports to Congress that the government of the implicated

foreign security forces unit is taking effective steps to bring the responsible members to justice, §

2378d(b).  This process is known as "remediation."  The State Leahy Law also imposes on the

Secretary of State a duty to inform the foreign government in the event funds are withheld from

any units pursuant to the State Leahy Law, and, to the maximum extent practicable, to assist the

foreign government in taking "effective measures to bring the responsible members of the

security forces to justice."  § 2378d(c).

4.      The DoD Leahy Law is similar to the State Leahy Law and was made permanent

under Section 362 of Title 10 of the U.S. Code.  There are some substantive differences between

the DoD and State Leahy Laws, including that the DoD Leahy Law allows for other exceptions

in addition to remediation (referred to as "necessary corrective steps" in the DoD Leahy Law)

and has a waiver authority.  The additional exceptions are available if DoD-funded equipment or

other assistance is necessary to assist in disaster relief or other humanitarian emergency

operations, or to assist in national security emergencies.  These other exceptions do not apply to

training.  The DoD Leahy Law allows the Secretary of Defense to waive the prohibition in order

to provide DoD-funded training, equipment, or other assistance to a prohibited unit, after

consultation with the Secretary of State, if the Secretary of Defense determines that the waiver is

2

required by extraordinary circumstances.  The DoD Leahy Law provides that the Secretary of

Defense shall, in consultation with the Secretary of State, ensure that full consideration is given

to any credible information available to the Department of State relating to human rights

violations by a unit before DoD provides training, equipment, or other assistance to the unit.

    5.      The U.S. Government considers torture, extrajudicial killing, enforced

disappearance, and rape under color of law, among other human rights violations, to constitute

GVHRs within the meaning of the Leahy Laws.  Incidents are examined on a fact-specific basis.

    6.      The Department and DoD implement the Leahy Laws through a process known as

Leahy vetting, which State conducts on its own behalf with regard to the State Leahy Law and on

DoD's behalf with regard to the DoD Leahy Law, as well as for other agencies that implement

programs funded from State and DoD Leahy Law-applicable funding sources.  In cases where an

entire unit is designated to receive assistance, the Department at a minimum vets the unit and the

unit's commander.  When an individual security force member is nominated for U.S. assistance,

the Department vets that individual as well as his or her unit.  Vetting begins in the unit's home

country, where the U.S. embassy conducts consular, political, and other security and human

rights checks.  Most often, an additional review is conducted by Department analysts in

Washington, D.C.  With respect to DoD-funded programs, the Department conducts Leahy

vetting and provides DoD with pertinent derogatory information.  However, DoD is ultimately

responsible for DoD's compliance with the DoD Leahy Law.

    7.      As a matter of policy, DRL/SHR seeks to provide the public with as much

information as practicable on its implementation of the Leahy Laws.  General information about

the Department's Leahy vetting procedures is publicly known, and the Department's website

includes a posting for the Foreign Service Institute course the Department uses to teach Leahy

vetting to its personnel, available at https://www.state.gov/key-topics-bureau-of-democracy-human-rights-and-labor/human-rights/leahy-law-fact-sheet/.  However, in order to protect the integrity and efficacy of the Leahy vetting process and to avoid creating any opportunities to circumvent the U.S. Government's implementation of the Leahy Laws, the Department does not make publicly available certain detailed internal guidance on Leahy vetting and the procedures used by Department officials to make assessments in connection with the Leahy Laws.  In addition, the deliberations relating to each individual case, including assessments about what constitutes credible information or whether an incident rises to the level of a GVHR, are generally not made public or shared with foreign partners since doing so could discourage open and frank deliberation among Department officials and undermine our diplomatic relations.

8.      The Department vetting process allows officials to evaluate and assess available information about the human rights record of the unit in question (and the individual, as applicable), reviewing a full spectrum of open-source and non-public, classified records.  This includes information published by reputable non-governmental organizations (NGOs) and information whose unauthorized disclosure reasonably could be expected to cause damage to the national security of the United States or to endanger intelligence sources or methods.

9.      Each U.S. Embassy country team assigns a point of contact with responsibility for oversight of, and compliance with, Leahy vetting procedures.  My office, DRL/SHR, acts as the lead contact in the Department for Leahy vetting policy and workflow issues.  Regional bureaus, the Bureau of Political-Military Affairs, and other stakeholders, where appropriate, jointly develop Leahy policy and manage the vetting process with DRL.

10.     Derogatory information found during vetting is assessed by the regional bureau that covers the relevant geographic region in coordination with DRL, the relevant U.S. Embassy

4

country team and country desk, the Office of the Legal Adviser ("L"), and others, as appropriate, to (1) reach consensus on the credibility of information regarding the GVHR; (2) advise bureau senior officials on derogatory information found; and (3) coordinate the regional bureau's response when derogatory information is found.

## II.  PROTECTING THE IDENTITY OF VETTED INDIVIDUALS

11.     The Leahy Laws' prohibitions apply at the level of security force units, rather than to individuals.  However, as noted above, for certain types of assistance, State conducts Leahy vetting on individuals, in addition to their units.

12.     A vetted individual's and/or unit's host government often provides the U.S. Government with some information relevant to the Leahy vetting process.  However, State does not inform individuals that they are undergoing Leahy vetting or require that individuals be informed of the vetting process by their host government.  The U.S. Government instead leaves it to the host government to determine whether to inform individuals or units that they have been submitted for vetting.

13.     Accordingly, the Department reasonably expects that at least some individuals are not aware that they or their units are being or have been Leahy vetted.

14.     Releasing the names of members of foreign security forces who were submitted for Leahy vetting would have a number of negative effects.  First, release would harm the personal privacy of the vetted individuals, who have a privacy interest in their names and other identifying information.  Second, releasing the names of vetted individuals could expose those individuals to harassment and retaliation either by making public their affiliation with a unit that may be receiving assistance from the U.S. Government or by implicitly tying them to the possible commission of GVHRs.  Third, release could discourage host governments from

*100Reporters, et al. v. U.S. Dep't of State*
Case No. 1:19-cv-01753
Blaha Declaration

submitting necessary vetting information in the future, which could detract from State's ability to implement the Leahy Laws and could harm both State's and DoD's ability to conduct security assistance programming vital to U.S. national security interests.

15.     To my knowledge, and upon consultation with my colleagues throughout the Department, I understand that for both foreign policy and personal privacy reasons, the Department does not make public the names of foreign security force members that participate in U.S. Government security assistance programs.  Further, and importantly, revealing the names of vetted individuals would not shed any additional light on State's management of matters related to Leahy Law implementation or compliance with the Leahy Law.  Simply knowing the names of the individuals who have been vetted would not allow for a cross-reference to be made against the Department's publicly available records on its security assistance programs since the names of individuals that ultimately receive State or DoD-funded assistance are not published.


* * *


I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed this 4th day of January 2021, Washington D.C.


Charles O. Blaha


6