UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 100REPORTERS, *et al.,* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 19-1753 (RDM) |
| ) | |
| U.S. DEPARTMENT OF STATE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# EXHIBIT A

# *VAUGHN* INDEX

*100Reporters, et al.* **v.** *U.S. Dep't of State* **(Case No. 19-cv-01753)**[1]

**FOIA Requests F-2017-17811 and F-2017-17860**
**January 6, 2021**

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(1)** | | | | | | |
| C06808035 | Draft Memorandum | 2 | Undated | Executive Secretary of the Department of State to Executive Secretary of the Department of Defense | Deny in Full ("DIF") | (b)(5) (Deliberative Process Privilege ("DPP")) |

**DESCRIPTION:** This document is an undated draft memorandum from the former Executive Secretary of the Department of State (the "Department" or "State") to the former Executive Secretary of the Department of Defense ("DoD"). The subject of the memorandum is "Department of State Submission: Report to Congress on U.S. Government Police Training and Equipping Programs." The memorandum is in draft form: it is undated, uncleared, and contains markings from the template on which it was based.

The Department withheld this document under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to deliberative process privilege. This information is subject to deliberative process privilege because it is both predecisional (it predates any final memorandum sent to DoD) and deliberative (it reveals the drafter's preliminary, uncleared thoughts about what information should be included in the memorandum). Disclosure of this draft document could reasonably be expected to chill the open and frank exchange of ideas and recommendations that occur when Department officials are drafting documents to share within the Executive Branch.

---

[1]       Plaintiffs' September 30, 2020 response to the Department's notice regarding its summary judgment motion indicated that Plaintiffs intended to challenge only the Department's withholdings pursuant to Exemptions 6 (except of email addresses), 7(C), 7(E), and 7(F), 5 U.S.C. § 552(b)(6), (b)(7)(C), (b)(7)(E), (b)(7)(F), as well as the Department's withholdings under Exemption 5, § 552(b)(5), pursuant to the deliberative process privilege. Therefore, to the extent the Department has withheld information pursuant to any other FOIA Exemption or for any other reason, the Department of State has omitted from the information contained below (1) descriptions of those withholdings; (2) descriptions of any additional withholdings asserted over the exact same passages; and (3) descriptions of the information underlying the withholdings.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(2–5)** | | | | | | |
| C06808075 C06808078 C06808097 C06808102 | Draft ALDAC | 3 5 5 8 | Undated | Bureau of Democracy, Human Rights, and Labor ("DRL") | DIF | (b)(5) (DPP) |

**DESCRIPTION:** These documents are draft ALDACs (*i.e.*, cables or messages addressed to "All Diplomatic and Consular Posts") drafted by officials in DRL. Each draft ALDAC is related to the Leahy Laws or Leahy vetting. Each draft ALDAC is identifiable as a draft for one or more of the following reasons: (1) the document contains edits in redline; (2) the document contains comment bubbles; or (3) not all of the individuals listed as clearers have cleared on the document.

The Department withheld these documents under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to deliberative process privilege. The information in these documents is subject to the deliberative process privilege because it is both predecisional (it predates any final ALDACs distributed throughout the Department) and deliberative (it reveals the drafters' preliminary, uncleared thoughts about what information should be included in the ALDACs). Disclosure of these draft documents could reasonably be expected to chill the open and frank exchange of ideas and recommendations that occur when Department officials are drafting ALDACs to provide Department-wide guidance on policy, legal, or other topics.

The Department conducted a line-by-line review of the documents and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(6)** | | | | | | |
| C06808271 | Email chain | 4 | 7/16/2019 – 8/8/2019 | DRL and Embassy Rangoon | Released in Part ("RIP") | (b)(5) (DPP); (b)(6); (b)(7)(C); (b)(7)(E) |

**DESCRIPTION:** This document is an intra-agency email exchange between officials in DRL and officials at Embassy Rangoon. In the email exchange, the officials discuss the ongoing Leahy vetting process for certain Burmese law enforcement personnel, including discussions about whether the Department has credible intelligence indicating that the law enforcement personnel should be cleared to receive assistance or should be

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|

rejected.  In particular, the officials discuss potentially derogatory information that one of the Department's Leahy vetters found in connection with specific units and individuals who had been nominated to receive assistance, including discussions about the credibility of that information and the impact that the information would have on the results of the Leahy vetting.

The Department withheld portions of this document under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The information withheld from this document is subject to the deliberative process privilege because it is both predecisional (it predates any decision about whether the individuals and units discussed should be cleared or rejected) and deliberative (it reveals the exchange of information relevant to the Leahy determination, certain officials' opinions about whether individuals and units should be approved or rejected, and discussion of the factors the Department considers when making that decision).  Disclosure of the withheld information could reasonably be expected to chill the open and frank discussions in which Department officials engage when they exchange information and conduct analyses of whether particular individuals and units are eligible for assistance.  In the sensitive context at issue here—determinations about whether credible evidence exists that certain individuals or units have been implicated in gross violations of human rights ("GVHR")—it is of paramount importance that officials be able to engage in open and frank conversations about their Leahy vetting determinations, without fear that their preliminary recommendations will routinely become public.

The Department also withheld portions of this document under **Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E), because it reveals information about law enforcement techniques used by the Department to assess whether individuals and units are eligible for assistance under the Leahy Laws.  This email exchange was conducted in furtherance of the law enforcement purpose of enforcing the Leahy Laws by vetting foreign individuals and units before they receive training or other assistance from the U.S. Government.  Release of information about the sources from which the Department gathers potentially derogatory information, how the Department assesses the credibility of those sources, how the Department determines whether individuals and units being vetted were involved in the potentially derogatory incidents, and how the Department decides to respond to any particular incident could assist individuals and units seeking to circumvent the procedures used for conducting Leahy vetting and would allow them to see which specific information is given more or less weight in assessing eligibility for assistance.  Disclosure of this information therefore could reasonably be expected to risk circumvention of the law.

The Department also withheld the names of certain Burmese law enforcement officers under **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C).  The public release of the names of those individuals could reasonably be expected to harm their personal privacy.  The discussions in this document relate to whether credible evidence exists that these individuals have committed GVHRs or whether credible evidence exists that units with which they are affiliated have committed GVHRs.  Although the information in the document suggests that these individuals were not involved in any of the incidents in which their units were potentially implicated, associating them publicly with inquiries into possible GVHRs would constitute an unwarranted invasion of personal privacy, in much the same way as associating an individual with an ongoing criminal investigation would invade personal privacy, even if—perhaps especially if—the individuals were ultimately cleared of any personal wrongdoing.  On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted and in the fact that the government is providing assistance in particular countries (facts which are not being withheld under Exemptions 6 or 7(C) in this document), there is less public

*100Reporters, et al.  v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|
| interest, if any, in the names of specific Burmese law enforcement officers who are being vetted through the Leahy process.  Accordingly, the privacy interests outweigh any public interest in disclosure. <br><br> The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(7–10)** | | | | | | |
| C06808419 <br> C06808474 <br> C06808582 <br> C06883002 | Draft Leahy Vetting Guide | 83 <br> 91 <br> 119 <br> 83 | 11/10/2016 <br> 4/28/2016 <br> 9/23/2016 <br> 4/28/2016 | Department Officials | DIF | (b)(5) (DPP); (b)(7)(E) |

**DESCRIPTION:**  These documents are drafts of the Department of State's 2016 Leahy Vetting Guide.  The documents are marked "DRAFT DRAFT DRAFT DRAFT" on their cover page.  Some of the documents contain extensive redline edits and comment bubbles.

The Department withheld these documents under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The information in these documents is subject to the deliberative process privilege because it is both predecisional (it predates the final 2016 Leahy Vetting Guide) and deliberative (it reveals the information that State considered including in the 2016 Leahy Vetting Guide but may not have included in the final version).  Disclosure of this draft document could reasonably be expected to chill the exchanges of ideas among Department officials that occurs whenever policy and legal documents are being drafted.

The Department also withheld certain portions of these draft documents—in line with the description provided below for Document Number C06808549—pursuant **to Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E), since they reveal guidance for law enforcement investigations and/or information about law enforcement techniques used by the Department in enforcing the Leahy Laws.  The Leahy Vetting Guide was created in furtherance of the law enforcement purpose of enforcing the Leahy Laws and contains specific information about the systems and workflow used by Department officials to achieve that law enforcement purpose.  Release of that sensitive, non-public information about how the Department conducts Leahy vetting—including the systems it uses, how information in those systems affects Leahy vetting, and how information uncovered during the Leahy vetting process can be used in other contexts—could assist individuals and units seeking to circumvent the procedures used for conducting Leahy vetting.  Disclosure of this information therefore could reasonably be expected to risk circumvention of the law.

The Department conducted a line-by-line review of the documents and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(11)** | | | | | | |
| C06808449 | Email | 10 | 7/3/2019 – 7/5/2019 | DRL, the Bureau of International Narcotics and Law Enforcement ("INL"), and Embassy Hanoi | RIP | (b)(5) (DPP); (b)(6); (b)(7)(C); (b)(7)(E) |

**DESCRIPTION:**  This document is an intra-agency email exchange between officials in DRL, INL, and at Embassy Hanoi.  In the email exchange, the officials discuss the ongoing Leahy vetting process for specific Vietnamese law enforcement personnel, including discussions about whether specific individuals should be cleared to receive assistance or should be rejected.  In particular, the officials discuss potentially derogatory information that one of the Department's Leahy vetters found about specific units and individuals who had been nominated to receive assistance, including discussions about the credibility of that information and the impact that the information would have on the results of the Leahy vetting.

The Department withheld portions of this document under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The information withheld from this document is subject to the deliberative process privilege because it is both predecisional (it predates any decision about whether the individuals and units discussed should be cleared or rejected) and deliberative (it reveals the exchange of information relevant to the Leahy determination, certain officials' opinions about whether units and individuals should be approved or rejected, and discussion of the factors the Department considers when making that decision).  Disclosure of the withheld information in this email exchange could reasonably be expected to chill the open and frank discussions in which Department officials engage when they exchange information and conduct analyses of whether particular individuals and units are eligible for assistance.  In the sensitive context at issue here—determinations about whether credible evidence exists that certain individuals or units have been implicated in GVHRs—it is of paramount importance that officials be able to engage in open and frank conversations about their Leahy vetting determinations, without fear that their preliminary recommendations will routinely become public.

The Department also withheld portions of this document under **Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E), because it reveals information about law enforcement techniques used by the Department to assess whether individuals and units are eligible for assistance under the Leahy Laws.  This email exchange was conducted in furtherance of the law enforcement purpose of enforcing the Leahy Laws by vetting foreign individuals and units before they receive training or other assistance from the United States government.  Release of information about the sources from which the Department gathers potentially derogatory information, how the Department assesses the credibility of those sources, how the Department determines whether individuals and units being vetted were involved in the potentially derogatory incidents, and how the Department decides to respond to any particular incident could assist individuals and units seeking to circumvent the procedures used for conducting Leahy vetting and would allow them to see which specific information is given more or less weight in assessing eligibility for assistance.  Disclosure of this information therefore could reasonably be expected to risk circumvention of the law.

*100Reporters, et al.  v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|

The Department also withheld the names of certain Vietnamese law enforcement officers under **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C). The public release of the names of those individuals could reasonably be expected to harm their personal privacy. The discussions in this document relate to whether credible evidence exists that these individuals have committed GVHRs or whether credible evidence exists that units with which they are affiliated have committed GVHRs. Although the information in the document suggests that these individuals were not involved in any of the incidents in which their units were potentially implicated, associating them publicly with inquiries into possible GVHRs would constitute an unwarranted invasion of personal privacy, in much the same way as associating an individual with an ongoing criminal investigation would invade personal privacy, even if—perhaps especially if—the individuals were ultimately cleared of any personal wrongdoing. On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted and in the fact that the government is providing assistance in particular countries (facts which are not being withheld under Exemptions 6 or 7(C) in this document), there is less public interest, if any, in the names of specific Vietnamese law enforcement officers who are being vetted through the Leahy process. Accordingly, the privacy interests outweigh any public interest in disclosure.

Finally, the Department withheld the personal phone number of a DRL officer under **Exemption 6**, 5 U.S.C. § 552(b)(6). The public release of the DRL officer's cell phone number could reasonably be expected to harm his personal privacy and there is no public interest in that phone number. Accordingly, the privacy interests outweigh any public interest in disclosure.

The Department conducted a line-by-line review of the documents and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

| (12) | | | | | | |
|---|---|---|---|---|---|---|
| C06808463 | Email | 2 | 7/2/2016 – 7/5/2016 | DRL and INL | RIP | (b)(5) (DPP) |

**DESCRIPTION:** This document is an intra-agency email exchange between officials in DRL and INL. In the first (bottom) email of the exchange, an INL official circulates and requests comments on a draft letter addressed to implementers about what information the Department's Leahy vetting team requires to conduct vetting in accordance with the Leahy Laws. In the ensuing email chain, which consists of three additional emails, Department officials suggest modifications to the draft document, discuss resources available to both Department officials and the public about the Leahy Laws and related vetting procedures, and comment on proper procedure for the Leahy vetting process.

The Department withheld portions of this document under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The information withheld from this document is subject to the deliberative process privilege because it is both predecisional (it predates any decision about what final form the letter should take, as well as any decision about whether a specific unit or individual should be cleared or rejected as a result of the Leahy vetting process) and deliberative (it reveals the exchange of ideas and suggestions both about the final form the letter should take and about the proper procedures for conducting Leahy vetting). Disclosure of the withheld information in this email exchange could

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| reasonably be expected to chill the open and frank discussions in which Department officials engage when they prepare documents for internal use while carrying out Department policy and establishing processes to comply with governing law.  The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(13)** | | | | | | |
| C06808548 | Draft document | 4 | Undated | DRL | DIF | (b)(5) (DPP) |

**DESCRIPTION:** This document is a draft titled "Template for Remediation Memoranda." The document is a preliminary draft of a template that was being considered for use to initiate the remediation process when Department reviewers believe that a foreign security force unit either had taken all necessary accountability measures or had become a fundamentally different unit than the one that once committed a GVHR. The last (bottom) page of the document clearly indicates that it has neither been "Approved" nor "Cleared."

The Department withheld this document under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The information in this document is subject to the deliberative process privilege because it is both predecisional (it predates any decision about final form the template should take, as well as any decision about whether a unit has been remediated) and deliberative (it reveals the drafter's preliminary suggestion about what form the template should take). Disclosure of this draft document could reasonably be expected to chill the open and frank discussions in which Department officials engage when they draft documents for internal use while carrying out Department policy and establishing processes to comply with governing law. In addition, disclosure of the document would reveal the factors the Department considered during its deliberative process regarding whether foreign security force unit has either taken all necessary accountability measures or become a fundamentally different unit than the one that once committed a GVHR.

The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(14)** | | | | | | |
| C06808565 | Draft Press Guidance | 2 | 2/6/2015 | DRL | DIF | (b)(5) (DPP) |

**DESCRIPTION:** This document is a draft of press guidance titled "Joint State-DoD Policy on Remediation and the Resumption of Assistance." The document contains draft talking points for use by members of the Department who receive press inquiries about the topic of the guidance. In its last (bottom) page, the document's "Approval" line has been left blank, indicating that this version is a draft, unapproved document.

The Department withheld this document under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The information in this document is subject to the deliberative process privilege for two separate reasons. First, because it is a draft, it is predecisional with respect to the final form the press guidance should take and is deliberative because it reveals the drafter's preliminary suggestion about what form the guidance should take. Second, it is predecisional with respect to any statement actually given to the press by a Department official or spokesperson; the official statement would constitute the Department's final policy on how to communicate with the media about the subject of the guidance. This draft press guidance is deliberative because it reveals the drafter's preliminary suggestion about what the Department should communicate to the press. Disclosure of this draft document could reasonably be expected to chill the open and frank discussions in which Department officials engage when they draft documents for internal use to prepare other officials for communicating policy decisions to the public, as well as the willingness of officials to make suggestions to regarding press guidance.

The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

| | | | | | | |
|---|---|---|---|---|---|---|
| **(15)** | | | | | | |
| C06808609 | Draft Action Memo | 2 | 5/7/2015 | DRL and the Bureau of Western Hemisphere Affairs ("WHA") | DIF | (b)(5) (DPP) |

**DESCRIPTION:** This document is an unsigned draft action memo recommending that the Under Secretary for Civilian Security, Democracy, and Human Rights approve a notification to Congress that a specific unit has taken effective steps to remediate and bring to justice the individuals responsible for committing a GVHR. This draft memo has not been approved, cleared, or signed. The text of the draft memo also appears to cut off mid-sentence.

The Department withheld this document under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The information in this document is subject to the deliberative process privilege because it is both predecisional (it predates any decision about whether the unit has been remediated and whether to send any notification to Congress) and deliberative (it reveals the drafter's preliminary suggestion about the actions that the Under Secretary and the Department should take with respect to the unit at issue, as well as the drafter's preliminary

*100Reporters, et al.  v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|

recommendation of what information to include in the action memo).  Disclosure of this draft document could reasonably be expected to chill the open and frank discussions in which Department officials make recommendations to their principals.  If all recommendations made to Department principals were subject to public scrutiny, including recommendations that the Department decided not to follow, Department officials would be reluctant to make such recommendations.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| **(16)** | | | | | | |
|---|---|---|---|---|---|---|
| C06808643 | Attachment | 3 | 5/7/2015 | DRL and WHA | DIF | (b)(5) (DPP) |

**DESCRIPTION:**  This document is an attachment to C06808609.  The draft document contains an overview of the Leahy remediation case for the specific unit that is the subject of the draft action memo in C06808609.  The draft document has not been approved and contains text in redline and a comment bubble, indicating that it—like the memo to which it was attached—is a draft.

The Department withheld this document under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The information in this document is subject to the deliberative process privilege because it is both predecisional (it predates any decision about whether the unit has been remediated) and deliberative (it reveals the drafter's recommendations about the actions that the Undersecretary and the Department should take with respect to the unit at issue).  Disclosure of this draft document could reasonably be expected to chill the open and frank discussions in which Department officials make recommendations to their principals.  If all recommendations made to Department principals were subject to public scrutiny, including recommendations that the Department decided not to follow, Department officials would be reluctant to make such recommendations.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| **(17)** | | | | | | |
|---|---|---|---|---|---|---|
| C06808116 | Spreadsheet | 4 | Undated | INL | RIP | (b)(6); (b)(7)(C) |

**DESCRIPTION:**  This document is a spreadsheet containing the names of Egyptian individuals who received training after being vetted pursuant to the Leahy Laws.  In particular, the spreadsheet resolves questions raised by the U.S. Government Accountability Office ("GAO") about whether the subject individuals had been vetted prior to receiving training.

*100Reporters, et al.  v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| The names of the individuals are redacted pursuant to **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C).  The public release of the names of the individuals at issue could reasonably be expected to harm their personal privacy by associating them publicly with inquiries into possible GVHRs, in much the same way as associating an individual with an ongoing criminal investigation would invade personal privacy, even if—perhaps especially if—the individuals were ultimately cleared of any personal wrongdoing.  On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted, there is less public interest, if any, in the names of specific law enforcement officers who were vetted through the Leahy process and received training.  Accordingly, the privacy interests outweigh any public interest in disclosure.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(18)** | | | | | | |
| C06808181 | Cable | 2 | 7/24/2019 | Embassy La Paz | RIP | (b)(6); (b)(7)(C) |

**DESCRIPTION:**  This cable explains that during the Leahy Vetting process, Embassy La Paz concluded that credible evidence existed that seven individuals and three units of the Bolivian police were involved in an extrajudicial killing.  The cable provides some details about the incident, the names of the tainted units and individuals, and additional information about communications between the Department and the Bolivian authorities.

The Department withheld the names of certain Bolivian law enforcement personnel pursuant to **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C).  The public release of the names of those individuals at issue could reasonably be expected to harm the personal privacy of these individuals.  The discussions in this document relate to incidents for which there is credible evidence that these individuals and units have committed an extrajudicial killing.  Associating them publicly with suspected involvement in an extrajudicial killing would constitute an unwarranted invasion of personal privacy, in much the same way as associating an individual with an ongoing criminal investigation would invade that person's personal privacy.  On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted and in the fact that the government is providing assistance in particular countries (facts which are not being withheld under Exemptions 6 or 7(C) in this document), there is less public interest, if any, in the names of specific Bolivian law enforcement officers who are suspected of being involved in the extrajudicial killing.  Accordingly, the privacy interests outweigh any public interest in disclosure.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

*100Reporters, et al.  v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(19)** | | | | | | |
| C06808201 | Email chain | 3 | 6/22/2016 – 6/29/2016 | INL | RIP | (b)(5) (DPP); (b)(7)(E) |

**DESCRIPTION:** This document is an email chain consisting of five emails on the topic of remediation under the Leahy Laws—*i.e.*, the process by which units that have been tainted because of credible allegations of human rights violations can regain their eligibility for training and assistance. The subject line is "Remediation of tainted Leahy vetting units." In the bottom email, a Department official asks an official in INL if he has any knowledge about Leahy remediation for units in Palestine. After a follow up email, the INL official loops in colleagues whose portfolios cover Mexico and Jamaica, and those individuals respond by providing information about previously approved remediation cases.

In these various emails, certain deliberative information is redacted under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. In particular, the redactions cover information about the internal process by which tainted individuals and units can become remediated, including the internal process for remediation, the types of factors the Department considers during the remediation evaluation, and recommendations and advice for managing the process. The redacted information is subject to the deliberative process privilege because it is both predecisional (it predates any decision about whether the Palestinian units in question have been remediated) and deliberative (it reveals the nature of the Department's internal process for making remediation decisions and includes recommendations about how to navigate that process). Disclosure of the redacted information could reasonably be expected to chill the open and frank discussions that are necessary to the Department's operations.

This same information is also exempt from release under **Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E), as it reveals information about law enforcement techniques used by the Department to assess whether individuals and units are have been remediated. In particular, the information describes the internal process for remediation, the types of factors the Department considers during the remediation evaluation, and recommendations and advice for managing the process. Release of information about the Department's remediation process and policies could assist individuals and units seeking to circumvent or abuse the procedures used for assessing remediation. Disclosure of this information therefore could reasonably be expected to risk circumvention of the law.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

*100Reporters, et al.  v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|
| **(20)** | | | | | | |
| C06808202 | Email | 1 | 11/1/2017 | INL | RIP | (b)(6); (b)(7)(E) |

**DESCRIPTION:** This document is a single email sent by the Mexico Program Officer for the Western Hemisphere Program ("WHP") at INL. As the unredacted portion of the email indicates, the email attaches a Leahy Workshop readout memo from the Mexico Program Officer's trip to Bogota to represent WHP.

The Department withheld the cell phone number of the Mexico Program Officer under **Exemption 6**, 5 U.S.C. § 552(b)(6). The public release of the Officer's cell phone number could reasonably be expected to harm her personal privacy and there is no public interest in that phone number. Accordingly, the privacy interests outweigh any public interest in disclosure.

The Department also withheld part of one sentence under **Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E), as it reveals information about law enforcement techniques used by the Department to assess whether individuals and units are eligible for assistance under the Leahy Laws. In particular, it explains a circumstance in which Post is not required to submit individual names for Leahy vetting. This email exchange was conducted in furtherance of the law enforcement purpose of enforcing the Leahy Laws by vetting foreign individuals and units before they receive training or other assistance from the United States government. Release of information about the Department's process and policies for conducting Leahy vetting, including when names need not be submitted for Leahy vetting, could assist individuals and units seeking to circumvent the procedures used for conducting Leahy vetting and would allow them to see which specific information is given more or less weight in assessing eligibility for assistance. Disclosure of this information therefore could reasonably be expected to risk circumvention of the law.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| | | | | | | |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|
| **(21)** | | | | | | |
| C06808205 | Attachment | 2 | 10/2/2017 | INL | RIP | (b)(7)(E) |

**DESCRIPTION:** This document—an attachment to C06808202—is a readout of a Leahy vetting workshop in Bogota.

The Department withheld 11 of the 31 bullet points in this document under **Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E). The redacted information reveals law enforcement techniques used by the Department to assess whether individuals and units are eligible for assistance under the Leahy Laws, including several internal polices and internal procedures that guide the Leahy vetting process, discussion of circumstances when Posts are not required to submit individual names for Leahy vetting, and procedural information related to the proper workflow and use of the Department's International Vetting and Security Tracking ("INVEST") database. The workshop was conducted, and the readout was prepared, in furtherance of

*100Reporters, et al. v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|

the law enforcement purpose of enforcing the Leahy Laws by vetting foreign individuals and units before they receive training or other assistance from the United States government.  Release of information about the Department's process and policies for conducting Leahy vetting could assist individuals and units seeking to circumvent the procedures used for conducting Leahy vetting and would allow them to see which specific information is given more or less weight in assessing eligibility for assistance.  Disclosure of this information therefore could reasonably be expected to risk circumvention of the law.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| (22) | | | | | | |
|---|---|---|---|---|---|---|
| C06808392 | Document | 5 | Undated | Department of State | RIP | (b)(7)(E) |

**DESCRIPTION:**  This document is an internal Department guide to Leahy Vetting, titled "Tainted: The Average Joe's Guide to Leahy Vetting."  The document contains a step by step guide to conducting Leahy vetting.  Most of the document has been released, but there are four redactions.

The first redaction names two countries in which Posts require more information or documentation in order to conduct Leahy vetting than most other Posts.  The second redaction describes the location of, and access restrictions on, lists of which officers at Post have access to the INVEST database.  The third redaction provides details about who conducts the first round of Leahy vetting and how that vetting is conducted.  The fourth redaction provides details about the procedures for how Leahy vetting is conducted throughout the federal government.

The Department made these withholdings pursuant to **Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E), because they reveal information about law enforcement techniques used by the Department to assess whether individuals and units are eligible for assistance under the Leahy Laws.  This was prepared in furtherance of the law enforcement purpose of enforcing the Leahy Laws by vetting foreign individuals and units before they receive training or other assistance from the United States government.  Release of information about how the Department conducts Leahy vetting, how those procedures vary among Posts, and who at each Post has access to the INVEST system could assist individuals and units seeking to circumvent the procedures used for conducting Leahy vetting.  Disclosure of this information therefore could reasonably be expected to risk circumvention of the law.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(23)** | | | | | | |
| C06808457 | Email chain | 4 | 4/29/2016 – 7/19/2016 | DRL and INL | RIP | (b)(5) (DPP); (b)(7)(E) |

**DESCRIPTION:** This document is an email chain among Department officials in DRL and INL. In the first (bottom) email, an INL official informs others in INL that DRL shared a draft copy of the Revised Leahy Vetting Guide and was seeking comments from INL. The email includes a link to the 2012 version of the Leahy Vetting Guide. The second and third paragraphs of the email are redacted. In those paragraphs, the email's author describes certain proposed changes in the revised version and offers his opinions on those proposed changes. The second email is unredacted. In the third email, which is redacted, a Department official (Galkina) asks a question about the criteria for determining whether the Leahy Laws apply to a particular group of prosecutors. In the fourth email, which is redacted, a recipient of the third email (Callahan) forwards the third email to another official and offers his own opinion about the answer to the question raised in the third email. In the fifth email, Galkina provides more factual background with respect to the question she asked in the third email, and asks for an opinion from DRL. In the sixth email, another official (Ellis) again asks DRL for its opinion on the question. In the redacted portion of this email, Ellis provides his own opinion on the correct answer to the question and explains the importance of obtaining a timely answer to the question. Finally, in the seventh email, yet another official in DRL (Zuehlke) provides guidance about how to the question discussed in the earlier emails.

The Department withheld the above-described portions of the email chain under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. Certain of the communications withheld from this chain under Exemption 5 reflect officials' comments on and suggestions to the draft Revised Leahy Vetting Guide circulated at the bottom of the chain. Those communications are protected by the deliberative process privilege because they predate any final version of the Revised Leahy Vetting Guide and reflect the drafters' preliminary thoughts about what information should be contained in such a final version. Additionally, the Department withheld certain communications in this chain and certain subject lines—which relate to the officials' question about whether the Leahy Laws apply to a specific group of prosecutors—pursuant to the deliberative process privilege. Those communications are both predecisional (they predate any decision about whether the Leahy Laws apply to the particular group in question) and deliberative (they reveal varying viewpoints about the answer to the question). Disclosure of all of the above information could reasonably be expected to chill the open and frank discussions in which Department officials engage when working throughout interpretive questions while applying the Leahy Laws and making vetting decisions, including decisions about the groups to which the Leahy Laws apply. If all such preliminary opinions were subject to public scrutiny, including opinions that were ultimately rejected, Department officials would be reluctant to offer such opinions.

The Department also withheld most of the top email in this chain under **Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E), as it reveals guidance for law enforcement investigations used by the Department in enforcing the Leahy Laws. The answer provided in this email was provided in furtherance of the law enforcement purpose of enforcing the Leahy Laws by determining whether a particular group was subject to Leahy vetting. Release of information about how the Department determines whether particular groups are subject to Leahy vetting could assist individuals and units seeking

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| | | | | | | |

to circumvent the procedures used for conducting Leahy vetting.  Disclosure of this information therefore could reasonably be expected to risk circumvention of the law.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| **(24)** | | | | | | |
|---|---|---|---|---|---|---|
| C06808459 | Email chain | 6 | 6/10/2016 | DRL and the Office of the Legal Adviser ("L") | RIP | (b)(5) (DPP) |

**DESCRIPTION:**  This document is an email chain among various Department officials and an attorney-adviser in L.  The chain begins with a question about whether the Leahy Laws requires vetting the staff of a particular group.  Throughout the chain, Department officials provide factual context about the question and offer their opinions and recommendations regarding the answer to the question.  In the top two emails, the Department officials direct their question to an attorney-adviser in L, who then provides legal advice regarding the proper answer to the question.  As the content of those top two emails was withheld in its entirety pursuant to the attorney client privilege—which withholding Plaintiffs have informed the Court that they do not intend to challenge—those withholdings are not discussed below.

The Department withheld the communications in this email chain under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  Those communications are subject to the deliberative process privilege because they are both predecisional (they predate any decision about whether the Leahy Laws apply to the particular group in question) and deliberative (they reveal varying viewpoints about the answer to the question).  Disclosure of this information could reasonably be expected to chill the open and frank discussions in which Department officials engage when working throughout interpretive questions while applying the Leahy Laws and making vetting decisions, including decisions about the groups to which the Leahy Laws apply.  If all such preliminary opinions were subject to public scrutiny, including opinions that were ultimately rejected, Department officials would be reluctant to offer such opinions.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|
| **(25)** | | | | | | |
| C06808549 | 2017 Leahy Vetting Guide | 89 | None | Department of State | RIP | (b)(7)(E) |

**DESCRIPTION:** This document is the 2017 Leahy Vetting Guide.  It contains the following redactions made pursuant to **Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E):

- Page 2 – The redacted information identifies a particular system used during the Leahy vetting process.
- Page 23 – The redacted information identifies a particular system used during the Leahy vetting process in the context of explaining whether and how derogatory information found at Post should be considered for entry into that system.
- Pages 26–28 – The redacted information identifies a particular system used during the Leahy vetting process and explains how information from that system should be used during the Leahy vetting process and how to interpret information in that system during the Leahy vetting process.
- Pages 55–56 – The redacted information identifies a particular system used during the Leahy vetting process.
- Page 58 – The redacted information identifies a particular system used during the Leahy vetting process.
- Pages 84–89 – These redactions cover sensitive, non-publicly-available provisions from the Department's Foreign Affairs Manual ("FAM") related to Leahy vetting.  These provisions include information about a particular system used during the Leahy vetting process; details on workflow within the INVEST database and specifics about data conversion and data entry within that system; common forms of GVHRs; whether, how, and to what extent non-GVHR derogatory information uncovered during Leahy vetting can or should be used in the vetting process; procedures for reporting data from certain systems in the Leahy vetting process; whether and how to utilize certain systems with respect to individuals with possible claims to U.S. citizenship; and how the Leahy vetting process affects other Department programs.

The Department made all of the above redactions pursuant **to Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E), since they reveal guidance for law enforcement investigations and/or information about law enforcement techniques used by the Department in enforcing the Leahy Laws.  The Leahy Vetting Guide in general, and the above-listed parts of it in particular, were created in furtherance of the law enforcement purpose of enforcing the Leahy Laws and contain specific information about the systems and workflow used by Department officials to achieve that law enforcement purpose.  Release of that sensitive, non-public information about how the Department conducts Leahy vetting—including the systems it uses, how information in those systems affects Leahy vetting, and how information uncovered during the Leahy vetting process can be used in other contexts—could assist individuals and units seeking to circumvent the procedures used for conducting Leahy vetting.  Disclosure of this information therefore could reasonably be expected to risk circumvention of the law.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(26)** | | | | | | |
| C06808571 | Email chain | 5 | 12/21/2018 – 2/11/2019 | DRL and the Bureau of European and Eurasian Affairs ("EUR") | RIP | (b)(6); (b)(7)(C) |

**DESCRIPTION**: This document is an email chain about whether the Fulger Brigade, Moldova's SWAT team equivalent, is eligible for training and assistance consistent with the Leahy Laws. The discussion, most of which is unredacted, centers around whether derogatory information applies to the entire Fulger Brigade or only to certain sub-units thereof. As is clear from the unredacted portions of the discussion, the determination is made that the derogatory information applied only to a sub-unit, not the entire Fulger Brigade.

The Department redacted from this email chain the names of certain individuals and their dates of birth pursuant to **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C). The public release of identifying information about the individuals at issue could reasonably be expected to harm the personal privacy of these individuals, since the communications at issue relate to allegations that these individuals have committed GVHRs. Associating these individuals publicly with inquiries into possible GVHRs would constitute an unwarranted invasion of personal privacy, in much the same way as associating an individual with an ongoing criminal investigation would invade personal privacy. On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted and that the Department is appropriately disqualifying tainted individuals and units from U.S. training and assistance, (facts which are not being withheld under Exemptions 6 or 7(C) in this document), there is less public interest, if any, in the names of specific Moldovan law enforcement officers who are being vetted through the Leahy process. Accordingly, the privacy interests outweigh any public interest in disclosure.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(27)** | | | | | | |
| C06808607 | Memorandum | 1 | 2/19/2015 | DRL | RIP | (b)(7)(E) |

**DESCRIPTION:** This document is a memorandum sent from DRL official Robert Zuehlke to all Leahy Vetting Teams about a new Unit Remediation Policy and Process.

One paragraph in this memorandum has been withheld pursuant to **Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E), because the information in that paragraph reveals guidance for law enforcement investigations used by the Department in enforcing the Leahy Laws, and in particular guidance related to the Department's internal policies for remediation and the Department's priorities for remediation. Release of this internal guidance

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|

could assist individuals and units seeking to circumvent the procedures used for conducting Leahy vetting by providing them in-depth information about certain non-public criteria and procedures the Department employs for making remediation determinations.  Disclosure of this information therefore could reasonably be expected to risk circumvention of the law.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| (28) | | | | | | |
|------|-----------|-------|------------|----------------|-----|------------|
| C06808649 | Email chain | 3 | 10/26/2018 | DRL, INL, and L | RIP | (b)(5) (DPP) |

**DESCRIPTION:** This email chain reflects communications among Department officials in DRL, INL, and L discussing the interaction between the Leahy Laws and the EU General Data Protection Regulation ("GDPR").  In the first several emails in this chain, officials in INL and DRL discuss a question about the interaction between the Leahy Laws and GDPR.  Then in the last (top) email, attorney advisers from L are added to the chain and are asked to provide a legal opinion on the question.  The question is not definitively answered within the email chain.  As the content of the top email was withheld in its entirety pursuant to the attorney client privilege—which Plaintiffs do not intend to challenge—that withholding is not discussed below.

The Department withheld the information in this email chain under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The information in this document is subject to the deliberative process privilege because it is both predecisional (it predates any decision about the interpretive question at issue) and deliberative (it reveals varying viewpoints about the answer to the question).  Disclosure of this information could reasonably be expected to chill the open and frank discussions in which Department officials engage when working throughout interpretive questions while applying the Leahy Laws and ensuring compliance with the applicable local laws of all jurisdictions in which the Department operates.  If all such preliminary opinions were subject to public scrutiny, including opinions that were ultimately rejected, Department officials would be reluctant to offer such opinions.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

*100Reporters, et al.  v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(29)** | | | | | | |
| C06808655 | Email chain | 9 | 4/4/2016 – 4/20/2016 | DRL, INL, and Embassy Dushanbe | RIP | (b)(5) (DPP); (b)(6) |

**DESCRIPTION:** This document is an email chain among Department officials regarding certain units and/or sub-units allegedly associated with potential GVHRs in Tajikistan.  The discussion primarily relates to the Tajik Drug Control Agency ("DCA") and the Tajik Criminal Investigation Department ("CID").

In the first (bottom) email, which is unredacted, a DRL official states that he found information about a potential GVHR committed by the DCA and asks officers at Post whether they have any additional information.

Post responds in the second email that it is gathering information.  The Department withheld from that communication the personal cell phone number of an INL officer pursuant to **Exemption 6**, 5 U.S.C. § 552(b)(6).  The public release of the INL officer's cell phone number could reasonably be expected to harm his personal privacy and there is no public interest in that phone number.  Accordingly, the privacy interests outweigh any public interest in disclosure.

In the third email, the DRL official states that he found information about potential GVHRs committed by the CID.  The email is unredacted except for one sentence, which is redacted under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The sentence is subject to the deliberative process privilege because it is both predecisional (it predates any decision about the eligibility of the CID) and deliberative (it reveals the status of the Department's decision-making process regarding the CID).  Disclosure of this information could reasonably be expected to chill the open and frank discussions in which Department officials engage when applying the Leahy Laws.

In the fourth email, a DRL official provides additional information about the DCA incident flagged in the first email.  Most of this email is unredacted, but one paragraph is withheld under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  In this paragraph, the DRL official opines on the process that should be followed for determining whether the report is credible and for determining the scope of any disqualification, including the timeline for that determination and a course of action to follow in the interim.  The information in this email is subject to the deliberative process privilege because it is both predecisional (it predates any decision about whether DCA is eligible for assistance) and deliberative (it provides one official's viewpoint on how to reach a final determination).  Disclosure of this information could reasonably be expected to chill the open and frank discussions in which Department officials engage when apply the Leahy Laws and ensuring that training and assistance are not provided to units that have committed GVHRs.

In the fifth email, sent from DRL to Post, a DRL official provides DRL's preliminary opinions about the credibility of the allegations against the DCA and the CID, DRL's preliminary recommendations about how Post should proceed in light of the opinions, and other information related to how the Leahy Laws applies to the DCA and the CID.  The Department withheld this information under **Exemption 5**, 5 U.S.C. § 552(b)(5),

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|

pursuant to the deliberative process privilege. The information in this email is subject to the deliberative process privilege because it is both predecisional (it predates any final decision about whether the DCA and the CID are eligible for assistance) and deliberative (it offers a preliminary recommendation but explains various options that Post can take in response, without requiring any one option). Disclosure of this information could reasonably be expected to chill the open and frank discussions in which Department officials engage when applying the Leahy Laws and ensuring that training and assistance are not provided to units that have committed GVHRs.

The sixth email is unredacted and identifies a point of contact in INL.

The seventh, eighth, ninth, and tenth emails, most of which have been withheld, continue the discussion about the DCA's eligibility for assistance, including whether the reports of GVHRs are credible, whether any taint would extend to all of DCA or just subunits thereof, whether and how to monitor an investigation by local authorities in Tajikistan, and other topics relevant to an ultimate determination regarding whether the DCA is eligible for assistance consistent with the Leahy Laws. Throughout the discussion, Department officials offer their opinions and recommendations about how to bring the issue to a resolution and what they think that resolution should be. The resolution is not reached in this email chain. The Department withheld this information under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. These emails are subject to the deliberative process privilege because they are both predecisional (they predate any final decision about whether the DCA is eligible for assistance) and deliberative (they offer preliminary recommendations and opinions about various options and courses of action for Post, without requiring any one option). Disclosure of this information could reasonably be expected to chill the open and frank discussions in which Department officials engage when applying the Leahy Laws and ensuring that training and assistance are not provided to units that have committed GVHRs. The Department also withheld from the seventh email the personal cell phone number of an INL officer pursuant to **Exemption 6**, 5 U.S.C. § 552(b)(6). The public release of the INL officer's cell phone number could reasonably be expected to harm his personal privacy and there is no public interest in that phone number. Accordingly, the privacy interests outweigh any public interest in disclosure.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| (30) | | | | | | |
|------|-----------|-------|-------------------|--------------------------|-----|------------------|
| C06808661 | Email chain | 8 | 4/4/2016 – 4/20/2016 | DRL, INL, and Embassy Dushanbe | RIP | (b)(5) (DPP); (b)(6) |

**DESCRIPTION:** This document is an email chain among Department officials regarding alleged certain units and/or sub-units associated with potential GVHRs in Tajikistan. The bottom seven emails are identical to the emails in C06808655 and have been redacted in the same way as that document for the same reasons described above.

*100Reporters, et al.  v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|

The eighth email was sent by an INL official to several individuals at Post.  In that email, most of which is redacted, the INL official lists the various options that Post can take to resolve the issue related to the DCA, and provides several recommendations about which courses of action he believes are best.  The Department withheld this information under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  This email is subject to the deliberative process privilege because it is both predecisional (it predates any final decision about whether the DCA is eligible for assistance) and deliberative (it offers preliminary recommendations and opinions about various options and courses of action for Post, without requiring any one option).  Disclosure of this information could reasonably be expected to chill the open and frank discussions in which Department officials engage when applying the Leahy Laws and ensuring that training and assistance are not provided to units that have committed GVHRs.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| (31–42) | | | | | | |
|---|---|---|---|---|---|---|
| None | Spreadsheets | N/A | 2017 – 2019 | Department of State | RIP | (b)(5) (DPP); (b)(6); (b)(7)(C) |

**DESCRIPTION:**  These 12 documents are spreadsheets exported from the Department's INVEST database for the following countries:  Afghanistan, Mexico, Colombia, Philippines, Cambodia, and Bangladesh.  In each of the spreadsheets, personally identifying information in the columns titled "INDV ID/UNIT ID," "NAME," and "JOB TITLE/RANK" is redacted.  Deliberative information is redacted in the column titled "NOTES."  There are no redactions in the other 20 columns of each spreadsheet.

The information in the columns titled "INDV ID / UNIT ID," "NAME," and "JOB TITLE/RANK" was withheld pursuant to **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C).  The individuals listed in these spreadsheets are individuals whose names were submitted as part of the Leahy vetting process—*i.e.*, individuals in law enforcement roles in other countries who were considered for training or assistance from the United States.  Each of the redacted columns contains information from which the identity of the individual is ascertainable.  The public release of the names of those individuals, or information from which those names could be ascertained, could reasonably be expected to harm the personal privacy of these individuals.  These non-U.S. individuals have a privacy interest in their names, their job titles, and other identifying information.  On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted and in the fact that the government is providing assistance in particular countries (facts which are not being withheld under Exemptions 6 or 7(C) in this document), there is less public interest, if any, in the names of specific law enforcement officers in the above-listed countries who are being vetted through the Leahy process.  Accordingly, the privacy interests outweigh any public interest in disclosure.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|

The information in the column titled "NOTES" was withheld under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege. The information in this column consists of predecisional, deliberative notes about the status of Leahy vetting for the individual in the corresponding row. The information in this column, if any, assists the Department in tracking and reaching a final decision about that individual's eligibility for U.S. training and assistance. The information is both predecisional (it is generally entered before any final decision about eligibility) and deliberative (it reveals information pertinent to the Department's decision-making process with respect to Leahy vetting). Disclosure could reasonably be expected to make Department officials less likely to make interim notes while conducting Leahy vetting, which would foreseeably harm the effectiveness and efficiency of the Leahy vetting process.

The Department conducted a line-by-line review of the documents and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| **(43)** | | | | | | |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|
| None | Spreadsheet | N/A | 2017 – 2019 | The State Department | RIP | (b)(5) (DPP); (b)(6); (b)(7)(C); (b)(7)(F) |

**DESCRIPTION:** This document is a spreadsheet exported from the Department's INVEST database for the country of Egypt. In the spreadsheet, personally identifying information in the columns titled "INDV ID/UNIT ID," "NAME," and "JOB TITLE/RANK" is redacted. Deliberative information is redacted in the column titled "NOTES." In addition, two cells in the column "UNIT ALIAS" were redacted. There are no redactions in the other 19 columns of the spreadsheet.

The information in the columns titled "INDV ID/UNIT ID," "NAME," and "JOB TITLE/RANK" was withheld pursuant to **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C). The individuals listed in these spreadsheets are individuals whose names were submitted as part of the Leahy vetting process—*i.e.*, individuals in law enforcement roles in other countries who were considered for training or assistance from the United States. Each of the redacted columns contains information from which the identity of the individual is ascertainable. The public release of the names of those individuals, or information from which those names could be ascertained, could reasonably be expected to harm the personal privacy of these individuals. These non-U.S. individuals have a privacy interest in their names, their job titles, and other identifying information. On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted and in the fact that the government is providing assistance in particular countries (facts which are not being withheld under Exemptions 6 or 7(C) in this document), there is less public interest, if any, in the names of specific law enforcement officers in the above-listed countries who are being vetted through the Leahy process. Accordingly, the privacy interests outweigh any public interest in disclosure.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|

The information in the column titled "NOTES" was withheld under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The information in this column consists of predecisional, deliberative notes about the status of Leahy vetting for the individual in the corresponding row.  The information in this column, if any, assists the Department in tracking and reaching a final decision about that individual's eligibility for U.S. training and assistance.  The information is both predecisional (it is generally entered before any final decision about eligibility) and deliberative (it reveals information pertinent to the Department's decision-making process with respect to Leahy vetting).  Disclosure could reasonably be expected to make Department officials less likely to make interim notes while conducting Leahy vetting, which would foreseeably harm the effectiveness and efficiency of the Leahy vetting process.

Two cells in the column titled "UNIT ALIAS" were also withheld pursuant to **Exemption 7(F)**, 5 U.S.C. § 552(b)(7(F).  Public release of those unit aliases could reasonably be expected to endanger the life or physical safety of multiple individuals, although the Department is unable to provide any additional detail about the specific threat in an unclassified setting.  To be clear, the spreadsheet itself does not contain any classified information, but it is not possible to explain the reason why public release of these unit names could reasonably be expected to endanger the life or physical safety of individuals without revealing classified information.

The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|
| **(44)** | | | | | | |
| None | Spreadsheet | N/A | 2017 – 2019 | Department of State | RIP | (b)(5) (DPP); (b)(6); (b)(7)(C); (b)(7)(F) |

**DESCRIPTION:**  This document is a spreadsheet exported from the Department's INVEST database for the country of Iraq.  In the spreadsheet, personally identifying information in the columns titled "FOLDER TYPE," "INDV ID/UNIT ID," "NAME," and "JOB TITLE/RANK" is redacted.  In some cases, information from which an individual's identity could be ascertained has also been redacted in the columns titled "UNIT NAME," "UNIT ALIAS," "UNIT LOCATION," "UNIT DESC / ENGLISH," and "ASST NAME."  Deliberative information is redacted in the column titled "NOTES."

The information in the columns titled "INDV ID/UNIT ID," "NAME," and "JOB TITLE/RANK," as well as certain of the information in the columns titled "FOLDER TYPE," "UNIT NAME," "UNIT ALIAS," "UNIT LOCATION," "UNIT DESC/ENGLISH," and "ASST NAME," was withheld pursuant to **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C).  The individuals listed in these spreadsheets are individuals whose names were submitted as part of the Leahy vetting process—*i.e.*, individuals in law enforcement roles in other countries who were considered for training or assistance from the United States.  Each of the redacted columns contains information from which the identity of the

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|

individual is ascertainable.  The public release of the names of those individuals, or information from which those names could be ascertained, could reasonably be expected to harm the personal privacy of these individuals.  These non-U.S. individuals have a privacy interest in their names, their job titles, and other identifying information.  On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted and in the fact that the government is providing assistance in particular countries (facts which are not being withheld under Exemptions 6 or 7(C) in this document), there is less public interest, if any, in the names of specific law enforcement officers in the above-listed countries who are being vetted through the Leahy process.  Accordingly, the privacy interests outweigh any public interest in disclosure.

The information in the column titled "NOTES" was withheld under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The information in this column consists of predecisional, deliberative notes about the status of Leahy vetting for the individual in the corresponding row.  The information in this column, if any, assists the Department in tracking and reaching a final decision about that individual's eligibility for U.S. training and assistance.  The information is both predecisional (it is generally entered before any final decision about eligibility) and deliberative (it reveals information pertinent to the Department's decision-making process with respect to Leahy vetting).  Disclosure could reasonably be expected to make Department officials less likely to make interim notes while conducting Leahy vetting, which would foreseeably harm the effectiveness and efficiency of the Leahy vetting process.

The Department also withheld certain information in the columns titled "FOLDER TYPE," "UNIT NAME," "UNIT ALIAS," "UNIT LOCATION," "UNIT DESC/ENGLISH," and "ASST NAME" pursuant to **Exemption 7(F)**, 5 U.S.C. § 552(b)(7)(F).  In all of the rows where information in any of those six columns has been redacted pursuant to Exemption 7(F), the Department has also withheld the corresponding information in the columns titled "INDV ID/UNIT ID," "NAME," and "JOB TITLE/RANK" pursuant to Exemption 7(F).[2]  If any of these redactions were lifted, the identities of the individuals at issue would be ascertainable based on the specificity of the information under the redactions.  For example, the information might identify the individual in one row as the commander of a particular unit, which would make that person's identity ascertainable.  For all individuals for whom these additional redactions were made, official acknowledgment that these individuals sought training from the USA, were approved for training from the USA, and/or lead units that have been considered or approved for training from the USA, puts those individuals at increased risk of being targeted by ISIS or Iran-backed militias, and therefore could reasonably be expected to endanger their life and/or physical safety.

---

[2]      Although the version of this spreadsheet produced to Plaintiffs on April 9, 2020, did not indicate that information in the columns titled "INDV ID / UNIT ID," "NAME" or "JOB TITLE/RANK" was being withheld pursuant to Exemption 7(F) to the extent other information in the same row had been redacted pursuant to Exemption 7(F), the Department nonetheless represents that it intended to and has withheld that information pursuant to Exemption 7(F) in addition to Exemptions 6 and 7(C).

*100Reporters, et al.  v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| The Department conducted a line-by-line review of the document and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released. | | | | | | |
| **(45)** | | | | | | |
| C06808467 | Draft Letter | 2 | 6/19/2016 | INL and United Nations Office on Drugs and Crime ("UNODC") | DIF | (b)(5) (DPP); (b)(6); (b)(7)(C) |

**DESCRIPTION:**  This document—which was attached to C06808463, a document the Department released in full—is a draft letter addressed from an INL official to a UNODC official.  The draft letter provides an update on Leahy vetting requirements for specific participants of a certain UNODC program.  The memorandum is in draft form and contains edits in redline and comment bubbles.

The Department withheld this document under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to deliberative process privilege.  This information is subject to deliberative process privilege because it is both predecisional (it predates any final letter sent to UNODC) and deliberative (it reveals the drafter's preliminary, uncleared thoughts about what information should be included in the letter).  Disclosure of this draft document could reasonably be expected to chill the open and frank exchange of ideas and recommendations that occur when Department officials are drafting documents to share with the United Nations.

The Department also withheld the names of certain UNODC program participants and law enforcement officers under **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C).  The public release of the names of those individuals within the context of this letter could reasonably be expected to harm their personal privacy by associating them publicly with inquiries into possible GVHRs, in much the same way as associating an individual with an ongoing criminal investigation would invade personal privacy, even if—perhaps especially if—the individuals were ultimately cleared of any personal wrongdoing.  On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted and in the fact that the government is providing assistance in particular countries (facts which are not being withheld under Exemptions 6 or 7(C) in this document), there is less public interest, if any, in the names of specific law enforcement officers who are being vetted.  Accordingly, the privacy interests outweigh any public interest in disclosure.

The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(46)** | | | | | | |
| C06882996 | Attachment | 4 | Undated | Embassy La Paz | RIP | (b)(6); (b)(7)(C) |

**DESCRIPTION:** This document—which was attached to C06808181—is a summary of certain shooting deaths of Bolivian miners being examined in connection with the Leahy vetting of certain Bolivian law enforcement officials. The majority of this summary has been released, but certain limited information has been withheld as described below.

The Department withheld two passages—in the third bullet point under the header "On August 24" and in the first full paragraph on page two—solely pursuant to **Exemption 6**, 5 U.S.C. § 552(b)(6). Those passages provide details about autopsies performed of certain of the miners and the circumstances surrounding their deaths. Release of that information, which does not appear to have been separately released to the public, would constitute an unwarranted invasion of the personal privacy interests held by the deceased individuals' surviving family members by providing sensitive and personal details about the circumstances surrounding those individuals' deaths.

The remainder of the Department's withholdings protect the names of certain Bolivian law enforcement officers pursuant to **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C). This summary relates to whether credible evidence exists that these individuals have committed GVHRs or whether credible evidence exists that units with which they are affiliated have committed GVHRs. Release of the law enforcement officers' names would therefore associate them publicly with inquiries into possible GVHRs would constitute an unwarranted invasion of personal privacy, in much the same way as associating an individual with an ongoing criminal investigation would invade personal privacy, even if—perhaps especially if—the individuals were ultimately cleared of any personal wrongdoing. On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted and in the fact that the government is providing assistance in particular countries (facts which are not being withheld under Exemptions 6 or 7(C) in this document), there is less public interest, if any, in the names of specific Bolivian law enforcement officers who are being vetted through the Leahy process. Accordingly, the privacy interests outweigh any public interest in disclosure.

The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

*100Reporters, et al.  v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(47)** | | | | | | |
| C06882997 | Diplomatic Note | 3 | 7/17/2019 | Embassy La Paz and the Ministry of Foreign Affairs of the Plurinational State of Bolivia | RIP | (b)(6); (b)(7)(C) |

**DESCRIPTION:** This document—which was attached to C06808181—is a Diplomatic Note addressed from Embassy La Paz to the Bolivian Ministry of Foreign Affairs regarding the results of a Leahy vetting review made in connection with the August 2016 shooting deaths of certain Bolivian miners. The majority of the Diplomatic Note has been released, with the exception of one passage.

Specifically, the Department withheld the names of certain Bolivian law enforcement officers pursuant to **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C). This Diplomatic Note relates to the U.S. Government's determination as to whether credible evidence exists that these individuals had committed GVHRs or whether credible evidence exists that units with which they are affiliated have committed GVHRs. Release of the law enforcement officers' names would therefore associate them publicly with inquiries into possible GVHRs would constitute an unwarranted invasion of personal privacy, in much the same way as associating an individual with an ongoing criminal investigation would invade personal privacy, even if—perhaps especially if—the individuals were ultimately cleared of any personal wrongdoing. On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted and in the fact that the government is providing assistance in particular countries (facts which are not being withheld under Exemptions 6 or 7(C) in this document), there is less public interest, if any, in the names of specific Bolivian law enforcement officers who were vetted through the Leahy process. Accordingly, the privacy interests outweigh any public interest in disclosure.

The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| **(48–49)** | | | | | | |
| C06882998 C06882999 | Draft Spanish-Language Translation of a Diplomatic Note | 3 1 | 7/17/2019 | Embassy La Paz and the Ministry of Foreign Affairs of the Plurinational State of Bolivia | DIF | (b)(5) (DPP); (b)(6); (b)(7)(C) |

**DESCRIPTION:** These documents—which were attached to C06808181—are internal, draft Spanish-language translations of the Diplomatic Note released as C06882997 and addressed from Embassy La Paz to the Bolivian Ministry of Foreign Affairs regarding the results of a Leahy

*100Reporters, et al. v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|

vetting review made in connection with the August 2016 shooting deaths of certain Bolivian miners.  These draft translations were prepared unofficially for internal Department purposes and do not reflect an official Spanish-language translation of the Diplomatic Note.

The Department withheld these documents under **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to deliberative process privilege.  This information is subject to deliberative process privilege because it is both predecisional (it predates any final translation of the Diplomatic Note) and deliberative (it constitutes an unofficial draft translation of the Diplomatic Note prepared solely for internal Department purposes and not intended for public release).  Disclosure of this draft document could reasonably be expected to chill the open and frank exchange of ideas and recommendations that occur when Department officials are drafting internal, unofficial translations.

The Department also withheld the names of certain Bolivian law enforcement officers pursuant to **Exemptions 6 and 7(C)**, 5 U.S.C. § 552(b)(6) and (b)(7)(C).  The Diplomatic Note from which this draft translation was prepared relates to the U.S. Government's determination as to whether credible evidence exists that these individuals had committed GVHRs or whether credible evidence exists that units with which they are affiliated have committed GVHRs.  Release of the law enforcement officers' names would therefore associate them publicly with inquiries into possible GVHRs would constitute an unwarranted invasion of personal privacy, in much the same way as associating an individual with an ongoing criminal investigation would invade personal privacy, even if—perhaps especially if—the individuals were ultimately cleared of any personal wrongdoing.  On the other side of the balance, while there is public interest in the fact that Leahy vetting is being conducted and in the fact that the government is providing assistance in particular countries (facts which are not being withheld under Exemptions 6 or 7(C) in this document), there is less public interest, if any, in the names of specific Bolivian law enforcement officers who were vetted through the Leahy process.  Accordingly, the privacy interests outweigh any public interest in disclosure.

The Department conducted a line-by-line review of the documents and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.

| **(50)** | | | | | | |
|----------|-----------|-------|-------------------|--------------------------|---------------|------------|
| C06808186 | ALDAC | 8 | 1/3/2019 | The Secretary of State | RIP | (b)(5) (DPP); (b)(7)(E) |

**DESCRIPTION:** This ALDAC, addressed from the Secretary of State to all diplomatic and consular posts, contains the subject line "Guidance for Public Listing of Units Denied Assistance Pursuant to the State Leahy Law."  It announces the Department's intention to make public the names of units denied assistance during calendar year 2017, as required by the Leahy Laws, and provides background on the Department's obligations pursuant to the Leahy Laws, details about the Leahy vetting and remediation processes and the benefits of those programs, talking points for conveying the Department's intended announcement to relevant host governments, press and media guidance, and the proposed public release.

*100Reporters, et al.  v. U.S. Dep't of State*
No. 19-cv-01753
*Vaughn* Index
Exhibit A

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|

The withheld portions of this document are protected from release by **Exemption 5**, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  Specifically, the Department withheld from release descriptions of the Department's internal, non-public procedure for determining which units rejected pursuant to the Leahy Laws would be named in a publicly available list, as well as talking points drafted for use by Department officials when explaining to foreign government officials and the media the impending public listing of units denied assistance pursuant to the Leahy Laws.  The withheld descriptions of the Department's internal procedures reflect non-public criteria to be employed by Department officials when determining whether the names of units rejected pursuant to the Leahy Laws should be released to the public.  Release of that information would shed light on the Department's internal decisionmaking processes with regard to future determinations about the names of which units to release, and that information has therefore been properly withheld pursuant to the deliberative process privilege.  The withheld talking points are predecisional with respect to any statement actually given to a foreign government or the press by a Department official; the official statement would constitute the Department's final policy on how to communicate with the foreign government or the media about the subject of the guidance.  Additionally, the withheld talking points are deliberative because they reveal preliminary suggestions about what Department officials should communicate to foreign governments and the press, as well as the rationale for conveying that information.  Disclosure of this document could reasonably be expected to chill the open and frank discussions in which Department officials engage when they prepare to communicate policy decisions to foreign governments and the public, as well as the willingness of officials to make suggestions to regarding press guidance and talking points.

The Department also withheld the second sentence in paragraph 4 of this cable pursuant to **Exemption 7(E)**, 5 U.S.C. § 552(b)(7)(E), because the information in that sentence reveals sensitive, non-public law enforcement procedures used by the Department in implementing the Leahy Laws' reporting requirements and determining which units rejected pursuant to the Leahy Laws would be named in a publicly-available list.

The Department conducted a line-by-line review of the document and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released.