IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 100REPORTERS<br><br>and<br><br>DOUGLAS GILLISON<br><br>    Plaintiffs,<br><br>  v.<br><br>DEPARTMENT OF STATE,<br><br>    Defendant. | Case No. 1:19-cv-1753 |

**PLAINTIFFS' COMBINED STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE AND
RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

  Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(h), Plaintiffs hereby submit this combined statement of material facts as to which there is no genuine issue and response to the statement of material facts submitted by Defendant, ECF. No. 25-2 ("Defendant's SMF").[1]

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
STATEMENT OF MATERIAL FACTS**

  1.  Undisputed.

  2.  Disputed in part.  Undisputed that Plaintiffs agreed to narrow the date range of request F-2017-17811.  Disputed that Plaintiffs narrowed the date range of the request to January 1, 2017.  Def.'s SMF ¶ 2.  Plaintiffs narrowed the date range of request F-2017-17811 "from

---

[1] The numbered paragraphs in Plaintiffs' response correspond to those in the Defendant's SMF.

January 1, 2017 to present," i.e., the date at which Defendant began its search. Second Stein Decl. ¶ 8, Ex. C.

      3.      Undisputed.

      4.      Undisputed.

      5.      Disputed in part but immaterial. Undisputed that Defendant responded to Plaintiffs' administrative appeal on August 23, 2018. Disputed to the extent that Defendant's SMF ¶ 5 purports to claim that failure to adhere to FOIA's statutory deadlines does not constitute a constructive denial under FOIA, which should be disregarded as argument and/or a legal conclusion.[2] Immaterial as Defendant's response to Plaintiffs' administrative appeal is not at issue in this case.

      6.      Undisputed.

      7.      Undisputed.

      8.      Disputed in part but immaterial. Undisputed that on January 24, 2020, Defendant's counsel stated to Plaintiffs' counsel via email that "the Department of State has determined that the spreadsheets corresponding to Iraq and Egypt may contain information that should have been redacted under FOIA Exemption 7F[.]" Second Stein Decl., Ex. D. Disputed that the information contained in the responsive spreadsheets is "exempt from disclosure under FOIA Exemption 7(F)," Def.'s SMF ¶ 8, which should be disregarded as argument and/or a legal conclusion. *See supra* n.

---

[2] *See* Local Rule 7(h)(1) (stating that a motion for summary judgment "shall be accompanied by a statement of material *facts* as to which the moving party contends there is no genuine issue") (emphasis added); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996) (rejecting assertion that "relevant facts" section of opposition memorandum satisfied then-applicable Rule 108(h) governing statements of undisputed material facts for, among other things, "repeatedly blending factual assertions with legal argument"); *Robertson v. Am. Airlines, Inc.*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002) (rejecting statement of material facts as complying with this Court's local rules because it incorporated a memo that "liberally mixe[d] facts with argument").

2. Immaterial as Defendant's communication has no bearing on the legal issues presented in this case.

9. Undisputed.

10. Disputed in part. Undisputed that on February 19, 2020, Defendant, through counsel, sent Plaintiffs' counsel a further redacted Excel spreadsheet containing data related to Egypt. Disputed that the spreadsheet is "corrected," which is vague and undefined, and in any case should be disregarded as argument/and or a legal conclusion. *See supra* n. 2.

11. Disputed in part. Undisputed that on April 9, 2020, Defendant, through counsel, sent Plaintiffs' counsel a further redacted Excel spreadsheet containing data related to Iraq. Disputed that the spreadsheet is "corrected," which is vague and undefined, and in any case should be disregarded as argument/and or a legal conclusion. *See supra* n. 2.

12. Disputed in part. Undisputed that Plaintiffs, through counsel, submitted a FOIA request to Defendant on December 15, 2017, which, in part, sought "Reports on Government Police Training and Equipping Programs" submitted to Congress. Disputed that Plaintiffs' request sought "[c]opies of guides, manuals, instructions or directions pertaining to the vetting of foreign military and security personnel and/or units." Def.'s SMF ¶ 12. Plaintiffs' request sought "[c]opies of *all* guides, manuals, instructions or directions pertaining to the vetting of foreign military and security personnel and/or units under statutes commonly known as the Leahy Laws . . . ." Second Stein Decl., Ex. E (emphasis added).

13. Undisputed.

14. Undisputed.

15. Disputed in part but immaterial. Undisputed that Defendant responded to Plaintiffs' administrative appeal on August 23, 2018. Disputed to the extent that Defendant's SMF

3

¶ 15 purports to claim that failure to adhere to FOIA's statutory deadlines does not constitute a constructive denial under FOIA, which should be disregarded as argument and/or a legal conclusion. *See supra* n. 2. Immaterial as Defendant's response to Plaintiffs' administrative appeal is not at issue in this case.

16. Undisputed.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Undisputed.

21. Undisputed.

22. Disputed in part. Undisputed that on July 14, 2020, Defendant released to Plaintiffs one record in full and five records in part. Disputed to the extent that Defendant's SMF ¶ 22 purports to contend that only those records produced in whole and in part "*could* be released to Plaintiffs," Def.'s SMF ¶ 22 (emphasis added), and that the remaining portions of records are exempt, which should be disregarded as argument and/or a legal conclusion. *See supra* n. 2.

23. Undisputed.

24. Disputed in part. Undisputed that following the pre-motion conference, Defendant's counsel informed Plaintiffs' counsel that it would review its withholdings for which it asserted FOIA Exemption 5. Disputed that the agency reviewed its withholdings to "determine if additional non-exempt information could be segregated for release," Def.'s SMF ¶ 24, which should be disregarded as argument and/or a legal conclusion. *See supra* n. 2.

25. Disputed in part. Undisputed that by letter dated November 16, 2020, Defendant released four records in part as well as information formerly withheld from five documents

4

previously released in part. Disputed to the extent that Defendant's SMF ¶ 25 purports to contend that its prior or remaining withholdings are lawful, which should be disregarded as argument and/or a legal conclusion. *See supra* n. 2.

26. Disputed in part. Undisputed that by letter dated December 8, 2020, Defendant provided a supplemental production consisting of one record released in full and informed Plaintiffs it was withholding a second record in full. Disputed to the extent that Defendant's SMF ¶ 26 purports to contend that its withholding of the second record is lawful, which should be disregarded as argument and/or a legal conclusion. *See supra* n. 2.

27. Disputed in part. Undisputed that by letter dated December 17, 2020, Defendant provided a supplemental production consisting of two records released in part and informed Plaintiffs it was withholding three records in full. Disputed to the extent that Defendant's SMF ¶ 27 purports to contend that its withholdings of the three referenced records is lawful, which should be disregarded as argument and/or a legal conclusion. *See supra* n. 2.

28. Disputed in part. Undisputed that Defendant informed Plaintiffs' counsel that it was releasing to Plaintiffs in part one document previously withheld in full. Disputed to the extent that Defendant's SMF ¶ 28 purports to contend that its partial withholdings of the referenced record is lawful, which should be disregarded as argument and/or a legal conclusion. *See supra* n. 2. Further disputed that this communication took place on December 31, 2020, *see* Singh Decl. ¶ 6 (stating that Plaintiffs received the most recent production made to date in this case on January 11, 2021).

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

29. Plaintiff Douglas Gillison is a reporter who has worked in journalism for twenty years. Gillison Decl. ¶¶ 1–2.

30. Plaintiff 100 Reporters an investigative non-profit newsroom dedicated to public accountability reporting. Gillison Decl. ¶ 9.

31. On December 15, 2017, through counsel, Plaintiffs submitted two FOIA requests to the State Department. Vogus Decl. ¶ 3.

32. Plaintiffs' first request (the "First Request") sought:

- Copies of all guides, manuals, instructions or directions pertaining to the vetting of foreign military and security personnel and/or units under statutes commonly known as the Leahy Laws provided by the Bureau of Democracy, Human Rights and Labor at the State Department to State Department staff and/or to U.S. embassies, consulates, missions, or other foreign posts from January 1, 2014 to the date on which processing of this request commences; and

- The "Report on Government Police Training and Equipping Programs" submitted to Congress pursuant to §1235(c) of the Ike Skelton National Defense Authorization Act for Fiscal Year 2011 and copies of all "Reports on Government Police Training and Equipping Programs" submitted to Congress in subsequent fiscal years.

Vogus Decl. Ex. 1.

33. Plaintiffs' second request (the "Second Request") sought:

- All records consisting of, containing, or reflecting the names and any other identifying information of foreign individuals and/or units vetted by State Department personnel for U.S. training or assistance;

- All entries in the State Department's International Vetting and Security Tracking System, also known as INVEST, in any other similarly dedicated throughput/workflow management and knowledge management systems used to process, document, track, or otherwise

6

record the vetting foreign individuals and/or units for U.S. training or assistance, and all records these systems may contain;

• Message traffic, cables and emails, or record-keeping copies, in which State Department personnel or other U.S. government personnel nominate specific foreign individuals and/or units for U.S. training or other assistance;

• Message traffic, cables and emails, or record-keeping copies, in which State Department personnel consider or discuss specific foreign individuals and/or units who have been nominated for U.S. training or other assistance;

• Message traffic, cables and emails, or record-keeping copies, in which States Department personnel communicate a final determination of a foreign individual's and/or unit's eligibility for U.S. training or other assistance under the Leahy Laws;

• All documents in which the process of vetting specific units or individuals for their eligibility to receive United States training or assistance under the Leahy Laws is discussed; and

• Decision memoranda in which the process of vetting specific units or individuals for their eligibility to receive United States training or assistance under the Leahy Laws is discussed and/or decisions to allow or deny assistance are discussed or recorded.

Vogus Decl. Ex. 2.

34. On March 19, 2018, Plaintiffs, through counsel, narrowed the scope of the Second Request to records from the International Vetting and Security Tracking ("INVEST") system from January 1, 2017 onward for the following countries: Iraq, Afghanistan, Egypt, Mexico, Colombia, Philippines, Cambodia, and Bangladesh. Vogus Decl. ¶ 4.

35. Between October 15, 2019, and November 16, 2020, Defendant made seven productions of PDF records to Plaintiffs. Singh Decl. ¶ 3.

36. In the seven productions of PDF records made between October 15, 2019, and November 16, 2020, Defendant asserted FOIA Exemptions 5, 6, 7(C), and 7(E) to withhold records and portions thereof.  Singh Decl. ¶ 3.

37. On January 17, 2020, Defendant produced fourteen Excel spreadsheets to Plaintiffs which reflect the contents of Defendant's INVEST system for the countries of Iraq, Afghanistan, Egypt, Colombia, Philippines, Cambodia, Mexico, and Bangladesh.  Singh Decl. ¶ 4.

38. Defendant asserted FOIA Exemptions 5, 6, and 7(C) to withhold portions of the fourteen Excel spreadsheets.  Singh Decl. ¶ 4.

39. On February 19, 2020 and April 9, 2020, Defendant's counsel provided to Plaintiffs' counsel additional versions of the Excel spreadsheets for the countries of Egypt and Iraq, respectively.  Singh Decl. ¶ 5.

40. The re-released Egypt spreadsheet produced on February 19, 2020 contained redactions of information previously released to Plaintiffs, for which Defendant asserted Exemption 7(F).  Singh Decl. ¶ 5.

41. The re-released Iraq spreadsheet produced on April 9, 2020 contained further redactions of information previously released to Plaintiffs, for which Defendant asserted Exemptions 6, 7(C), and 7(F).  Singh Decl. ¶ 5.

42. On November 19, 2020, Plaintiffs' counsel emailed Defendant's counsel stating that several records produced to Plaintiffs were missing responsive attachments.  Singh Decl. ¶ 6.

43. On December 8, 2020, and December 17, 2020, Defendant produced to Plaintiffs the missing attachments.  Singh Decl. ¶ 6.

44. On December 31, 2020, Defendant attempted to transmit another production to Plaintiffs, which Plaintiffs received on January 11, 2021.  Singh Decl. ¶ 6.

45. The Leahy Laws, one provision of which can be found at 22 U.S.C. § 2378d,[3] state that "[n]o assistance shall be furnished . . . to any unit of the security forces of a foreign country if the Secretary of State has credible information that such unit has committed a gross violation of human rights." *See generally* Singh Decl. Exs. A–B.

46. The State Department has promulgated policies delineating how to vet prospective recipients of United States training or assistance to ensure that those prospective recipients have not committed gross violations of human rights ("Leahy Vetting"). Singh Decl. Exs. A–C.

47. Sources of information that State Department personnel review to determine whether prospective recipients of U.S. training or assistance have committed gross violations of human rights include those that are publicly available, i.e., found on the Internet. Singh Decl. Exs. A, H, L.

48. Names of at least some individuals belonging to units vetted by the State Department during the course of Leahy Vetting can be found online. Singh Decl. Exs. H, M.

49. Leahy Vetting is conducted as a standard protocol in all cases where an individual or unit is nominated for U.S. training or assistance. Singh Decl. Exs. B, G.

50. The State Department vets hundreds of thousands of prospective recipients of U.S. training or assistance each year as part of its Leahy Vetting process. Singh Decl. Ex. D.

51. In 2017, nine employees and contractors of the State Department conducted Leahy Vetting. Singh Decl. Ex. D.

52. The State Department publishes the names of units deemed ineligible for U.S. training or assistance under the Leahy Laws. Singh Decl. Ex. I.

---

[3] Plaintiffs request the Court take judicial notice of this statute per Federal Rule of Evidence 201.

53. The State Department's Bureau of Democracy, Human Rights, and Labor "uses a wide range of tools to advance freedom and democracy, including bilateral diplomacy, multilateral engagement, foreign assistance, reporting and public outreach, and economic sanctions." Singh Decl. Ex. E.

54. In searching for the "Report on Government Police Training and Equipping Programs' submitted to Congress pursuant to §1235(c) of the Ike Skelton National Defense Authorization Act for Fiscal Year 2011" and copies of all "Reports on Government Police Training and Equipping Programs" submitted to Congress in subsequent fiscal years, sought by Plaintiffs' First Request, Vogus Decl. Ex. 1, Defendant searched the records of the Department of State's Bureau of Democracy, Human Rights, and Labor, the Bureau of Counterterrorism, and the Bureau of International Narcotics and Law Enforcement Affairs. Second Stein Decl. ¶ 40

55. The State Department's Bureau of Legislative Affairs, in part, is "responsible for the Department's liaison with Members and Committees of the U.S. House of Representatives. It facilitates . . . outreach to oversight Committees, and communication between the House of Representatives and the Department." Singh Decl. Ex. J.

56. In fiscal year 2016, the State Department transmitted to Congress a report titled "Report on Government Police Training and Equipping Programs." Singh Decl. Ex. K.

Dated: February 12, 2021

/s/ Katie Townsend
Katie Townsend
DC Bar No. 1026155
Adam A. Marshall
DC Bar No. 1029423
Gunita Singh
DC Bar No. 1601923
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020

Washington, DC 20005  
Phone: 202.795.9300  
Facsimile: 202.795.9310  
Email: ktownsend@rcfp.org  
Email: amarshall@rcfp.org  
Email: gsingh@rcfp.org  

*Counsel for Plaintiffs*