UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| 100REPORTERS, *et al.*,<br><br>       Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>       Defendant. | Civil Action No. 19-1753 (RDM) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF
MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Rule 56 of the Federal Rules of Civil Procedures and Local Civil Rule 7(h), Defendant submits the following response to Plaintiff's statement of material facts as to which there is no genuine issue:

29. Defendant lacks sufficient knowledge to confirm or deny this paragraph.

30. Undisputed.

31. Undisputed.

32. Undisputed.

33. Undisputed.

34. Undisputed.

35. Undisputed.

36. Undisputed.

37. Undisputed.

38. Disputed in part. On January 17, 2020, Defendant asserted FOIA Exemptions 5, 6, and 7(C) to withhold portions of the fourteen Excel spreadsheets. On February 19, 2020, and on

1

April 9, 2020, Defendant, through DOJ counsel, provided two corrected spreadsheets asserting FOIA Exemptions 5, 6, 7(C), and 7(F). ECF No. 25-3. Stein 2nd Decl. ¶ 17.

39.     Disputed in part.  On February 19, 2020, and April 9, 2020, Defendant provided Plaintiffs with two corrected versions of the spreadsheets corresponding to Leahy vetting in Egypt and in Iraq.  ECF No. 25-3. Stein 2nd Decl. ¶¶ 19-20.

40.     Disputed in part.  The Egypt spreadsheet provided to Plaintiffs on February 19, 2020, corrected and superseded a previous inadvertent release.  ECF No. 25-3. Stein 2nd Decl. ¶ 19.

41.     Disputed in part.  The Iraq spreadsheet provided to Plaintiffs on April 9, 2020, corrected and superseded a previous inadvertent release.  ECF No. 25-3. Stein 2nd Decl. ¶ 20.

42.     Undisputed.

43.     Undisputed.

44.     Undisputed.

45.     Undisputed.

46.     Disputed in part.  In order to protect the integrity and efficacy of the Leahy vetting process and to avoid creating any opportunities to circumvent the U.S. Government's implementation of the Leahy Laws, Defendant does not make publicly available certain detailed internal guidance on Leahy vetting and the procedures used by the Department officials to make assessments in connection with the Leahy Laws. ECF No. 25-4, Blaha Decl. ¶ 7.

47.     Disputed in part.  In order to protect the integrity and efficacy of the Leahy vetting process and to avoid creating any opportunities to circumvent the U.S. Government's implementation of the Leahy Laws, Defendant does not make publicly available certain detailed

internal guidance on Leahy vetting and the procedures used by the Department officials to make assessments in connection with the Leahy Laws. ECF No. 25-4, Blaha Decl. ¶ 7.

48. Undisputed.

49. Undisputed.

50. Undisputed.

51. Disputed. The Leahy vetting process includes vetting in the unit's home country, where the U.S. embassy conducts consular, political, and other security and human rights checks. Most often, an additional review is then conducted by Department analysts in Washington, D.C. Regional bureaus, the Bureau of Political-Military Affairs, and other stakeholders, where appropriate, jointly develop Leahy policy and manage the vetting process with DRL. Derogatory information found during vetting is assessed by the regional bureau that covers the relevant geographic region in coordination with DRL, the relevant U.S. Embassy country team and country desk, the Office of the Legal Adviser, and others, as appropriate. ECF No. 25-4, Blaha Decl. ¶¶ 6, 9–10.

52. Disputed in part. The State Department publishes the names of units proposed for U.S. training or assistance and rejected through the Leahy vetting process as conducted pursuant to the State Leahy, 22 U.S.C. § 2378d, except in cases when publication would compromise sources and methods or endanger national security.

53. Undisputed.

54. Undisputed.

55. Undisputed.

56. Disputed. Section 1235(c) of the Ike Skelton National Defense Authorization Act for Fiscal Year 2011 (Public Law 111-383)—the statutory provision cited by Plaintiffs in their

request—stipulates that "the President shall submit to the appropriate committees of Congress a report on United States Government police training and equipping programs outside the United States." The House Report 114-102, which accompanied the National Defense Authorization Act for Fiscal Year 2016 (Public Law 114-92) states that "[i]n 2012, the [House Armed Services C]ommittee received a one-time Presidential report on U.S. Government police training and equipping programs outside the United States," and "direct[ed] the Secretary of Defense, in coordination with the Secretary of State, the Secretary of Homeland Security, and the Attorney General of the United States, to submit an update to this report." In other words, the direct reporting requirement was imposed on the Department of Defense, not the Department of State. Weetman Decl. ¶ 8.

Dated:  March 26, 2021                                  Respectfully submitted,

                                                        CHANNING D. PHILLIPS
                                                        D.C. Bar #415793
                                                        Acting United States Attorney

                                                        BRIAN P. HUDAK
                                                        Acting Chief, Civil Division

                                                        KATHLEENE MOLEN
                                                        Assistant United States Attorney
                                                        555 4th Street, N.W.
                                                        Washington, D.C. 20530
                                                        Tel: (202) 803-1572
                                                        E-mail:Kathleene.Molen@usdoj.gov

                                                        *Counsel for Defendant*