# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 100REPORTERS, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Case No. 1:19-01753-RDM |
| | ) |
| U.S. DEPARTMENT OF STATE, | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

## SECOND DECLARATION OF CHARLES O. BLAHA

Pursuant to 28 U.S.C. § 1746, I, Charles O. Blaha, declare and state as follows:

1. I am the Director of the Office of Security and Human Rights ("SHR") within the Bureau of Democracy, Human Rights, and Labor ("DRL") of the United States Department of State (the "Department" or "State") and have served in this capacity since January 2016. Previously, I was a Foreign Service Officer from March 1991 until January 2016; in January 2016 I became a civil servant. As the Director of DRL/SHR, my duties include overseeing the Department's implementation of the Leahy Laws. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.

2. I previously filed a declaration in this case on January 6, 2021, in support of the Department's motion for summary judgment ("State's MSJ"). *See generally* ECF No. 25-4 ("First Blaha Declaration"). In the First Blaha Declaration, I provided detailed background information about the Leahy Laws, the Department's Leahy vetting procedure, and the importance of protecting the identity of vetted individuals.

3.  This declaration responds to certain of the arguments raised in Plaintiffs' memorandum in opposition to State's MSJ ("Plaintiffs' Opposition") and Plaintiffs' cross-motion for summary judgment ("Plaintiffs' Cross-Motion"). In particular, it provides additional detail about the "NOTES" cell entries within the INVEST spreadsheets released in connection with Plaintiffs' request and the distinction between interim and final vetting determinations, which information is relevant to the Department's decision to withhold the "NOTES" entries pursuant to Exemption 5 of the Freedom of Information Act (the "FOIA").

## I.  QUANTITY AND SUBSTANCE OF THE "NOTES" CELL ENTRIES IN THE INVEST SPREADSHEETS

4.  I have been informed that, in their Opposition and Cross-Motion, Plaintiffs argue that the Department has failed to adequately show that the "NOTES" cells within the INVEST spreadsheets released in connection with Plaintiffs' request are both predecisional and deliberative.  *See* Pls.' Opp'n at 12–14; *see also* State's Revised *Vaughn* Index, Docs. 31–44.

5.  Prior to October 2019, when a Leahy vetting action began, a corresponding case would be opened in the Department's INVEST database.[1] Each case contained a "NOTES" field, which could be and often was used by the vetting officers to record, *inter alia*, (1) the status of the vetting action; (2) any milestones reached during the vetting process; (3) any substantive or logistical issues encountered while processing; and/or (4) an interim or final determination and the rationale underlying that interim or final determination. The Department did not mandate use of the "NOTES" field nor did it provide explicit instructions about how officials must use that field. Thus, the information contained within the "NOTES" cells would

---

[1]  As of October 2019, the Department has adopted a new vetting system called INVESTc. However, since all of the documents retrieved in connection with this case predated the transition to INVESTc, this declaration will focus solely on the now-obsolete INVEST system.

2

have been populated on a piecemeal basis by the officers responsible for conducting Leahy vetting according to their personal preference for tracking their Leahy vetting work.

6. Additionally, the 14 INVEST spreadsheets processed and produced in response to Plaintiffs' request contain more than 160,000 rows of information, and the "NOTES" cells at issue in this case contain all of the "NOTES" entries inputted into INVEST throughout the entire lifespan of each of those 160,000+ Leahy vetting cases. Approximately 45,000 of those rows include some sort of entry in the "NOTES" column, and many of those 45,000 individually-populated "NOTES" cells contain several multi-sentence entries compiled across multiple dates. Each individual entry within a single "NOTES" cell includes a date and time stamp reflecting when it was submitted to INVEST as well as the name of the Department official who inputted the update (if applicable).

7. Given the ad hoc and variable use of the "NOTES" field over time by various different Department officials, it is exceedingly difficult to provide a sweeping description that fulsomely captures all of the individual entries within the approximately 45,000 populated "NOTES" cells implicated by Plaintiffs' request.

## II. INTERIM AND FINAL VETTING DETERMINATIONS

8. A final vetting determination is one that results in the vetting candidate either being approved or rejected. If approved, the candidate passes the vetting process and is deemed eligible for U.S. assistance. If rejected, the candidate fails the vetting process and is deemed ineligible for U.S. assistance.

9. The Department also frequently makes interim vetting determinations, which result in the vetting process either being cancelled or suspended. In both of those cases, no final decision has been made with regard to the eligibility of the candidate to receive U.S. assistance,

because the vetting process may restart or resume if additional clarifying information becomes known to the Department.

10. The final determination date for a given Leahy vetting action will therefore not necessarily match the "CERTIFIED" date listed in Column E of the INVEST spreadsheets. For example, to the extent an interim Leahy vetting determination is made (*i.e.*, the vetting process is either cancelled or suspended), the "CERTIFIED" date would correspond with the date that interim determination was taken, but the vetting action could have, and often did, resume at a later date when additional clarifying information was made known to the Department.

\* \* \*

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed this 26 day of March 2021, Washington D.C.

_____
Charles O. Blaha