UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**100REPORTERS**

and

**DOUGLAS GILLISON**

       Plaintiffs,

    v.

**DEPARTMENT OF STATE**,

      Defendant.

Case No. 1:19-cv-1753

**<u>REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Katie Townsend
Adam A. Marshall
Gunita Singh
THE REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org
Email: gsingh@rcfp.org

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.   Defendant conducted an inadequate search for records responsive to the First Request. .. 2

    II.  Defendant is improperly withholding material pursuant to the deliberative process privilege under FOIA Exemption 5. .................................................................................. 3

        A.   Defendant's categorical withholding of the INVEST spreadsheet "notes" is unlawful. ....................................................................................................................... 4

        B.   Document 1 has been improperly withheld in full. ................................................... 5

        C.   State is improperly withholding portions of Documents 6, 11–12, 23, and 29 which are not deliberative. .................................................................................................... 7

        D.   Defendant cannot satisfy FOIA's foreseeable harm requirement as to its deliberative process privilege withholdings. ........................................................................... 9

    III.  Defendant has improperly invoked Exemption 7 to withhold records not compiled for law enforcement purposes. ............................................................................................ 11

    IV.  Defendant's Exemption 6 and 7(C) withholdings are improper. ...................................... 14

        A.   Disclosure of the withheld names would not constitute an unwarranted invasion of personal privacy. ................................................................................................... 14

        B.   The public interest in disclosure outweighs any privacy interest that may exist. ...... 17

        C.   Defendant cannot meet FOIA's foreseeable harm standard as to the withheld names. ....................................................................................................................... 19

    V.   Defendant has impermissibly withheld material pursuant to Exemption 7(E). ............... 21

    VI.  Defendant's exemption claims as to Documents 43 and 44 are moot; Defendant's request that Plaintiffs be ordered to "return or destroy" those records is neither authorized by FOIA nor permissible under the First Amendment. ....................................................... 24

    CONCLUSION .................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abuhouran v. Dep't of State*, 843 F. Supp. 2d 73 (D.D.C. 2012) ................................................. 12

*ACLU v. Dep't of Justice*, 655 F.3d 1 (D.C. Cir. 2011).......................................................... 15

*Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37 (D.C. Cir. 2011) ................................ 21

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, No. 20-CV-1400
    (CRC), 2021 WL 950415 (D.D.C. Mar. 12, 2021).......................................................... 23, 24

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*,
    746 F.3d 1082 (D.C. Cir. 2014)......................................................................................... 16

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854  (D.C. Cir. 1980)............................. 5

*Ctr. for Investigative Reporting v. Customs & Border Prot.*,
    436 F. Supp. 3d 90 (D.D.C. 2019) ..................................................................................... 11

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ............... 19

*Ecological Rights Found. v. Envtl. Prot. Agency*, No. CV 19-980 (BAH), 2021 WL 535725
    (D.D.C. Feb. 13, 2021) ......................................................................................... 19, 23, 24

*Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1 (D.C. Cir. 2014)........................................ 7

*Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615 (1982)................................................ 13

*Gellman v. Dep't of Homeland Sec.*, No. 16-CV-635 (CRC),
    2021 WL 673905 (D.D.C. Feb. 22, 2021) ........................................................................... 6

*Gilman v. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1 (D.D.C. 2014).................................... 18, 19

*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    243 F. Supp. 3d 155 (D.D.C. 2017)............................................................................. 7, 8, 10

*Heffernan v. Azar*, 317 F. Supp. 3d 94 (D.D.C. 2018) ............................................................ 6, 9

*Hersh & Hersh v. Dep't of Health & Human Servs.*, No. C 06-4234 PJH,
    2008 WL 901539 (N.D. Cal. Mar. 31, 2008)..................................................................... 25

*Jewett v. Dep't of State*, No. 11-CV-1852 RLW, 2013 WL 550077 (D.D.C. Feb. 14, 2013)...... 12

*Judicial Watch, Inc. v. Dep't of Justice*, No. 19-CV-800 (TSC),
    2020 WL 5798442 (D.D.C. Sept. 29, 2020) ................................................................... 9, 20

*Judicial Watch, Inc. v. Dep't of State*, 282 F. Supp. 3d 36 (D.D.C. 2017)................................. 12

*Kowalczyk v. Dep't of Justice*, 73 F.3d 386 (D.C. Cir. 1996)....................................................... 3

*Lazaridis v. Dep't of State*, 934 F. Supp. 2d 21 (D.D.C. 2013).................................................. 12

*Loving v. Dep't of Defense*, 550 F.3d 32 (D.C. Cir. 2008)............................................................ 8

*Mayer Brown LLP v. Internal Revenue Serv.*, 562 F.3d 1190 (D.C. Cir. 2009)......................... 22

*Mittleman v. Office of Personnel Mgmt.*, 76 F.3d 1240 (D.C. Cir. 1996) ................................... 13

*Moeller v. EEOC*, No. 19-CV-2330 (DLF), 2021 WL 1025815 (D.D.C. Mar. 17, 2021) ..... 10, 11

*Morley v. Central Intelligence Agency*, 508 F.3d 1108 (D.C. Cir. 2007)................................... 13

*N.Y. Times Co. v. United States*, 403 U.S. 713 (1971) ............................................................ 25

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ............................................ 17

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)......................................................... 4, 7, 8

*North Carolina v. Rice*, 404 U.S. 244 (1971) .......................................................................... 24

*Performance Coal Co. v. Dep't of Labor*, 847 F. Supp. 2d 6 (D.D.C. 2012) .............................. 16

*Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982) ........................................................................... 24

*Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992) ............................... 9

*Rosenberg v. Dep't of Defense*, 442 F. Supp. 3d 240 (D.D.C. 2020) ........................................ 20

*Sack v. Dep't of Defense*, 823 F.3d 687 (D.C. Cir. 2016) .......................................................... 22

*Sec. & Exchange Comm'n v. Am. Int'l Grp.*, 712 F.3d 1 (D.C. Cir. 2013) ................................. 17

*Skinner v. Dep't of Justice*, 806 F. Supp. 2d 105 (D.D.C. 2011) .......................................... 16, 17

*Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979) ................................................................. 25

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007) ............................................ 10

*Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607 (D.C. Cir. 1997) ..................................... 8

*Tax Analysts v. Internal Revenue Serv.*, 294 F.3d 71 (D.C. Cir. 2002) ................................ 12, 14

*Taxation With Representation Fund v. Internal Revenue Serv.*, 646 F.2d 666 (D.C. Cir. 1981) ... 4

*The Florida Star v. B.J.F.*, 491 U.S. 524 (1989) ...................................................................... 25

*Truitt v. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990) ............................................................. 3

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ....................................... 7

*Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768 (D.C. Cir. 1988) ................................. 5

**Statutes**

22 U.S.C. § 2378d .............................................................................................. 1, 10, 13, 16

42 U.S.C. § 2165 ............................................................................................................. 13

5 U.S.C. § 552 ................................................................................................................... 1

5 U.S.C. § 552(a)(8) ....................................................................................... 9, 19, 20, 23

5 U.S.C. § 552(b) .............................................................................................................. 4

5 U.S.C. § 552(b)(7) .................................................................................................... 11, 21

**Other Authorities**

H.R. Rep. No. 114-102, 114th Cong., 1st Sess. (2015) .................................................... 3

## INTRODUCTION

This Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") case concerns two requests submitted by 100Reporters and journalist Douglas Gillison ("Plaintiffs"), to the U.S. Department of State ("State" or "Defendant") for records concerning the government's compliance with the "Leahy Laws"—statutes that prohibit the United States from providing assistance to individuals and security forces abroad that have committed gross human rights violations, *see* 22 U.S.C. § 2378d.   As set forth in Plaintiffs' opening brief, Plaintiffs challenge (1) the adequacy of Defendant's search for records responsive to one subpart of Plaintiffs' First Request; (2) Defendant's withholding of material under the deliberative process privilege that is not predecisional and/or not deliberative, or that, even if exempt, must be disclosed pursuant to FOIA's foreseeable harm provision; (3) Defendant's withholding of records under Exemption 7 that were not compiled for law enforcement purposes; (4) Defendant's categorical withholding of the names of foreign personnel subject to Leahy Vetting under Exemptions 6 and 7(C), even though there is only, at most, a *de minimis* privacy interest in this information that is easily outweighed by the public interest in its disclosure; and (5) Defendant's withholding of information about its implementation of the Leahy Laws under Exemption 7(E).[1]   Finally, Defendant has improperly moved for summary judgment as to two records, the contents of which have already been released to Plaintiffs; Defendant's extraordinary request that the Court order Plaintiffs—a reporter and news organization—to "return or destroy" records released to them under FOIA finds no support in the Act, and amounts to a request that the Court impose an unconstitutional prior restraint.

---

[1]    Based on the supplemental information Defendant submitted in connection with its combined Reply and Opposition to Plaintiffs' cross-motion for summary judgment, Plaintiffs no longer contest the withholding of the last three emails of Document 12 or the last three redactions of Document 23.

The records sought by Plaintiffs are integral to their reporting on the State Department's compliance with the Leahy Laws' prohibition on providing aid—ranging from training on border patrol and suspect interviews to assistance with handling explosives and munitions—to persons and security forces who have a documented history of violating human rights.  Defendant's improper withholding of the requested records thus not only violates FOIA, but also impedes Plaintiffs' ability to inform the public about the actions of the State Department and its compliance with the Leahy Laws' requirements.  For the reasons set forth in Plaintiffs' cross-motion for partial summary judgment and herein, Plaintiffs respectfully request that the Court deny Defendant's motion for summary judgment and enter partial summary judgment in Plaintiffs' favor.

## **ARGUMENT**

**I.      Defendant conducted an inadequate search for records responsive to the First Request.**

In their First Request, Plaintiffs sought the "'Report on Government Police Training and Equipping Programs' submitted to Congress pursuant to § 1235(c) of the Ike Skelton National Defense Authorization Act for Fiscal Year 2011 and copies of all 'Reports on Government Police Training and Equipping Programs' submitted to Congress in subsequent fiscal years.'"  Pls.' SMF, ECF No. 26-2, ¶ 32.  In conducting its search for records responsive to this subpart of the First Request, Defendant searched *only* its Bureau of Democracy, Human Rights, and Labor; its Bureau of Counterterrorism; and its Bureau of International Narcotics and Law Enforcement Affairs. Second Stein Decl., ECF No. 25-3, ¶ 40; Def.'s Response to Pls.' Statement of Material Facts ("Def.'s Resp. to SMF"), ECF No. 30-1, ¶ 54.  State's limiting of its search to those three offices— and, in particular, its failure to search the office of the Secretary of State—is unlawful.

As clarified by Defendant in its reply in support of its motion for summary judgment, in 2015 the House Armed Services Committee directed the Secretary of Defense, "in coordination

with the Secretary of State," to submit a report on "U.S. Government Police Training and Equipping Programs Outside the United States" to Congress.  Def.'s Opp'n & Reply ("Def.'s Reply"), ECF No. 30, at 2; *see also* Singh Decl., ECF No. 26-3, Ex. K (confirming that House Report 114-102 required the Secretary of Defense, "in coordination with the Secretary of State," to submit a report "on U.S. Government police training programs outside the United States"); H.R. Rep. No. 114-102, 114th Cong., 1st Sess. (2015).  Despite the fact that the Secretary of State was explicitly tasked with coordinating with a government entity to produce this report, Defendant did not search the Office of the Secretary of State, Def.'s Resp. to SMF ¶ 54, and has not offered any justification for its failure to do so.  Nor could it.  In responding to a FOIA request, agencies must conduct a search "reasonably calculated to uncover all relevant documents," *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (citation omitted), and  cannot ignore "a lead that is both clear and certain," *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).  Here, State's *Vaughn* Index explains that the draft version of the report sought by Plaintiffs is maintained in State's files, and expressly references the Secretary of State, Revised *Vaughn* Index, ECF No. 30-3, Doc. 1—an undisputedly "clear and certain" lead that Defendant failed to follow.  Accordingly, summary judgment for Defendant as to the sufficiency of its search for records responsive to the First Request should be denied, and summary judgment in favor of Plaintiffs granted.

## II.    Defendant is improperly withholding material pursuant to the deliberative process privilege under FOIA Exemption 5.

Defendant has improperly invoked the deliberative process privilege to withhold information in twenty-eight records, identified in its revised *Vaughn* Index as Documents 1, 6, 11–12, 14, 16, 19, 23–24, 28–44, 45, and 50.  Defendant's revised *Vaughn* Index does little to shore up its withholdings under Exemption 5, as the agency is still withholding information that is not

predecisional, not deliberative, or neither, as well as information that, even if exempt, must be disclosed pursuant to FOIA's foreseeable harm provision.

   A.  _Defendant's categorical withholding of the INVEST spreadsheet "notes" is unlawful._

As to the fourteen Excel spreadsheets containing data from its INVEST system (Documents 31–44), State has improperly categorically withheld entire columns of "notes" from each spreadsheet—information that is neither predecisional nor deliberative.  Indeed, Defendant admits that some of the withheld "notes" include "an interim _or final determination_" as to each candidate's eligibility for assistance, as well as "the rationale underlying that interim _or final determination_," Second Blaha Decl., ECF No. 30-4, ¶¶ 5–6 (emphasis added), even though the "Department concedes," as it must, that "whether a given candidate was 'Approved' or 'Rejected'" is _not_ predecisional "insofar as it reflects the Department's final determination."  Weetman Decl., ECF No. 30-2, ¶ 12.  State's categorical withholding of the non-predecisional "notes" under the deliberative process privilege is plainly unlawful.  _See NLRB v. Sears, Roebuck & Co_., 421 U.S. 132, 153–54 (1975) (stating the privilege "can _never_ apply" to records that "explain agency action already taken," "an agency decision already made, [or that] _constitute 'final dispositions'_" (emphasis added)); _Taxation With Representation Fund v. Internal Revenue Serv_., 646 F.2d 666, 678 (D.C. Cir. 1981) ("[T]he courts have recognized a strong public interest in the disclosure of _reasons_ that do supply the basis for an agency policy actually adopted." (emphasis added)).

FOIA explicitly requires that "[a]ny reasonably segregable portion" of a requested record "shall be provided . . . after deletion of the portions which are exempt," 5 U.S.C. § 552(b); Defendant's averment that it "conducted a line-by-line review of the [notes] and determined that there is no meaningful, non-exempt information that can be reasonably segregated and released," Revised _Vaughn_ Index, Docs. 31–44, is belied by State's representation that "certain 'NOTES'

4

entries noted a candidate's *final vetting determination*," Weetman Decl. ¶ 12 (emphasis added), and the "*rationale* underlying that . . . final determination," Second Blaha Decl. ¶ 5 (emphasis added)—information that is not exempt under FOIA. *See supra.* Further, State also makes clear that it is withholding factual information in the "notes," *see* Second Blaha Decl. ¶ 5 (stating the notes contain, "*inter alia*, (1) the status of the vetting action; (2) any milestones reached during the vetting process; [and] (3) any substantive or logistical issues encountered while processing"); such information is not properly withheld. *See, e.g.*, *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (stating "factual material must be disclosed but advice and recommendations may be withheld" under the privilege). Accordingly, Defendant's motion for summary judgment as to these records should be denied, and entered in favor of Plaintiffs.[2]

B. *Document 1 has been improperly withheld in full.*

Document 1 is a "draft memorandum" from the former Secretary of State to the former Secretary of Defense, the subject of which is the "Report to Congress on U.S. Government Police Training and Equipping Programs," discussed *supra*. Revised *Vaughn* Index, Doc. 1. With respect to this record, Defendant fails to meaningfully address the doctrine of agency adoption, discussed at length in Plaintiffs' opening brief. *See* Pls.' Mem. at 11–13; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) ("[E]ven if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."). Instead, Defendant wrongly

---

[2]   In the Weetman Declaration, ECF No. 30-2, State implies, for the first time, that it is also withholding the "notes" within the spreadsheets under Exemptions 6, 7(C), and 7(E), in addition to Exemption 5. Weetman Decl. ¶¶ 14–15. Yet State has asserted no such claims pursuant to Exemptions 6, 7(C), and 7(E) as to the "notes," and none are reflected in Defendant's Revised *Vaughn* Index. *See* ECF No. 30-3, Docs. 31–44. Nonetheless, Plaintiffs address Defendant's purported claims under Exemptions 6, 7(C), and 7(E) in Sections IV and V, *infra*.

attempts to shift the burden of showing that records have been adopted to Plaintiffs.  Def.'s Reply at 5; *compare id. with Heffernan v. Azar*, 317 F. Supp. 3d 94, 125–26 (D.D.C. 2018) (when a "defendant has identified [a] document as a draft, *[it] must indicate whether the draft was . . . adopted formally or informally*, as the agency position on an issue" (emphasis added) (citations omitted)); *Gellman v. Dep't of Homeland Sec.*, No. 16-CV-635 (CRC), 2021 WL 673905, at *4 (D.D.C. Feb. 22, 2021) ("[W]hen the Government asserts that a withheld record is a 'draft,' it should proactively answer the obvious follow-up question of whether the draft has been adopted.").

Defendant argues that it "has sufficiently shown that [the] document[] ha[s] markings that are only contained on draft documents," and that the document would not "have been adopted as a final agency decision in that form."  Def.'s Reply at 5–6.  However, the question under FOIA is not—and has never been—whether a draft containing markings was adopted *in that form*.  The question is whether the agency has adopted the record, or portions thereof—"formally or informally, as the agency position on an issue," or "use[d the] deliberative document as a source of agency guidance," including, for example, in "retain[ing] and referr[ing] to [it] as precedent." *Heffernan*, 317 F. Supp. 3d at 122–23 (citations omitted).  State has not addressed that fundamental question with respect to Document 1.[3]  Indeed, that State *only* located what it calls a "draft" of this

_____

[3]    State claims with respect to Document 1 that since "the Department of Defense is required to submit to Congress the final version of the report that is the subject of the draft memorandum, [that] logically means that State's draft memorandum could not have expressed a final policy decision due to State's position within the administrative review process."  Def.'s Reply at 6. However, that the Defense Department transmitted the final report to Congress—the draft of which is maintained in State's files, *see* Revised *Vaughn* Index, Doc. 1—does not end the inquiry.  The "Department of Defense[] [was] directed to coordinate with the Department[] of State" in producing a "Report on Government Police Training and Equipping Programs" for Congress. Def.'s Reply at 1–2.  It simply does not follow that the Secretary of State's contributions to said report "could not have expressed a final policy decision."  *Id.* at 6.  To the contrary, as the head of the agency, it is likely that the Secretary's contributions would indeed "express a final policy decision" and/or constitute the "agency['s] position on an issue."  *Heffernan*, 317 F. Supp. 3d at 122–23 (citation omitted).

memorandum, but not a "final" version, strongly suggests that it was, in fact, the agency's "final view on the matter." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021).

C.   <u>State is improperly withholding portions of Documents 6, 11–12, 23, and 29 which are not deliberative.</u>

The deliberative process privilege applies to records that "reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Sears*, 421 U.S. at 153; *see also Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1, 4 (D.C. Cir. 2014) (stating that the privilege protects the process by which "policies are formulated"). State's partial withholding of Documents 6, 11–12, 23, and 29 is improper because the withheld information is not deliberative. *See* Pls.' Br. at 13–15; Revised *Vaughn* Index, Docs. 6, 11–12, 23, 29.

With respect to the top email in Document 12,[4] Defendant has not described "what deliberative process is involved, the role played by the document[] in issue in the course of that process, [and] the nature of the decisionmaking authority vested in the . . . person issuing the disputed document[]." *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 168 (D.D.C. 2017) (cleaned up) (citations omitted). State characterizes Document 12 as consisting of "practical and logistical advice . . . about certain practices [an employee] and her office may want to implement in order to help navigate the Leahy vetting process." Revised *Vaughn* Index, Doc. 12. Defendant insists the withheld email is deliberative "because it reflects informal discussions between Department officials about their opinions as to certain best practices and other factors to be considered when navigating the Leahy vetting process," *id.*—but, "navigating the Leahy vetting process" is not a discrete "decision making process," *Sears*, 421

---

[4]   Plaintiffs no longer challenge the first two categories (*i.e.*, the bottom three emails) of Document 12. Plaintiffs do challenge the third category—*i.e.*, the fourth (top) email in the chain comprising this record, discussed herein.

U.S. at 150 (citation omitted); the privilege does not protect government employees' conversations about best practices for ensuring compliance with existing policies—it protects "deliberations comprising part of a process by which governmental . . . policies are formulated." *Hardy*, 243 F. Supp. 3d at 164 (quoting *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008)).

As for Documents 6, 11, 23,[5] and 29, *Tax Analysts v. Internal Revenue Service*, 117 F.3d 607 (D.C. Cir. 1997) is instructive.  In *Tax Analysts*, the D.C. Circuit held that the records at issue, "Field Service Advice Memoranda" ("FSAs"), could not be withheld under the deliberative process privilege because they were not "produced in the process of formulating *policy*," *id.* at 617 (emphasis added).  The court explained that the FSAs—which provided "legal guidance, usually with reference to the situation of a specific taxpayer" to ensure "that field personnel apply the law correctly and uniformly," *Tax Analysts*, 117 F.3d at 609—were ineligible for protection *even* where they "evaluate the strengths and weaknesses of alternative views," as such characteristics did not inherently "make them deliberative." *Id*. at 617.

Documents 6, 11, 23, and 29 are email chains applying the Leahy Vetting process to various units and personnel; the discussions therein concern compliance with existing Leahy Vetting policy—they do not reflect discussions about *formulation of policy*. *See Sears*, 421 U.S. at 153. State has a detailed, comprehensive set of procedures dictating how Leahy Vetting must be conducted; those existing procedures outline each step of the process, including who must be vetted, what constitutes gross violations of human rights ("GVHRs"), and how accounts of such violations are determined to be credible.  Pls.' SMF ¶ 46; *see, e.g.*, Singh Decl. Exs. A–C (providing, *inter alia*, definitions and common examples of GVHRs; explaining how to identify a

---

[5]     Plaintiffs no longer challenge State's withholding of the latter four redactions in Document 23, discussing proposed changes to State's Leahy Vetting Guide.  Plaintiffs do challenge the remainder of Document 23, which applies the Leahy Laws to candidates for training in Uzbekistan.

"unit" for vetting purposes; listing indicators of "credible information" about GVHRs).   The withheld information in Documents 6, 11, 23, and 29—"focused on how a real-life fact pattern should be treated within the context of those established definitions and processes," Def.'s Reply at 10—does not "discuss the wisdom or merits of a particular agency policy, or recommend new agency policy," *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (citation omitted); it merely reflects application of existing agency policy, and is not deliberative.

      D.  *Defendant cannot satisfy FOIA's foreseeable harm requirement as to its deliberative process privilege withholdings.*

As to each of its deliberative process privilege withholdings, Defendant has failed to demonstrate that it is reasonably foreseeable that harm would result from disclosure.  5 U.S.C. § 552(a)(8).  After Plaintiffs submitted their cross-motion for summary judgment—in an effective concession that it had failed to address FOIA's foreseeable harm provision—Defendant submitted additional declarations and a revised *Vaughn* Index in an attempt to support its withholdings.  *See, e.g.*, ECF No. 30-3.  However, Defendant has still "fail[ed] to meaningfully connect the harm[s]" the privilege is intended to protect "to the information withheld."  *Judicial Watch, Inc. v. Dep't of Justice*, No. 19-CV-800 (TSC), 2020 WL 5798442, at *4 (D.D.C. Sept. 29, 2020).

In defense of its categorical withholding of entire columns of "notes" in fourteen Excel spreadsheets, Revised *Vaughn* Index, Docs. 31–44,  Defendant now claims that "[d]isclosure could reasonably be expected to make Department officials less likely to make interim notes while conducting Leahy vetting, which would foreseeably harm the effectiveness and efficiency of the Leahy vetting process."  *Id*.  Yet Defendant fails entirely to explain how or why that would be the case, given that when records are "anonymized," it is "unlikely that disclosure would stifle honest and frank communication within the agency."  *Heffernan*, 317 F. Supp. 3d at 131–32 (citation and quotations omitted).  None of the spreadsheets produced to date contain any indication of who

authored their contents, *see* Revised *Vaughn* Index, Docs. 31–44; the Second Blaha Declaration states that the "notes" include "the name of the Department official who inputted the update (if applicable)," Second Blaha Decl. ¶ 6—information that State is free to redact prior to disclosing the "notes."  Indeed, "in cases where there is no identifying information that would link an individual to a document[,] there is little likelihood that disclosure would injure an agency's deliberative process."  *Hardy*, 243 F. Supp. 3d at 173 (citation omitted).  Thus, Defendant's sweeping claim of reasonably foreseeable harm from disclosure of the "notes" is unavailing.

As to the remaining fourteen records for which State has asserted the deliberative process privilege, *see* Revised *Vaughn* Index, Docs. 1, 6, 11–12, 14, 16, 19, 23–24, 28–30, 45, 50, State's arguments likewise fall short.  As a threshold matter, it is implausible that Department personnel would be "chill[ed]" from engaging in an "open and frank exchange of ideas" about Leahy Vetting because, years later, their words may be revealed to the public.  Def.'s Reply at 11.  Such personnel are required under the Leahy Laws to ensure that "[n]o assistance [is] furnished . . . to any unit of the security forces of a foreign country if . . . that such unit has committed a gross violation of human rights."  22 U.S.C. § 2378d.  Absent "clear evidence to the contrary," there is no reason to assume a government employee will not perform their clearly delineated, statutorily mandated duties.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (stating that under the presumption of regularity, courts presume that public officials "properly discharge[] their official duties") (citation omitted); *see also* Revised *Vaughn* Index, Doc. 12 ("Department officials . . . complete their work while operating within statutorily-mandated guidelines . . . .").

As to the level of detail required to "articulate a specific foreseeable harm that is adequately connected to the underlying materials," *Moeller v. EEOC*, No. 19-CV-2330 (DLF), 2021 WL 1025815, at *7 (D.D.C. Mar. 17, 2021), State insists it "represent[ed] that disclosure . . . would

'chill the open and frank exchange of ideas and recommendations' between State officials, . . . [and] included language tailoring that chilling effect to the subject-matter of the withheld material." Def.'s Reply at 11. Not so. Consider Defendant's revised *Vaughn* entry for Document 6, to which State added the generic assertion that, "Without the comfort of knowing that their candid discussions will remain private within the Department, State officials would foreseeably be discouraged from engaging in those discussions in the first place," Revised *Vaughn* Index, Doc. 6—the text of which is mirrored in the revised entries for Documents 11, 23–24, and 28. *See id.* Docs. 11, 23–24, 28; *see also id.* Docs. 14, 45 (alleging that "release of th[ese] document[s] would foreseeably harm the Department's deliberative process by leading Department officials to believe that every edit or comment they propose in a draft document may be released to the public, thus curbing the candid exchange of ideas between Department officials and curtailing creativity in the compilation and explanation of Department policy"). Courts in this district consistently hold that allegations of foreseeable harm will fail when they merely consist of "general explanations and boiler plate language" "with only slight variation," *Moeller*, 2021 WL 1025815, at *7 (quoting *Ctr. for Investigative Reporting v. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019))—precisely what State has proffered here.

For these reasons too, summary judgment for Defendant as to its Exemption 5 withholdings should be denied, and summary judgment in favor of Plaintiffs should be granted.

### III.     Defendant has improperly invoked Exemption 7 to withhold records not compiled for law enforcement purposes.

An agency withholding records under Exemption 7 must demonstrate, as a threshold matter, that the records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Since the State Department "is not a law enforcement agency, its claim that records were compiled for law enforcement purposes is entitled to less deference." *Lazaridis v. Dep't of State*, 934 F.

Supp. 2d 21, 37 (D.D.C. 2013).  Here, Defendant has invoked Exemption 7 to withhold portions of thirty records at issue, Revised *Vaughn* Index, Docs. 6, 11, 17–23, 25–27, 31–47, 50.  Those withholdings are improper as those records were not "compiled for law enforcement purposes."

Defendant once again cites *Tax Analysts v. Internal Revenue Service*, 294 F.3d 71 (D.C. Cir. 2002) in its reply brief, Def.'s Reply at 12, explaining that "[i]n assessing whether records are compiled for law enforcement purposes," the focus is on whether the files "relate to anything that can fairly be characterized as an enforcement proceeding," *Tax Analysts*, 294 F.3d at 78 (citation omitted).  Yet, as discussed in Plaintiffs' opening brief—and unrefuted by Defendant—Leahy Vetting cannot "fairly be characterized as an enforcement proceeding." Pls.' Mem. at 19.  Where the State Department *has* been able to invoke Exemption 7 to withhold records under FOIA, the relevant records *did* relate to enforcement proceedings.  *See, e.g.*, *Abuhouran v. Dep't of State*, 843 F. Supp. 2d 73, 80 (D.D.C. 2012) ("The threshold law enforcement requirement is satisfied because the request seeks records pertaining to an extradition to answer to a criminal charge."); *Jewett v. Dep't of State*, No. 11-CV-1852 RLW, 2013 WL 550077, at *7 (D.D.C. Feb. 14, 2013) ("Defendants easily satisfy the threshold showing that the relevant records are law enforcement records for purposes of Exemption 7 . . . [where] the documents withheld include[, *inter alia*,] information compiled in the course of a USMS fugitive investigation[.]"); *Judicial Watch, Inc. v. Dep't of State*, 282 F. Supp. 3d 36, 43 (D.D.C. 2017) (characterizing withheld records as created by the Bureau of Diplomatic Security, the "law enforcement arm of State") (Moss, J.).  The records at issue here stand in stark contrast to those courts recognize as "compiled for law enforcement purposes"; records reflecting research into whether foreign persons have violated human rights, as a prerequisite to furnishing aid, are simply not law enforcement records.  *Cf.* Pls.' SMF ¶ 53; Singh Decl. Exs. E–F.

Because Defendant cannot plausibly argue that records concerning Leahy Vetting are law enforcement records, it instead attempts to argue that because "information initially contained in a record made for law enforcement purposes" retains its protected status under Exemption 7 when it is "summarized in a new document," *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 631–32 (1982), the records at issue, here, somehow fall within Exemption 7.  Def.'s Reply at 12. In making that argument, State misleadingly cites to the First Blaha Declaration, ECF No. 25-4; at no point, however, does that declaration claim that State relies on law enforcement records and then repackages them into the records at issue here.  *Compare* Def.'s Reply at 13 (claiming that in conducting Leahy Vetting, State's "assessment of available information . . . may include publicly-available information . . . and/or law enforcement sensitive information") *with* First Blaha Decl. ¶¶ 6–12 (making no reference to "law enforcement").

Finally, Defendant's reliance on *Morley v. Central Intelligence Agency*, 508 F.3d 1108 (D.C. Cir. 2007) and *Mittleman v. Office of Personnel Management*, 76 F.3d 1240 (D.C. Cir. 1996) in order to justify its Exemption 7 withholdings is likewise misplaced.  *See* Def.'s Reply at 13–14. Those cases involved law enforcement-conducted background investigations necessary to determine "eligibility for a 'critical sensitive' security clearance," *Mittleman*, 76 F.3d at 1241–42, investigations required by federal law, *see, e.g.*, 42 U.S.C. § 2165 ("[OPM] shall [make] an investigation . . . on the character, associations, and loyalty of such individual[s.]").  In contrast, the Leahy Law applicable to the State Department states that no assistance can be given to foreign security forces in certain situations.  *See* 22 U.S.C. § 2378d.  If the conclusory assertion in paragraph sixty-eight of the Second Stein Declaration, and in paragraph fifteen of the Weetman Declaration, satisfied the threshold requirement for Exemption 7, it is hard to know what records of an agency within the executive branch—whose constitutional role it is to enforce laws enacted

by Congress—would *not* constitute records "compiled for law enforcement purposes." *Cf. Tax Analysts*, 294 F.3d at 77 ("If courts accept a mixed-function agency's claims of 'law enforcement purpose' without thoughtful consideration, the excessive withholding of agency records which Congress denounced and sought to avoid . . . might well result." (citation omitted)).

Because Defendant has not—and cannot—demonstrate that the thirty records it has withheld in part pursuant to Exemption 7 were compiled for law enforcement purposes, summary judgment should be entered in Plaintiffs' favor as to those withholdings.

**IV.     Defendant's Exemption 6 and 7(C) withholdings are improper.**

Assuming, *arguendo*, that the records withheld by State pursuant to Exemption 7 were compiled for law enforcement purposes—which they were not—State has unlawfully invoked Exemption 7(C) and Exemption 6 to categorically withhold the names of all foreign persons who have undergone Leahy Vetting from twenty-two records. *See* Revised *Vaughn* Index, Docs. 6, 11, 17–18, 26, 31–47. Defendant's withholdings under these exemptions are impermissible because if there is any privacy interest in the names of persons who have undergone Leahy Vetting, it is *de minimis*, and clearly outweighed by the public interest in disclosure.

A.  *Disclosure of the withheld names would not constitute an unwarranted invasion of personal privacy.*

Defendant's main argument in support of its withholdings is that "Leahy vetting is focused specifically on whether a gross violation of human rights has been committed by a member of a foreign security force"—thus, "a Leahy vetting action resembles far more a criminal investigation than a routine background check and . . . 'would therefore constitute an unwarranted invasion of public [sic] privacy in much the same way that associating an individual with an ongoing criminal investigation would.'" Def.'s Reply at 15 (citing Second Stein Decl., ECF No. 25-3). This argument fails for the following reasons.

As a preliminary matter, it is important to note that the names are contained in spreadsheets where "each candidate's final determination . . . has already been provided to Plaintiffs," Weetman Decl. ¶ 12; thus, State's claim that release of the individuals' names would constitute an invasion of privacy "in much the same way that associating an individual with an ongoing criminal investigation would invade their personal privacy . . . especially if . . . the individual is ultimately cleared of any personal wrongdoing," Second Stein Decl. ¶ 62, does not compute.  The notion that one is "ultimately cleared of any personal wrongdoing" presupposes the individual was *suspected* of personal wrongdoing in the first instance; such is not the case with Leahy Vetting where *each* candidate for U.S. training is vetted prior to receiving aid. Pls.' SMF ¶ 49.  Further, the individual's name would appear *alongside* their final determination in the Excel spreadsheet, Weetman Decl. ¶ 12—the *vast majority* of which say "approved"—unambiguously making it apparent that the individual had been deemed eligible for U.S. assistance.  *See* Singh Decl. Ex. D at 9 n.15 ("From 2010 through mid-April 2018, DRL processed 1,338,135 vetting cases in INVEST, of which . . . 1,202,300 (89.8 percent) were approved . . . .").

Critically, Defendant has made no effort, whatsoever, to address the fact that much of the material State consults in performing Leahy Vetting is already public.  *See* Singh Decl. Ex. A at 17 ("[The] Bureau of Democracy, Human Rights, and Labor . . . vets all nominees against reputable NGO and other unclassified sources . . . .").  Indeed, Plaintiffs submitted evidence of State personnel consulting a publicly available report published by the Bolivian Ombudsman, Singh Decl. Ex. H—a report that listed the names of several Bolivian police officers who committed violent acts against strikers, Singh Decl. Ex. M.  Where information is already "available to the public," it "reduces further still the incursion on privacy resulting from disclosure." *ACLU v. Dep't of Justice*, 655 F.3d 1, 9 (D.C. Cir. 2011).  Further, the withheld names are of members of foreign

security units—government employees—and it is well-established that such persons "have a somewhat diminished privacy interest." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1092 (D.C. Cir. 2014) (citation omitted).

Moreover, Defendant's claim that disclosure would be an unwarranted invasion of privacy because "some of [the individuals] are not aware that they or their units are being or have been Leahy vetted," Def.'s Reply at 15, is dubious at best. The State Leahy Law explicitly requires the Secretary of State to "promptly inform" foreign governments when funds are withheld because of credible information of GVHRs and to make publicly available "the identity of those units for which no assistance shall be furnished." 22 U.S.C. § 2378d(c)–(d)(7). Persons receiving (or wishing to receive) aid from the U.S. government thus can reasonably be aware "that they or their units are being or have been Leahy vetted" as a condition of receiving such aid; persons who have committed violations of human rights are no doubt aware they have done so; and it is no secret that members of the news media, human rights watchdogs, and other institutions work to expose human rights abuses—it is that very work that State often relies on to conduct its vetting. *See* Singh Decl. Ex. A at 45, 64; *id.* Exs. H, L.

Finally, the authorities to which Defendant cites in support of purported privacy interests in the withheld names—*Performance Coal Co. v. Department of Labor*, 847 F. Supp. 2d 6 (D.D.C. 2012) and *Skinner v. Department of Justice*, 806 F. Supp. 2d 105 (D.D.C. 2011)—are inapposite. *See* Def.'s Reply at 17. In *Performance Coal*, the agency "asserted Exemption 7(C) to withhold information clearly compiled for 'law enforcement purposes'"—which is not the case here, *see supra,* Section III—including "names, cell phone numbers[,] home phone numbers[,] . . . e-mail addresses[,] . . . home addresses, dates of birth [and portions of] social security numbers." *Performance Coal*, 847 F. Supp. 2d at 17–18. Here, Plaintiffs seek only the names of persons

subject to Leahy Vetting.  In *Skinner*, USCIS withheld "the names and identification numbers of law enforcement personnel found in . . . records compiled for law enforcement purposes." *Skinner*, 806 F. Supp. 2d at 114.  Critically, in *Skinner*, "*[w]holly absent* from [the] plaintiff's opposition [was] an assertion of *any public interest* which outweighs the personal privacy interests of these third parties." *Id*. at 113 (emphasis added).  In contrast, the public interest in the names of Leahy Vetted-persons vastly outweighs the speculative privacy interests asserted by Defendant.

> B. *The public interest in disclosure outweighs any privacy interest that may exist.*

FOIA is a vital means for citizens to know "what their Government is up to." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004) (citation omitted).  "This phrase should not be dismissed as a convenient formalism.  It defines a structural necessity in a real democracy." *Id*.  FOIA recognizes that the "public has a fundamental interest in keeping a watchful eye on the workings of public agencies." *Sec. & Exchange Comm'n v. Am. Int'l Grp*., 712 F.3d 1, 3 (D.C. Cir. 2013) (citations omitted).  The records sought by Plaintiffs here will enhance public understanding of the State Department's implementation of the Leahy Laws—a mission all the more critical against a backdrop of documented violations of those laws' prohibition on the furnishing of U.S. training to those who violate fundamental human rights.

State claims there is no public interest in the names of individuals subject to Leahy Vetting because they "would not shed any additional light on State's management of matters related to Leahy Law implementation or compliance."  First Blaha Decl. ¶ 15 (arguing that "[s]imply knowing the names of the individuals who have been vetted would not allow for a cross-reference to be made against the Department's publicly available records . . . since the names of individuals that ultimately receive [United States] assistance are not published").  That argument is wholly belied by the record. *Compare id. with* Weetman Decl. ¶ 12 (explaining that "whether a given

candidate was 'Approved' or 'Rejected'" is "reported as the candidate's 'STATUS' in Column D of the INVEST spreadsheets" produced to Plaintiffs).  Simply put, obtaining the names of those subject to Leahy Vetting is *precisely* the mechanism for Plaintiffs—and the public—to determine whether and to what extent U.S. taxpayer-funded training, assistance, and aid is flowing to persons and units with a documented history of violating human rights.

*Gilman v. Department of Homeland Security*, 32 F. Supp. 3d 1 (D.D.C. 2014) (Howell, J.) is instructive.  In *Gilman*, the plaintiff sought CBP records concerning the construction of a fence on the U.S.-Mexico border.  *See generally id.*  Gilman "spearheaded a working group that focused on the human rights impact of the border fence by 'conduct[ing] research and analysis of the legal, historical, property, environmental, indigenous, community, and other impacts of the border wall.'"  *Id.* at 6.  Her FOIA requests were part of that project.  *See id.*  Gilman challenged CBP's withholding of the names and addresses of private landowners referenced in CBP's records.  *Id.* at 9.  While the court found that there were "substantial privacy interests in the names and addresses of [the] private citizens," *id.* at 11, the court ultimately determined that the public interest in disclosure was "significant" and easily outweighed the privacy interests at hand.  *Id.* at 14.  Specifically, the court stated that "there is great public benefit to learning the social impact of CBP's construction of the wall.  Revealing the identities of landowners in the wall's planned construction site may shed light on, *inter alia*, the impact on indigenous communities [and] the disparate impact on lower-income minority communities[.]"  *Id.* at 15.  "The information, after appropriate analysis, could reveal CBP's decisionmaking and conduct as it relates to the Texas-Mexico border wall . . . [and] help[] the public learn something directly about the workings of the *Government*."  *Id.* (emphasis in original) (citations and internal quotation marks omitted).

Here, it is manifestly clear how disclosure of the names of persons subject to Leahy Vetting will shed light on State's conduct:  Because the spreadsheets list the "status" of each individual's "final vetting determination," including whether they are "approved" to receive U.S. assistance— or "rejected," Weetman Decl. ¶ 12—the *names* of those individuals will allow Plaintiffs to investigate whom is receiving taxpayer-funded, U.S. government-administered trainings ranging from helicopter rope suspension techniques, ballistics training, marksmanship, surveillance, and more.  Just as in *Gilman*, where the public interest in understanding the human rights implications of CBP's operations necessitated disclosure of individuals' names—particularly where the information would be subject to "analysis," *Gilman*, 32 F. Supp. 3d at 15—Plaintiffs are well-positioned to analyze the records at issue to discern whether and how the Leahy Laws are being implemented in practice.  *See* Gillison Decl., ECF No. 26-4, Exs. 1–3.  Plaintiffs have spent decades investigating and reporting on human rights abusers committing heinous acts who were nonetheless deemed eligible for U.S. assistance by State—including Colonel Seng Phok, Sok Khemarin, and Rear Admiral Hing Puth Dara of Cambodia's security forces.  *See generally id*.  Plaintiffs filed the instant FOIA requests to continue that investigative reporting and to enhance "public understanding of the operations or activities of the government."  *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989) (citation omitted).

C.  *Defendant cannot meet FOIA's foreseeable harm standard as to the withheld names.*

Because Defendant has not—and cannot—demonstrate that the withheld names are exempt under Exemptions 6 or 7(C), they should be released, and the Court need not address the agency's failure to comply with the foreseeable harm provision.  *See* 5 U.S.C. § 552(a)(8)(A); *Ecological Rights Found. v. Envtl. Prot. Agency*, No. CV 19-980 (BAH), 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021) ("If an agency fails to show that a withheld record fits within the claimed exemption

in the first instance, the foreseeable harm analysis need not be addressed.").  However, assuming, *arguendo*, that the withheld material implicates more than a *de minimis* privacy interest that outweighs the strong public interest in favor of disclosure—which it does not—these names would still be required to be disclosed under the foreseeable harm provision, 5 U.S.C. § 552(a)(8)(A).

As a preliminary matter, Defendant makes the erroneous claim that Plaintiffs "fail to address the Department's representation that disclosure of the vetted foreign officers' names and other identifying information could, in certain circumstances, expose them to harassment by making public their affiliation with the United States."  Def.'s Reply at 16.  Not so.  *See* Pls.' Mem. at 25 (discussing claim that releasing "names of vetted individuals *could* expose those individuals to harassment . . . by making public their affiliation with a unit that may be receiving assistance from the U.S. Government" (emphasis added) (citing First Blaha Decl. ¶ 14)).  It is simply not sufficient "for an agency to speculate that harm *could* result from disclosure" for the purposes of FOIA's foreseeable harm provision.  *Judicial Watch*, 2020 WL 5798442, at *3 (emphasis added).

Further, because "[t]he degree of detail necessary to substantiate a claim of foreseeable harm is context-specific," *Rosenberg v. Dep't of Defense*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020), it is important to recall the *context* in which the requested names appear, which renders State's allegations of harm unconvincing:  As Plaintiffs explained in their opening brief, Leahy Vetting is conducted in *all* cases where an individual or unit is nominated for U.S. assistance.  Pls.' SMF ¶ 49; Singh Decl. Ex. B ("When an individual security force member is nominated for U.S. assistance, the Department vets that individual as well as his or her unit.").  This uniform application of Leahy Vetting necessarily precludes it from imposing a "stigma," Def.'s Reply at 14, on those vetted; it is, indeed, the very *opposite* of conducting a criminal investigation in which a targeted, discriminating probe into specific persons suspected of wrongdoing takes place.  *Cf.*

Pls.' Mem. at 23 n.6 (explaining that State-funded training and equipment *can only* be provided to properly vetted entities and individuals, and that even though it is unlikely that Costa Rican trainees, for example, have committed human rights violations, they still must be vetted).  Simply, where the very structure of Leahy Vetting does not discriminate amongst candidates for aid, no purported stigma can follow.

Because Defendant's withholding of the names of individuals who have undergone Leahy Vetting violates FOIA, summary judgment for Defendant as to those withholdings should be denied and granted in favor of Plaintiffs.

## V.      Defendant has impermissibly withheld material pursuant to Exemption 7(E).

Even assuming, *arguendo*, that Defendant's Exemption 7(E) withholdings are of records "compiled for law enforcement purposes"—which, for the reasons set forth in Section III, *supra*, they are not—those withholdings are improper under FOIA.  Exemption 7(E) applies *only* to those records that, if released, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Here, Defendant is improperly withholding information under Exemption 7(E) from ten records.  *See* Revised *Vaughn* Index, Docs. 6, 11, 19–23, 25, 27, 50.

As a preliminary matter, Defendant notes that some courts outside this jurisdiction "have held that the 'risk of circumvention' standard only applies to the second clause of Exemption 7(E), which deals with law enforcement guidelines, rather than the law enforcement techniques and procedures applicable in this case."  Def.'s Reply at 21 n.3.  But that is not the law in *this* Circuit. *See Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 41–42 (D.C. Cir. 2011).  Defendant's citations to other circuits' non-binding interpretations of Exemption 7(E) should be disregarded.

Crucially, State fails to demonstrate that "circumvention of the law" would follow from disclosure of the records at issue.  For instance, Defendant relies on *Sack v. Department of Defense*, 823 F.3d 687 (D.C. Cir. 2016), in an attempt to liken the disclosure of information about Leahy Vetting to the release of reports concerning polygraphs.  *See* Def.'s Reply at 20–21.  *Sack* discussed how "law enforcement agencies use polygraphs to test the credibility of witnesses and criminal defendants," and held the agency had "satisfactorily explained" how the reports at issue, which "assess[ed] the efficacy of those examinations and identif[ied] needed fixes" warranted protection. *Sack*, 823 F.3d at 694.  Because the reports identified "strengths and weaknesses of particular polygraph programs," their release "could reasonably risk circumvention of the law" by "enabl[ing] criminal suspects [and] employees with ill intentions . . . to subvert polygraph examinations."  *Id.* at 694–95.

Here, State speculates that "proven bad actors strike the Department as precisely the types of individuals that, if apprised of the Leahy vetting process and the procedures used to, for example, evaluate remediations, would be most likely to attempt to abuse the system, circumvent the Leahy Laws, and moot their effect."  Def.'s Reply at 22 (emphasis removed).  Such unsupported (and unsound) conjecture does not satisfy the requirement that agencies "demonstrate *logically* how the release of the requested information" would risk circumvention of the law. *Mayer Brown LLP v. Internal Revenue Serv.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (emphasis added) (cleaned up) (citation omitted).  Nor do the contents of State's revised *Vaughn* Index provide that logical nexus.  For instance, in Document 6, an "email exchange [in which] officials discuss the ongoing Leahy vetting process for certain Burmese law enforcement personnel," Defendant claims that release of information about, *inter alia*, "the sources from which the Department gathers potentially derogatory information" and "how the Department assesses the

credibility of those sources"—swaths of which are already public, *see* Singh Decl. Exs. A–C—"could assist individuals and units seeking to circumvent the procedures used for conducting Leahy vetting and would allow them to see which specific information is given more or less weight in assessing eligibility for assistance."  Revised *Vaughn* Index, Doc. 6.  But this boilerplate language does not explain *how* disclosure would affect the conduct of persons committing human rights violations abroad such that circumvention of the Leahy Laws becomes a realistic possibility.  State has not demonstrated how, for example, knowing that a civil society organization's report is given a "0.5" weighting versus a United Nations' report being given a "0.7" weighting would result in human rights violators rendering the Leahy Vetting ineffective.  *Cf. Shapiro v. Dep't of Justice*, No. CV 13-555 (RDM), 2020 WL 7318014, at *16 (D.D.C. Dec. 11, 2020) (reaffirming that Exemption 7(E) does not permit "an agency to rely on a boilerplate justification" to withhold records) (Moss, J.).

Because Defendant has not—and cannot—demonstrate that the withheld information in Documents 6, 11, 19–23, 25, 27, and 50 falls within the scope of Exemption 7(E), the Court need not address the agency's failure to comply with the foreseeable harm provision.  *See* 5 U.S.C. § 552(a)(8)(A); *Ecological Rights Found.*, 2021 WL 535725, at *32 ("If an agency fails to show that a withheld record fits within the claimed exemption in the first instance, the foreseeable harm analysis need not be addressed.").  However, should the Court reach the issue, *Citizens for Responsibility & Ethics in Washington v. Department of Homeland Security* ("*CREW*"), No. 20-CV-1400 (CRC), 2021 WL 950415, at *6 (D.D.C. Mar. 12, 2021) is instructive.  In *CREW*, the records at issue—withheld under Exemption 7—contained "[t]he number of Secret Service special agents and other personnel assigned in support of an agency protectee." *Id*. at *4.  The Court held that the agency met the requirements of FOIA's foreseeable harm provision by providing "a

specific explanation of how disclosure of information about the size of the President's Secret Service detail would result in foreseeable risks of harm to agents and those they protect." *Id*. at *6.  Here, State has not offered any such specific, logical connection between the information at issue and the harms the exemption is designed to protect against, and therefore it has not satisfied FOIA's foreseeable harm standard.  *See Ecological Rights Found.*, 2021 WL 535725, at *32.

Because Defendant has unlawfully withheld information about the Leahy Vetting process under Exemption 7(E), summary judgment for the agency is improper as to those redactions and should be granted in favor of Plaintiffs.

### VI.   Defendant's exemption claims as to Documents 43 and 44 are moot; Defendant's request that Plaintiffs be ordered to "return or destroy" those records is neither authorized by FOIA nor permissible under the First Amendment.

Defendant's invocation of Exemption 7(F) as to Documents 43 and 44, and its new invocations of Exemptions 6 and 7(C) as to Document 44, are moot for the simple reason that those records have already been released to Plaintiffs.  Pls.' SMF ¶ 27.  Even if the Court determines that State could have withheld the information it previously released to Plaintiffs, such a ruling would not "affect the rights of litigants in th[is] case" as Plaintiffs are already in possession of that information.  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971); *see also Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[O]nce the records are produced the substance of the controversy disappears and becomes moot . . . ." (citation omitted)).

Undeterred, Defendant takes the astonishing step of asking the Court to "direct Plaintiffs to return or destroy the Department's January 17, 2020, production of these two spreadsheets." Def.'s Reply at 24.   There is no legal basis for that extraordinary request.  Neither Defendant nor the unreported decision it cites from a court outside this Circuit cites any authority for a federal court in a FOIA action to order a member of the press to *return* records it was provided in response

to a FOIA request.  *See id.* (citing *Hersh & Hersh v. Dep't of Health & Human Servs.*, No. C 06-4234 PJH, 2008 WL 901539, at *9 (N.D. Cal. Mar. 31, 2008)).

To the extent Defendant purports to rely on some inherent or equitable power of the Court (which it does not specify), its request for an order (presumably backed by the power of contempt) requiring a reporter and news organization to "return or destroy" public records the government itself disclosed, is foreclosed by the First Amendment.  *See, e.g., Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979) ("[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order."); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." (citations omitted)). Indeed, in *The Florida Star v. B.J.F.*, the Supreme Court rejected a similar argument after a newspaper obtained the name of a rape victim from a police report that was "inadvertent[ly]" placed in a sheriff department's press room, noting that "the fact that state officials are not required to disclose such reports [under Florida's public records law] does not make it unlawful for a newspaper to receive them when furnished by the government."  491 U.S. 524, 528, 536 (1989). Here, Plaintiffs lawfully received Documents 43 and 44 from Defendant, which undoubtedly concern a matter of public significance, *see supra*, Section IV.  As "the government has placed such information in the public domain, reliance must rest upon the judgment of those who decide what to publish or broadcast."  *The Florida Star*, 491 U.S. at 538 (citations omitted).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion for summary judgment in part and enter partial summary judgment in favor of Plaintiffs.

Dated: April 16, 2021

*/s/ Katie Townsend*

Katie Townsend
DC Bar No. 1026115
Adam A. Marshall
DC Bar No. 1029423
Gunita Singh
DC Bar No. 1601923
THE REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org
Email: gsingh@rcfp.org

*Counsel for Plaintiffs*